UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| YINGLU YAO, Individually And On Behalf Of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> FUWEI FILMS (HOLDINGS) CO., LTD., XIAOAN HE, JUN YIN, DUO WANG, TONGJU ZHOU, <br><br> Defendants. | ) ) ) ) ) ) ) Case No. 07 Civ 9416 (RJS) ) ) ) ) ) ) ) ) ) |

---

| | |
|---|---|
| MEIRA RUBIN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> FUWEI FILMS (HOLDINGS) CO., LTD., XIAOAN HE, LIN TANG, MARK E. STULGA, TONGJU ZHOU, DUO WANG, JUN YIN, MAXIM GROUP LLC, CHARDAN CAPITAL MARKETS, LLC, and WR HAMBRECHT & CO. LLC, <br><br> Defendants. | ) ) ) ) ) ) ) Case No. 07 Civ 10323 (RJS) ) ) ) ) ) ) ) ) ) ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION OF PROPOSED LEAD PLAINTIFFS MEIRA RUBIN AND
COSTACHI LERU FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFFS AND
<u>APPROVAL OF THEIR SELECTION OF LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      POINT I -    THE ACTIONS SHOULD BE CONSOLIDATED . . . . . . . . . . . . . . . . . . 7

      POINT II -   MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF . . . . . . . . . 7

      A.   The Procedure Required By The PSLRA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B.   Movant Satisfies The "Lead Plaintiff" Requirements of the PSLRA . . . . . . . . . . 9

            1.   Movant Has Complied With The PSLRA
               And Should Be Appointed Lead Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . 9

            2.   Movants Have The Largest Financial Interest
               In The Relief Sought By The Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            3.   Movants Otherwise Satisfy Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      POINT III -  THE COURT SHOULD APPROVE MOVANTS
               CHOICE OF COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Proposed Lead Plaintiffs Meira Rubin and Costachi Leru ("Movants") hereby respectfully submit this memorandum of law in support of their motion for: (i) consolidation of the captioned actions (the "Actions"); (ii) appointment as Lead Plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (iii) approval of their selection of Weiss & Lurie as Lead Counsel.

## INTRODUCTION

The Actions are federal securities class actions arising out of Fuwei Films (Holdings) Co., Ltd.'s ("Fuwei" or the "Company") initial public offering ("IPO") and are brought pursuant to the strict liability provisions of the Securities Act of 1933 (the "Securities Act") 15 U.S.C. §§ 77k, 77*l* and 77o, which provides liability for securities sold pursuant to a false and misleading Registration Statement and/or Prospectus.

Movant Meira Rubin purchased 1,500 shares of the Company's common stock directly in the IPO from an Underwriter, and has suffered estimated losses of approximately $4,402.10 as a result of defendants' misconduct. Movant Costachi Leru purchased 30,000 shares of the Company's common stock in the aftermarket following the IPO and has suffered estimated losses of approximately $72,900.00, as a result of defendants' misconduct. Movants now seek to be appointed as Lead Plaintiffs of the consolidated Actions. Additionally, Movants seek Court approval of their selection of Weiss & Lurie as Lead Counsel. As discussed below, Movants have satisfied each of the requirements of the PSLRA and, therefore, are qualified for appointment as Lead Plaintiffs in these Actions.

**PROCEDURAL BACKGROUND**

On or about October 19, 2007, the first of the captioned actions, Yao v. Fuwei Films (Holdings) Co., Ltd., et. al., Case No. 07-civ-9416, was filed in this Court.  Also, on October 19, 2007, notice of the pendency of the Yao action was published over MarketWire, advising members of the proposed class of their right to move the Court to serve as lead plaintiff no later than sixty (60) days from the date of publication of the Notice, i.e., by December 18, 2007.  The Yao action pled claims for violations of Sections 11 and 15 of the Securities Act against the Company and certain of its officers, directors and shareholders.

On or about November 13, 2007, Movant Rubin, who purchased her shares in the IPO from an Underwriter, filed her complaint. Unlike the Yao action, the Rubin action: (i) named as defendants each of the signatories of the Registration Statement, pursuant to Section 11 of the Securities Act; (ii) pled violations of Section 12 of the Securities Act; and (iii) named as defendants, Maxim Group LLC, Chardan Capital Markets LLC, and WR Hambrecht + Co. LLC, the Underwriters of the IPO.

**STATEMENT OF FACTS**

Defendant Fuwei is a Cayman Islands Corporation with its principal place of business in the People's Republic of China. Fuwei, through its wholly owned subsidiary, develops, manufactures, and distributes plastic films. Fuwei's common stock trades on the NASDAQ Global Market under the ticker symbol "FFHL." ¶¶ 9-10.[1]

---

[1] References to "¶__" are to the complaint filed in the action captioned Rubin v. Fuwei Films (Holdings) Co., Ltd., Case No. 07-civ-10323.

On December 19, 2006, Fuwei went public via its global IPO of 4,312,500 shares (including the over-allotment option of up to 562,500 shares) for gross proceeds of approximately $35,707,500. Prior to the IPO, no public market existed for trading of the Company's securities. ¶ 22.

The Registration Statement and Prospectus issued in connection with the IPO contained representations that the Company's purchase of its main operating assets at two public auctions in October 2003 and December 2004 were legal and valid, while in truth the method and manner of the December 2004 purchase not only violated Chinese laws and/or regulations, but were actually criminal in nature. ¶ 23

With respect to the October 2003 acquisition, the Prospectus and Registration Statement represented that the Company's Brückner production line fixed assets were acquired from Shandong Neo-Luck (hereinafter "Neo-Luck" or Neoluck"), a now bankrupt Chinese company, whose management executives were also officers, directors and investors of Fuwei. ¶ 24.

With respect to the December 2004 acquisition, the Prospectus and Registration Statement represented that the Company's other fixed asset, the DMT production line, which had been Neo-Luck's major asset and had been pledged to Weifang City Commercial Bank, was acquired by Fuwei under the following circumstances:

> When Shandong Neo-Luck was declared bankrupt, the Shandong Branch of the Bank of China seized the [DMT] production line [on September 24, 2004] by order of the Qingdao Intermediate People's Court and the Qingdao Southern District People's Court while the Weifang Branch of Bank of Communications did so [seizing the same assets] through Weifang Intermediate People's Court. As such, the effectiveness of the pledge in favor of Weifang City Commercial Bank was under dispute. Subsequently, pursuant to the decision from Weifang Intermediate People's Court, Weifang City Commercial Bank ranked senior in terms of the right of claims.

3

The pledged DMT production was put up for public auction by the Shandong Neo-Luck liquidation committee on October 22, 2004. In view of the above complexities, the auction was deemed to be tremendously risky at that time, and therefore, our PRC operating subsidiary did not directly participate in the first auction, which began with a bid price of approximately RMB 53 million by reference to an independent valuation performed on a forced sale basis. However, due to the potential tremendous risk involved, the auction had been withdrawn twice and the starting bid price had been further reduced to approximately RMB 34 million and was finally purchased by Beijing Baorui, a company indirectly controlled by Shandong Baorui. When the DMT production line was put for public auction by Beijing Baorui three months later, our PRC operating subsidiary purchased it for approximately RMB 119 million, which was supported by an independent valuation performed on a going concern basis. We considered the arrangement to have the DMT production line acquired through Beijing Baorui through the first auction as an effective way to minimize the risk associated with the uncertainties arising from the bankruptcy of Shandong Neo-Luck. The price difference of approximately RMB 85 million represented a risk premium paid to Beijing Baorui, which bore the ultimate risks of recourse from creditors of Shandong Neo-Luck.

¶ 25.

These representations were materially false and misleading because the Prospectus and Registration Statement did not disclose that there was bid rigging going on in connection with the purchase of the DMT production line, that the purchase of the DMT production line was not made at arms-length and, to the contrary, was the result of criminal acts that could result in the conviction of one of the Company's directors and two of the Company's largest shareholders as well as the seizing of the illegitimately purchased equipment. Specifically, the Prospectus and Registration Statement failed to:

- provide complete disclosure as to the circumstances surrounding the Company's acquisition of the DMT production line which render the statements made in the Prospectus materially false and misleading; and

- reveal that Beijing Baorui, the company that first purchased the DMT production line, was controlled by Defendants Yin and Wang, and that they manipulated the

purchase of the DMT production line at a steeply discounted price, so that they could turn around and sell it to another company they controlled and owned, Fuwei, through a mock auction at a substantially elevated price.

¶ 26.

On June 25, 2007, prior to the opening of the New York financial markets, Fuwei shocked investors when it announced that Defendants Yin, Wang and Zhou were being investigated in China by the Chinese authorities. The press release falsely represented the investigation as being "a result of the ongoing financial dispute between Neo-Luck and **a certain Chinese asset management company**." (Emphasis added.) The press release misleadingly intimated that Fuwei's only connection to the investigation was the fact that some of its largest shareholders happened to be the targets of that investigation. It did not explain that the "certain Chinese asset management company" was actually a former parent company of Fuwei. Specifically, the press release stated in pertinent part:

> Fuwei Films Discusses Proceedings Related to Three of Its Stockholders
>
> BEIJING, June 25 /Xinhua-PRNewswire-FirstCall/ – Fuwei Films (Holdings) Co., Ltd. (Nasdaq: FFHL - News; "Fuwei Films") today stated that it had become aware of reports that Mr. Jun Yin, Mr. Duo Wang, and Mr. Tongju Zhou are involved in an investigation conducted by the Chinese Communist Party that began in May and mid-June 2007. Mr. Jun Yin is a 53% shareholder of Fuwei Films and Mr. Tongju Zhou, a director of Fuwei Films, together with Mr. Duo Wang, indirectly own 14% of Fuwei Films. None of these individuals are involved in Fuwei Films' day-to-day operations.
>
> Upon Fuwei Films' receipt of what it deems to be credible, accurate and verifiable information relating to such investigation, it will promptly notify the public thereof. Unofficial sources have reported that the inquiry relating to these three individuals is as a result of the ongoing financial dispute between Weifang Neoluck Group ("Neoluck") and a certain Chinese asset management company. Messrs. Yin, Zhou and Wang are the former management executives of Neoluck. Although Fuwei purchased certain equipment formally owned by Neoluck through

5

a public auction, Neoluck does not have any current relationship with Fuwei Films.

¶ 27.

On October 16, 2007, in updating the markets on the status of the legal proceedings against Yin, Wang and Zhou, the Company disclosed that an arrest warrant had been issued for Yin, Wang and Zhou two weeks prior, on September 28, 2007. They were charged with crimes of "irregularities for favoritism and to sell state-owned assets at low prices." The press release reported that "[a]t this time, there has not been any judicial or formal official notification to Fuwei Films that the investigation or charges involving the three shareholders relates to the purchase by Fuwei Films of state-owned equipment that is used in connection with its business." This disclosure caused the Company's stock to drop sharply, over 23.5% or $2.25 per share, from the previous day's trading. ¶¶ 29-30.

In addition, as a result of the investigation and arrest of the three significant Company shareholders, the Company's independent accountant, Murrell, Hall, McIntosh & Co. PLLP, resigned its position effective November 1, 2007. Also, Defendants Zhou and Stulga both resigned from the Board of Directors, effective October 18, 2007. ¶¶ 31-32.

The Company's shares plummeted once again on Monday, November 12, 2007 after the Company announced prior to the opening of the New York financial markets, that the implementation of a planned Third Production Line was to be delayed as a result of "a capital shortfall." The Company's attempt to secure financing was being complicated because of a "limited response from commercial banking lenders because of the shareholder investigation." As a result, Fuwei reportedly has been looking for financing opportunities from funds in the

United States but has yet to secure financing. Moreover, in response to a question during the earnings conference call on November 12, 2007, Fuwei's management was unable to give any guidance on when -- and if -- financing would be secured. ¶34.

This disclosure caused the Company's stock to once again drop precipitously to close at $3.71 per share, a drop of 21% down approximately 56% from its IPO. The stock declined further to trade just above $3.00 per share on the next day, November 13, 2007. ¶35.

## ARGUMENT

### POINT I

### THE ACTIONS SHOULD BE CONSOLIDATED

The Actions involve class action claims on behalf of the purchasers of Fuwei securities and assert essentially similar and overlapping class claims for relief brought on behalf of the purchasers of Fuwei securities. Consolidation is appropriate where, as here, there are actions involving common questions of law or fact. See Fed. R. Civ. P. 42 (a); Johnson v. Celotex Corp., 899 F.2d 1281, 1284 (2d Cir.), cert. denied, 498 U.S. 920 (1990). That test is met here and the Actions should be consolidated.

### POINT II

### MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

**A.    The Procedure Required By The PSLRA**

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in "each private action arising under [the Securities Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 77z-1(a)(1).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff.  15 U.S.C. § 77z-1(a)(3)(A)(i).  Plaintiff in the Yao Action caused notice to be published on MarketWire on October 19, 2007.[2]  See Declaration of Joseph H. Weiss ("Weiss Decl."), Exhibit A.  Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 77z-1 (a)(3)(A) and (B).

Second, the PSLRA provides that within 90 days after publication of the notice the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members.  15 U.S.C. § 77z-1 (a)(3)(B).  In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that - -
>
> (aa)   has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

---

[2] Wire services have consistently been recognized as a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." See Lax v. First Merchants Acceptance Corp., 1997 U.S. Dist. LEXIS 11866 at *2 (N.D. Ill. Aug. 6, 1997).

15 U.S.C. § 77z-1 (a)(3)(B)(iii).  See generally Greebel v. FTP Software, 939 F. Supp. 57, 64 (D. Mass. 1996).

    **B.**    **Movant Satisfies The "Lead Plaintiff" Requirements of the PSLRA**

        **1.**    **Movant Has Complied With The PSLRA And Should Be Appointed Lead Plaintiff**

The time period in which class members may move to be appointed lead plaintiffs under 15 U.S.C. § 77z-1 (a)(3)(A) and (B) expires on December 18, 2007.  Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice (published on October 19, 2007), Movants herein timely move this Court to be appointed Lead Plaintiffs on behalf of all members of the class.

Movant Meira Rubin has filed a complaint and both her and Movant Costachi Leru are willing to serve as representative parties on behalf of the Class as evidenced by their duly executed certifications. See Weiss Decl., Exhibit C.  In addition, Movants have selected and retained experienced and competent counsel to represent them and the Class. See Weiss Decl., Exhibit D.

Accordingly, Movants have satisfied the individual requirements of 15 U.S.C. § 77z-1 (a)(3)(B) and are entitled to have their application for appointment as Lead Plaintiffs and their selection of Lead Counsel, as set forth herein, considered and approved by the Court.

        **2.**    **Movants Have The Largest Financial Interest In The Relief Sought By The Class**

According to 15 U.S.C. § 21(a)(3)(B)(iii), the court shall appoint as lead plaintiff the class member or members who represent the largest financial interest in the relief sought by the class.

During the Class Period, as evidenced by, among other things, the accompanying signed certifications, Movant Rubin purchased 1,500 shares of the Company's common stock and has suffered estimated losses of approximately $4,402.10 as a result of defendants' misconduct. Movant Leru purchased 30,000 shares of the Company's common stock and has suffered losses of approximately $72,900.00 as a result of defendants' misconduct. See Weiss Decl., Exhibit B.

Moreover, Movants are unaware of any other plaintiff or lead plaintiff applicant who has a larger loss or purchased shares in the IPO and has brought claims – or has standing to bring claims – against the Underwriters. As such, Movants have the greatest financial interest in the relief sought by the class in this litigation. Movants satisfy all of the PSLRA's prerequisites for appointment as Lead Plaintiffs and should be appointed Lead Plaintiffs pursuant to 15 U.S.C. § 77z-1 (a)(3) (B).

### 3.    Movants Otherwise Satisfy Rule 23

According to 15 U.S.C. § 77z-1(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two -- typicality and adequacy -- directly address the personal characteristics of the class representatives. Consequently, in deciding a motion to serve as lead plaintiff, the Court should focus its inquiry on the typicality and adequacy prongs of Rule 23(a). Lax v. First Merchants, 1997 U.S. Dist. LEXIS 11866, at *20; Fischler v. Amsouth Bancorporation, 1997 U.S. Dist. LEXIS 2875, at *7-8 (M.D. Fla. Feb. 6, 1997).

Here, the movants satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as Lead Plaintiffs. Typicality exists if claims "arise[] from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." See In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992), cert. dismissed sub nom., 506 U.S. 1088 (1993). However, the claims of the class representatives need not be identical to the claims of the class to satisfy typicality. Instead, the courts have recognized that:

> [T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.

Bishop v. New York City Dept. of Housing Preservation and Development, 141 F.R.D. 229, 238 (2d Cir. 1992); See also Avagliano v. Sumitomo Shoji America, Inc., 103 F.R.D 562, 582 (S.D.N.Y. 1984).

As set forth above, Movants seek to represent a class of purchasers of Fuwei's common stock pursuant and/or traceable to the false and misleading Registration Statement and Prospectus pursuing claims under the Securities Act. Thus, typicality is satisfied since the claims

11

asserted by Movant arise "from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." Walsh v. Northrop Grumman Corp., 162 F.R.D. 440, 445 (E.D.N.Y. 1995).

Under Rule 23(a)(4) the representative party must also "fairly and adequately protect the interests of the class." The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflicts between the named plaintiff and the class members, and (2) the class representative's choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. Garfinkel v. Memory Metals, Inc., 695 F. Supp. 1397, 1405 (D. Conn. 1988).

Here, Movants are the most adequate representative of the Class. The interests of Movants are clearly aligned with the members of the Class and there is no evidence of any antagonism between Movants' interests and those of the other members of the Class they seek to represent. Indeed, Movants are the only individuals to have come forward who will be able to represent both class members who purchased their shares in the IPO and therefore possess unassailable standing to assert Section 11 and 12 claims and those who are proceeding on the theory that they can trace their shares back to the IPO and Registration Statement. Moreover, as explained herein, Movant Rubin is the only plaintiff that has asserted – and, indeed can assert – claims against the Underwriters. In addition, as shown below, the Movants' proposed Lead Counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Movants prima facie satisfy the commonality, typicality and adequacy requirements of Rule 23.

## POINT III

### THE COURT SHOULD APPROVE MOVANTS CHOICE OF COUNSEL

Pursuant to 15 U.S.C. § 77z-1 (a)(3)(B)(v), the lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class he seeks to represent.  In that regard, Movants have selected Weiss & Lurie to serve as Lead Counsel.   Weiss & Lurie has extensive experience in successfully prosecuting shareholder and securities class actions, and has frequently appeared in major actions in this and other courts.  See Weiss Decl., Exhibit D.

### CONCLUSION

For all the foregoing reasons, Movants respectfully request that the Court consolidate the Actions, grant their request for appointment as Lead Plaintiffs and approve their selection of Lead Counsel.

Dated:  December 18, 2007

                                      Respectfully submitted,

                                      **WEISS & LURIE**

                                      By: /s/ Joseph H. Weiss
                                      Joseph H. Weiss  (JW-4534)
                                      Jack I. Zwick  (JZ-2514)
                                      David C. Katz (DK-6235)
                                      551 Fifth Avenue
                                      New York, New York 10176
                                      Tel:    (212) 682-3025

                                      **Attorneys for Plaintiffs**
                                      **Meira Rubin and Costachi Leru**