UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| YINGLU YAO, Individually And On Behalf Of All Others Similarly Situated, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>FUWEI FILMS (HOLDINGS) CO., LTD., )<br>XIAOAN HE, JUN YIN, DUO WANG, TONGJU )<br>ZHOU, )<br>)<br>Defendants. )<br>) | Case No. 07 Civ 9416 (RJS) |

---

| | |
|---|---|
| MEIRA RUBIN, Individually and On Behalf of All Others Similarly Situated, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>FUWEI FILMS (HOLDINGS) CO., LTD., )<br>XIAOAN HE, LIN TANG, MARK E. STULGA, )<br>TONGJU ZHOU, DUO WANG, JUN YIN, )<br>MAXIM GROUP LLC, CHARDAN CAPITAL )<br>MARKETS, LLC, and WR HAMBRECHT & CO. )<br>LLC, )<br>)<br>Defendants. )<br>) | Case No. 07 Civ 10323 (RJS) |

**MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS FOR LEAD
PLAINTIFF AND IN FURTHER SUPPORT OF THE MOTION OF
<u>MEIRA RUBIN AND COSTACHI LERU FOR APPOINTMENT AS LEAD PLAINTIFFS</u>**

**TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.      Rubin Is the Only Plaintiff or Movant Who
             Can Press Claims Against the Underwriters . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

             1.      Rubin is the only plaintiff or movant who can
                    maintain a §12(a)(2) claim against the Underwriters . . . . . . . . . . . . . . . . 4

             2.      Rubin does not need to resort to the "tracing"
                    theory in order to maintain her Section11 claims . . . . . . . . . . . . . . . . . . 6

      B.      Appointing Any of the Competing Movants Would Cast a Pall
             of Uncertainty over the Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      C.      In the Alternative, Meira Rubin at a Minimum Should Be
             Appointed Co-Lead Plaintiff and Her Counsel Co-Lead Counsel . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Plaintiff and Movant Meira Rubin ("Rubin) and Movant Costachi Leru ("Leru") respectfully submit this memorandum of law in opposition to the competing motions for the appointment of lead plaintiff and for approval of the selection of lead counsel in the captioned class actions (the "Actions") alleging violations of the Securities Act of 1933 (the "Securities Act") arising out of the December 2006 Initial Public Offering (the "IPO") of shares of Fuwei Films (Holdings) Co., Ltd. ("Fuwei" or the "Company").

## INTRODUCTION

On December 18, 2007, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), three separate motions were filed seeking the appointment of lead plaintiff and lead counsel in the Actions, by the following movants: (1) Rubin and Leru; (2) Siamak Nazhand ("Nazhand"); and (3) Nijat Tonyaz ("Tonyaz").

As the papers submitted by the respective movants now confirm, plaintiff Rubin is the only lead plaintiff applicant who has – and, more importantly, can – fully and adequately represent investors bringing claims in connection with Fuwei's false and misleading IPO. First, only Rubin has sued the Underwriters, the best source of recovery in these Actions.[1] Second, no other movant has standing to pursue claims against the Underwriters under §12(a)(2) of the

---

[1] Fuwei is a company incorporated in the Cayman Islands with its assets and headquarters in China. The individual defendants are virtually all Chinese citizens, three of whom are currently under arrest in China. In addition to the difficulties of obtaining any recovery from these defendants, plaintiff and the class would also face a substantial bar to recovery in the Cayman Islands. As the Prospectus itself states:

> The Cayman Islands courts are unlikely to recognize or enforce judgments of United States courts obtained against us or our directors or officers predicated upon the civil liability provisions of the securities laws of the United States or any state in the United States.

Securities Act. Third, Rubin is the only movant who purchased shares directly in the IPO from an Underwriter, and therefore, does not rely on a questionable and likely impossible "tracing" theory in support of standing to assert Securities Act claims.

The competing movants' inability to sue the Underwriters, bring § 12 claims and demonstrate standing are neither trivial nor temporary. As the Second Circuit's recent summary order in <u>Levitt v. Rogers</u>, 06-5298-cv, 2007 U.S. App. LEXIS 29362 (2d Cir. December 18, 2007) (Summary Order), makes abundantly clear, a lead plaintiff appointment must appropriately recognize a movant's financial stake with respect to the particularized claims asserted against the particular defendants sued. Years of litigation can be doomed by selection of an inadequate lead plaintiff. There is no reason to handicap this litigation from the outset by appointing a lead plaintiff with limited or no standing to properly assert the claims -- indeed, the most significant claims -- when there is a plaintiff and movant who has demonstrated standing, adequacy and commitment to the class by vigorously pursuing the broadest claims against the broadest group of defendants. Accordingly, although on the face of their submissions, the other movants claim[2] to have larger monetary losses than Rubin, when the most valuable and recoverable claims are

---

[2] Indeed, it is important to note that each of the other motions has grossly overstated its claimed "financial stake" in the outcome of this litigation by employing a damage formula inconsistent with the damage formula mandated by §11 – the very statute under which they purportedly are pursuing their claims. Specifically, §11(e) expressly limits maximum recoverable damages to no more than "the price at which the security was offered to the public." In the case of Fuwei's IPO, the price at which shares were offered to the public was $8.28 per share. Yet, without explaining how or why, each of the competing movants estimates losses by simply calculating their gains and losses. Not only does it distort the actual recoverable damages leaving this Court to guess what they truly are, it also demonstrates a lack of familiarity with the §11 statutory damages formula, raising serious questions of the adequacy of the competing movants; rebutting any possible presumption. Thus, it is impossible to tell who has the largest financial stake and that may quite possibly be movant Costachi Leru.

considered, i.e. the § 12 claims against the Underwriters, their financial stake is nil and they may not even be members of the class. As such, Rubin is the most adequate lead plaintiff.

## ARGUMENT

In the Court's determination of lead plaintiff, the PSLRA provides a <u>rebuttable presumption</u> in favor of the investor with the largest financial stake in the litigation. In addition, the lead plaintiff must also must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 77z-1(a)(3)(B). Rule 23(a) provides that a party may serve as a class representative only if, in addition to other factors, "the claims or defenses of the representative parties are typical of the claims or defenses of the class, and [] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

As the Second Circuit has held, a representative party will be inadequate where that representative is subject to unique defenses:

> [C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation, see, e.g., <u>Kline v. Wolf</u>, 88 F.R.D. 696, 700 (S.D.N.Y. 1981) (Weinfeld, J.), aff'd in relevant part, 702 F.2d 400, 403 (2d Cir. 1983); <u>J.H. Cohn & Co. v. American Appraisal Assoc., Inc.</u>, 628 F.2d 994, 998-99 (7th Cir. 1980). Regardless of whether the issue is framed in terms of the typicality of the representative's claims, Rule 23(a)(3), Fed. R. Civ. P., or the adequacy of its representation, Rule 23(a)(4), Fed. R. Civ. P., there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it. 7A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1764, at 259-60 (2d ed. 1986) (typicality); 3B J. Moore & J. Kennedy, Moore's Federal Practice para. 23.07, at 23-192 (2d ed. 1987) (adequacy of representation).

<u>Gary Plastic Packaging Corp. v. Merrill Lynch, et al.</u>, 903 F.2d 176, 180 (2d Cir. 1990).

Opposing movants fail to meet this standard as they will be preoccupied with unavoidable challenges to their standing to assert the claims in this litigation and, thus, any presumption emanating from their financial interest is rebutted.

### A.   Rubin Is the Only Plaintiff or Movant Who Can Press Claims Against the Underwriters

The sixty day period prescribed by the PSLRA has passed and no plaintiff or potential movant -- other than Rubin -- has asserted any claims against the Underwriters. Thus, it is not surprising that none of the competing movants' lead plaintiff applications address how, if appointed, they would maintain the valuable claims against the Underwriters. The reason is simple, having purchased in the aftermarket [3] as opposed to directly in the IPO as Rubin did, they are incapable of alleging viable Securities Act claims against the Underwriters.

#### 1.   Rubin is the only plaintiff or movant who can maintain a §12(a)(2) claim against the Underwriters

If appointed, the competing movants will face the following choice: (1) either forebear from bringing Section 12(a)(2) claims against the Underwriters as the plaintiff in the Yao action recognized; or (2) allege a Section 12(a)(2) claim, despite not having the proper standing to do so, and face the certain and insurmountable challenge by the Underwriter defendants that aftermarket purchasers cannot bring a claim under §12(a)(2) of the Securities Act.

As the Underwriters will surely argue, only persons who purchased their shares in Fuwei's IPO (as opposed to the afterrnarket) have standing to bring a claim under Section 12(a)(2) of the Securities Act. Specifically, defendants will certainly assert that in Gustafson v.

---

[3]   The "aftermarket" of a stock is the market that develops after the initial public offering. Walk-In Med. Ctrs., Inc. v. Breuer Capital Corp., 818 F.2d 260, 263 n.1 (2d Cir. 1987).

Alloyd Co., Inc., the Supreme Court held that suits under Section 12(a)(2) are "confined to documents related to public offerings by an issuer or its controlling shareholders." 513 U.S. 561, 569 (1995). The Second Circuit has interpreted Gustafson to bar suits by investors who purchased securities in the aftermarket, and not in the initial distribution. Yung v. Lee, 432 F.3d 142, 148 (2d Cir. 2005) (upholding "the predominate conclusion that purchasers in private or secondary market offerings are precluded from bringing actions under Section 12(a)(2)") (quotation marks and citation omitted). The vast majority of district courts in this Circuit have also long agreed that Section 12(a)(2) does not support actions by aftermarket purchasers of shares issued in an initial public offering. See, e.g., In re Prestige Brands Holding, Inc., No. 05 CV. 06924 (CLB), 2006 WL 2147719, (S.D.N.Y. July 10, 2006); In re Flag Telecom Holdings, Ltd. Sec. Litig., 308 F. Supp. 2d 249 (S.D.N.Y. 2004); In re Worldcom, Inc. Sec. Litig., No. 02 Civ. 3288 (DLC), No. 03 Civ. 9499 (DLC), 2004 WL 1435356 (S.D.N.Y. June 28, 2004); In re Sterling Foster & Co., Inc. Sec. Litig., 222 F. Supp. 2d 216 (E.D.N.Y. 2002); In re Ultrafem Inc. Sec. Litig., 91 F. Supp. 2d 678 (S.D.N.Y. 2000).

In addition, defendants will likely argue that none of the competing movants has or can allege that they purchased Fuwei shares directly from the Underwriters or at their solicitation. Section 12(a)(2) creates a cause of action against "sellers" of a security or parties who "successfully solicit[ed] the purchase, motivated at least in part by a desire to serve [their] own financial interests or those of the securities owner." In re Worldcom, Inc. Sec. Litig., 2004 WL 1435356, at *4 (quotation marks and citations omitted). What Section 12(a)(2) does not do, however, is impose liability on remote sellers of securities to remote buyers. See also Cortec Indus. v. Sum Holding L.P., 949 F.2d 42, 49 (2d Cir. 1991). Therefore, a plaintiff who

5

purchased in the aftermarket from a third-party seller – and not from the Underwriters in the initial distribution or at the solicitation of the Underwriters – does not have standing to bring a claim under Section 12(a)(2) against the Underwriters.

### 2. Rubin does not need to resort to the "tracing" theory in order to maintain her Section 11 claims

In order for an aftermarket purchaser to pursue claims under Section 11, the law in this Circuit, as in others, requires the plaintiff to trace his shares to the allegedly misleading registration statement. See Barnes v. Osofsky, 373 F.2d 269 (2d Cir. 1967). Plaintiffs bear the burden of proving their securities are so traceable. Id. at 273 n.2; Lorber v. Beebe, 407 F. Supp. 279, 286 (S.D.N.Y. 1976). Moreover, the tracing requirement is essential to the cause of action because stocks are not fungible under Section 11, id. at 272-73, therefore, should any additional shares come into the market via a route other than the misleading registration statement, open market shares are no longer traceable, and there is no § 11 claim.

Specifically, in this case, defendants will argue that based upon publicly available information, tracing open market purchases back to the IPO is impossible because, among other things, a significant number of shares entered the market after the IPO.[4]

---

[4] Public filings show that three insiders held 8,750,000 shares of Fuwei that were not registered pursuant to the IPO. See Declaration of Joseph H. Weiss in Support of the Memorandum of Law in Opposition to Competing Motions for Lead Plaintiff and in Further Support of Meira Rubin and Costachi Leru's Motion for Appointment as Lead Plaintiffs ("Weiss Decl.") Exhibits A and B. The Company's June 25, 2007 press release demonstrates that those insiders sold shares after the IPO was launched. See Weiss Decl. Exhibits C and D. Anyone who purchased Fuwei shares after the "new" shares sold by the insiders entered the market would likely be unable to trace their purchase to the Fuwei IPO.

As defendants will argue, the entry of tens of thousands of new shares will make tracing impossible. The only proposed lead plaintiff not subject to this attack is Rubin who bought her shares directly in the IPO. As Judge Lynch recently explained in In re Global Crossing:

> While, as noted above, the law is clear that purchasers of securities issued pursuant to a misleading registration statement can assert a *section 11* claim whether they purchase their shares directly in the public offering or in the general securities markets, **it is equally clear that they may only sue "so long as the security was indeed issued under that registration statement and not another."** *Lee*, 294 F.3d at 976-77, quoted in *DeMaria*, 318 F.3d at 176. Thus, it has been established in the Second Circuit since *Barnes v. Osofsky*, 373 F.2d 269 (2d Cir. 1967) (Friendly, J.), that to have standing to assert a *section 11* claim, plaintiffs must be able to "trace their shares to an allegedly misleading registration statement." *DeMaria*, 318 F.2d at 176.
>
> * * *
>
> It is well established that a plaintiff seeking to represent a class must be a member of the class he purports to represent. *Seem, e.g., Bailey v. Patterson*, 369 U.S. 31, 32-33, 7 L. Ed. 2d 512, 82 S. Ct. 549 (1962); *Nat'l Super Spuds, Inc. v. Mercantile Exchange*, 660 F.2d 9, 17 (2d Cir. 1981). Thus, it is not enough that plaintiffs seek damages only for a class that has standing; at least one named plaintiff must be a member of that class - that is, a named plaintiff must have purchased shares traceable to the challenged offering.

In re Global Crossing, 313 F. Supp. 2d at 206-07 (emphasis added).

The opposing movants may attempt to sidestep these serious issues by mischaracterizing Rubin's position as merely seeking to carve out a niche lead plaintiff position. Such an attempt to minimize Rubin's unquestionable §§ 11 and 12 standing misses the point entirely. Far from pursuing a "subset" of a broader set of claims (i.e. pursuing Securities Act claims where there are overarching Exchange Act claims), in this litigation the only claims asserted are Securities Act claims with respect to which Rubin is the only movant with unassailable standing.[5] Given the

---

[5] Cases which have rejected niche plaintiffs have involved situations where either there were Securities Act claims for the same fraud covered by the Exchange Act claims or

well established case law, requiring that a plaintiff with proper standing represent the class, it is difficult to understand why Nazhand and Tonyaz would oppose Rubin's application for lead plaintiff, or in the alternative co-lead plaintiff, when it can only further the class' interest.

### B. Appointing Any of the Competing Movants Would Cast a Pall of Uncertainty over the Litigation

To the extent there was any doubt, the Second Circuit has now made clear that standing is an indispensable component of the court's lead plaintiff analysis, both in determining the largest financial stake as well as in satisfying the adequacy requirements of the statute.

On December 18, 2007, the Second Circuit in Levitt v. Rogers, 2007 U.S. App. LEXIS 29362 (Summary Order) reversed the district court's order denying the appointment of a potential lead plaintiff with a smaller financial interest (the "Levitt Group") and rejected the settlement negotiated and entered into by the larger, but inadequate, lead plaintiff (the "Rogers Group") after years of litigation. In Levitt, the district court denied the Levitt Group's appointment as lead plaintiff finding it did not have the largest financial interest in the litigation. After motion practice and the dismissal of certain defendants, the Levitt Group emerged as the only plaintiff with claims against the remaining defendants and standing to assert them. Accordingly, the Levitt Group renewed their motion to be appointed lead plaintiff. The district court rejected the renewed motion while also granting approval of a settlement entered into by the Rogers Group. On appeal, the Second Circuit reversed the lower court and remanded the case to the district court on the matter of the appropriate lead plaintiff.

---

where there were additional named plaintiffs with standing to pursue the niche claims -- unlike here.

8

The Second Circuit held that the district court erred in not recognizing that because the Levitt Group was the only plaintiff to have standing with respect to the claims against the remaining defendants, it had the largest financial stake in the litigation and was therefore presumptively the most adequate lead plaintiff.  Indeed, the Court stated that "it is difficult to believe that plaintiffs-appellees, the Rogers Group, were in a position to adequately represent the class, since the majority of the shareholders that the Rogers Group represented did not have any valid claim against Bear Stearns."  Id., at *4.

Similarly, as set forth above, Rubin is the only movant able to press viable claims against the Underwriters.  She is the only movant whose standing is unquestionable because she is the only movant to have purchased shares directly from the Underwriters in the IPO. As such, she is the movant with the largest financial interest relative to the claims in this litigation.

### C. In the Alternative, Meira Rubin at a Minimum Should Be Appointed Co-Lead Plaintiff and Her Counsel Co-Lead Counsel

If the Court is inclined to appoint either Nazhand or Tonyaz as a lead plaintiff in this litigation, Meira Rubin should be appointed as co-lead plaintiff and her counsel, Weiss & Lurie, appointed as co-lead counsel in order to "adequately represent the interests of the class." See, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); see also In re Oxford Health Plans, 182 F.R.D. at 45 (holding that appointment of three competing movants as co-lead plaintiffs "provides the proposed class with the substantial benefits of joint decision-making and joint funding and is consistent with the language of the PSLRA and the purpose of Congress in enacting it"); Pirelli Armstrong Tire Corp., 229 F.R.D. at 420 ("[C]o-lead structure here will have the salutary effect of providing greater stability in the prosecution of these consolidation actions.").

9

This arrangement would guarantee that at least one of the selected lead plaintiffs would be adequate for any of the claims asserted.

## CONCLUSION

For all of the foregoing reasons, Meira Rubin and Costachi Leru respectfully request that the Court appoint them lead plaintiffs in this litigation and approve their selection of Weiss & Lurie as lead counsel.

Dated: January 7, 2008

Respectfully submitted,

**WEISS & LURIE**

By: /s/ Joseph H. Weiss
Joseph H. Weiss  (JW-4534)
David C. Katz (DK-6235)
Jack I. Zwick  (JZ-2514)
Julia J. Sun (JS-4982)
551 Fifth Avenue
New York, New York 10176
Tel:   (212) 682-3025
Fax:   (212) 682-3010 (Fax)

**Attorneys for Proposed Lead Plaintiffs
Meira Rubin and Costachi Leru**