UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| YINGLU YAO, Individually And On Behalf Of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>     vs.<br><br>FUWEI FILMS (HOLDINGS) CO., LTD., XIAOAN HE, JUN YIN, DUO WANG, TONGJU ZHOU,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. 07 Civ 9416 (RJS)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

---

| | |
|---|---|
| MEIRA RUBIN, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>     vs.<br><br>FUWEI FILMS (HOLDINGS) CO., LTD., XIAOAN HE, LIN TANG, MARK E. STULGA, TONGJU ZHOU, DUO WANG, JUN YIN, MAXIM GROUP LLC, CHARDAN CAPITAL MARKETS, LLC, and WR HAMBRECHT & CO. LLC,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. 07 Civ 10323 (RJS)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MEIRA RUBIN AND COSTACHI LERU'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND <u>APPROVAL OF THEIR SELECTION OF LEAD COUNSEL</u>**

Plaintiff and Movant Meira Rubin ("Rubin") and Movant Costachi Leru ("Leru") respectfully submit this Reply Memorandum in Further Support of their Motion for Appointment as Lead Plaintiff and for Approval of their Selection of Lead Counsel in the captioned class actions (the "Actions") alleging violations of the Securities Act of 1933 (the "Securities Act") arising out of the December 2006 Initial Public Offering (the "IPO") of shares of Fuwei Films (Holdings) Co., Ltd. ("Fuwei" or the "Company").

## INTRODUCTION

Perhaps convinced that the third time is a charm, Nijat Tonyaz once again trumpets his "claimed" losses purportedly entitling him to the presumptive lead plaintiff crown. However, contrary to Tonyaz's repeated assertions, his having the "largest financial interest in the relief sought by the class" and purported satisfaction of the adequacy and typicality requirements have not been established. Indeed, despite having now made three submissions on the matter, Tonyaz is incapable of or simply refuses to address – let alone answer – the serious flaws in his application, choosing instead to rest on what he incorrectly characterizes as his large losses. The facts and the law, however, reveal that the self-crowned emperor has no clothes for the following reasons:

- Tonyaz drastically overstates his financial stake by failing once again to calculate his estimated damages in accordance with Section 11(e) of the Securities Act, the statute's damages provision – leading him to nearly triple his purported losses;

- Tonyaz does not dispute that, having purchased his shares in the aftermarket as opposed to the IPO, he lacks standing to pursue claims under Section 12(2); and

1

- Tonyaz does not dispute that, having purchased his shares in the aftermarket as opposed to the IPO, to pursue claims under Section 11 he must rely on a "tracing" theory likely subject to failure since other shares -- not emanating from the IPO -- entered the market following the IPO.

Nonetheless, Tonyaz and his counsel ask this Court to close one eye for the time being and settle for a blurred view of his **actual** financial stake, while ignoring his inadequacy and appoint him sole lead plaintiff. In so doing, Tonyaz ignores the perils present in such an approach as demonstrated by the Second Circuit's recent ruling in Levitt v. Rogers, 06-5298-cv, 2007 U.S. App. LEXIS 29362 (2d Cir. December 18, 2007) (Summary Order), where after years of litigation and settlement, the Second Circuit held that the district court erred in not appointing a lead plaintiff with comparatively smaller losses who had standing to pursue the asserted claims against all of the named defendants.

## ARGUMENT

### A.   Tonyaz Overstates His Losses

Tonyaz's entire claim to appointment as lead plaintiff is his purported loss of $319,889.00. This claimed loss grossly overstates his actual financial interest in the relief sought. As previously explained in Rubin and Leru's opposition papers, plaintiffs pursuing claims based on violation of Section 11 of the Securities Act are limited to maximum recoverable damages of no more than "the price at which the security was offered to the public." In the case of Fuwei's IPO, that price was $8.28 per share. Yet, despite having been made aware of his error, Tonyaz once again in his reply papers, merely repeats his erroneous claim of having suffered losses of **$319,889.00**. It is clear that he arrives at this number by incorrectly using the

2

price he paid in the aftermarket – several dollars higher than the IPO price[1] – to calculate his claimed losses. See Loss Chart attached as Exhibit 3 to the December 17, 2008 Declaration of Phillip Kim (the "Kim Decl."). However, as the text of the statute makes clear, the price Tonyaz paid for his shares is irrelevant. The only thing that matters in estimating his damages is the recoverable amount under the statute pursuant to which the claims are being pursued. When recalculated properly using $8.28 per share as opposed to the $13.96 per share used by Tonyaz, his estimated damages are at most **$132,429.00**. Of course, if Tonyaz subsequently sold any of his shares at a price higher than $4.267 per share (the price used by Rubin to determine the terminal value), his estimated losses would decline even further. Tonyaz does not disclose whether or not he sold his shares, and if so, at what price?[2] Having misrepresented the extent of his losses, Tonyaz has not demonstrated his entitlement to any presumption and has only demonstrated his inadequacy to serve as lead plaintiff.

    **B.**    **Tonyaz Concedes That He Lacks Section 12(2) Standing**

Tonyaz does not dispute that Rubin has standing to bring claims under Section 12(2) of the Securities Act and that he does not. Rather, Tonyaz hopes to avoid the issue by referring to these claims as merely being "prospective" claims which, if appointed, he intends to pursue with the help of absent class member Jerome Sahlman. Tonyaz is wrong on the facts and the law. First, the claims are not prospective – they are actual, having been brought by Rubin who in

---

[1] Tonyaz's certification and loss chart indicate that he purchased 33,000 shares at an average price of $13.96 per share. See Declaration of Phillip Kim dated December 18, 2007 Exhs. 2 and 3.

[2] Since the time of Tonyaz's certification dated October 30, 2007, Fuwei shares traded as high as $7.05 per share. Given the uncertainty as to Tonyaz's losses, plaintiff Rubin respectfully requests the right to conduct discovery on these issues.

addition to suing Fuwei and its officers and directors, named the Underwriters as defendants. Second, Tonyaz cannot save his application with a late inning call to the bullpen. Sahlman neither filed a complaint nor timely moved for appointment as lead plaintiff. Thus, he is not and cannot be a candidate for lead plaintiff and his certification is irrelevant at this stage of the litigation. See In re Telxon Corp., Secs. Litig., 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999) ("The PSLRA is unequivocal and allows for no exceptions. All motions for lead plaintiff must be filed within sixty (60) days of the published notice for [*16] the first-filed action. The plain language of the statute precludes consideration of a financial loss asserted for the first time in a complaint, or any other pleading, for that matter, filed after the sixty (60) day window has closed."); Switzenbaum v. Orbital Sciences Corp., 187 F.R.D. 246, 249-50 (E.D. Va. 1999) (stating that to be considered for Lead Plaintiff a person must either file a complaint or make a timely motion, and concluding that since the interested plaintiff "never filed a complaint himself or moved for appointment within the time that the PSLRA requires of those who hope to become the Lead Plaintiff" he could not be considered individually or as part of a group who had filed a timely motion).

Moreover, the averments of Sahlman's sworn certification contradict Tonyaz's and his counsel's representation to the Court describing the role Sahlman purportedly agreed to play under Tonyaz's leadership; that is, Sahlman only authorized his counsel to sue Fuwei and its directors and officers:

> The individual or institution listed below (the "Plaintiff") authorizes the Rosen Law Firm, P.A. to file an action or amend a current action under the federal securities laws to recover damages and to seek other relief against **Fuwei Films (Holdings) Co., Ltd. ("FFH"), and certain of its officers and directors.** The Rosen

4

> Law Firm, P.A. agrees to prosecute the action on a contingent fee
> basis not to exceed one-third of any recovery and will advance all
> costs and expenses. Any legal fees and expenses will be
> determined by, and payable, only upon order of the U.S. District
> Court. (Emphasis Added.)

See Reply Declaration of Phillip Kim dated January 14, 2008 (the "Kim Reply Decl.") Exh. 1. Thus, contrary to Tonyaz's supposed plan for how he will conduct this litigation, Sahlman has not authorized anyone to bring claims against the Underwriters on his behalf.

Sahlman also does not state that he is willing to act as a class representative in this action, as his counsel claims. Rather, his certification only avers his willingness to serve as a lead plaintiff. See Kim Reply Decl. Exh. 1 ("I am willing to serve as a lead plaintiff either individually or as part of a group."). Sahlman's certification, however, is dated January 10, 2008, three weeks <u>after</u> the deadline for making a lead plaintiff application expired. The submission of Sahlman's certification, its execution after the eleventh hour and the erroneous claims as to its contents can only be seen for what it is – a lawyer driven charade in which counsel use absent class members' certifications like pawns to obtain the role of lead counsel.[3]

### C. Tonyaz Cannot Support His Tracing Theory

Tonyaz concedes that, as an aftermarket purchaser, the only way he can successfully pursue his Section 11 claim is under a tracing theory. Yet, he fails to substantiate his theory that his shares can be traced to the IPO or, more importantly, explain why the class should be saddled with representation that is likely to fail to protect their claims. Specifically, he does not dispute that, as Rubin pointed out in her papers, tens of thousands of additional shares entered the market

---

[3] In any event, based on his certification, Sahlman purchased fewer shares in the IPO than Rubin and, therefore, Rubin is the most adequate plaintiff for those claims.

5

following the IPO, making a tracing theory all but impossible. Instead, he points out that he is no worse off than any other aftermarket purchaser, such as Rubin's co-movant, Costachi Leru. Tonyaz misses the point. In a class action, in order for the claims to be justiciable, the party asserting them must have standing to do so, and cannot "acquire such status through class representation." Congregation of Ezra Sholom v. Blockbuster, Inc., 2007 U.S. Dist. LEXIS 63570, at *19-20 (N.D. Tex. Aug. 22, 2007). Rubin has such standing, Tonyaz does not. It is precisely for this reason that Rubin and Leru move jointly, assuring that the class' claims would survive any challenge.

### D.   Rubin Is Not Merely A Niche Plaintiff

Recognizing just how shaky he ground upon which he stands is, Tonyaz attempts to shift the focus away from his own infirm footing by mischaracterizing the nature of Rubin's position. Contrary to Tonyaz's desperate spin, Rubin does not seek appointment as a niche plaintiff. Rubin has standing to assert all of the available claims. Tonyaz does not have standing to sue the Underwriters and the failure of his tenuous "tracing" theory would eliminate any possible standing to pursue any of his asserted claims. Rubin seeks appointment as a lead plaintiff for all of the claims, not a niche plaintiff for some of the claims. In this regard, as the cases cited by Tonyaz confirm, situations in which courts have rejected niche plaintiffs have involved situations where, for example, Exchange Act claims were brought by a lead plaintiff with standing to do so and the niche plaintiff sought to represent those pursuing Securities Act claims for the same fraud covered by the overriding Exchange Act claims or where there were additional named plaintiffs with standing to pursue the niche claims – this is plainly not the situation presented here.

6

## CONCLUSION

For all of the foregoing reasons, plaintiff Rubin and Movant Leru respectfully request that their Motion for Appointment as Lead Plaintiffs and Approval of Their Selection of Lead Counsel be granted in its entirety and that they be granted such other and further relief as the Court deems just and proper.

Dated: January 17, 2008

Respectfully submitted,

**WEISS & LURIE**

By: /s/ Joseph H. Weiss
Joseph H. Weiss (JW-4534)
Jack I. Zwick (JZ-2514)
David C. Katz (DK-6235)
551 Fifth Avenue
New York, New York 10176
Tel:    (212) 682-3025

**Attorneys for Plaintiffs
Meira Rubin and Costachi Leru**