105.    In order to more clearly understand how the second transfer of shares of Shandong Fuwei occurred and who the relevant parties to the transfer were, please refer to Chart 4, which is attached as part of Exhibit 2.

106.    Fuwei BVI[12] was incorporated in the British Virgin Islands on or about August 20, 2004. It was set up for the purpose of acquiring all interests in the Production Lines. Fuwei BVI is a wholly owned subsidiary of FFH, which was 100% owned by The Transferees through a chain of subsidiaries of subsidiaries.

107.    On or about October 27, 2004, three days after Beijing Baorui purchased the DMT Line, Fuwei BVI paid Shandong Baorui (which, as stated above, was largely owned by and almost fully controlled by the Transferees) and Shenghong Group Co., Ltd RMB 91.093 million for all of their shares of Shandong Fuwei, which at the time owned the Bruckner Line.

108.    The chain of subsidiaries of subsidiaries of which the Transferees together have complete ownership is as follows:

    a)    Shandong Fuwei -- set up for the purpose of owning the state-owned assets previously owned by Neo-Luck Plastics, which was controlled but not owned by the Transferees, and which owns the Bruckner Line -- is a fully-owned subsidiary of Fuwei BVI;

    b)    Fuwei BVI is a fully-owned subsidiary of FFH;

    c)    At the time of the IPO, Apex Glory Holdings Ltd. owned 79% of the shares of FFH, and Easebright Investments Ltd. owned 21% of FFH;

---

12 Fuwei BVI was also known as Fuwei Films BVI Co. Ltd.

d) i) East Faith Holdings Limited owns 100% of Apex Glory Limited;

ii) Good Success Enterprises Ltd. owns 100% of Easebright Investments Ltd;

e) i) Yin owns 100% of East Faith Holdings Limited; and

ii) Wang and Zhou together own 100% of Good Success Enterprises Ltd.

109.    In actuality, after seeing through all the shell-subsidiaries, at the time the Registration Statement and Prospectus were declared effective, Yin was a 79% owner, and Wang and Zhou together were 21% owners, of Shandong Fuwei, their shell company established in order to acquire the state-owned assets that the three Transferees had looted from Neo-Luck Plastics.

**Transfer of Shares of Beijing Baorui, and its Asset DMT Line,**

**to Shandong Fuwei, Indirectly 100% Owned by Transferees**

110.    In order to more clearly understand how the transfer of shares of Beijing Baorui occurred and who the relevant parties to the transfer were, please refer to Chart 5, which is attached as part of Exhibit 2.

111.    On or about December 25, 2004, two months after Beijing Baorui purchased the DMT Line for RMB 33.848 million at auction from Weifang City Commercial Bank, which seized the DMT Line from Neo-Luck, Beijing Baorui sold the DMT Line at another auction for RMB 119.28 million to Shandong Fuwei.

112.    In essence, The Transferees sold the DMT Line to Shandong Fuwei, an entity the Transferees controlled and which would soon become FFH, for almost four times the price they purchased it via auction from Neo-Luck Plastics, the company also controlled by the Transferees.

113.    Indeed, as stated above, while almost 50% of the shares of Beijing Baorui were indirectly owned by the Transferees, and while Beijing Baorui was, upon information and belief,

27

89% controlled by the Transferees, at the time of the transfer to Shandong Fuwei, the Transferees indirectly owned 100% of the shares of Shandong Fuwei.

114.    Consistent with the discreet looting of the assets of Neo-Luck Plastics by the Transferees was the lack of disclosure in the Registration Statement that top control positions within Neo-Luck Group were held by two of the Transferees, Yin, both founder and former Chairman of the Board, and Wang, current Chairman of the Board.

115.    The Registration Statement failed to disclose the control positions Yin and Wang maintained at Neo-Luck Group.  Had these relationships been disclosed, the legality of the auction-sales of the Production Lines would have been questioned, the risk of an adverse legal challenge much greater, and FFH's PRC counsel, Concord & Partners, would have refused to issue an opinion that the acquisitions of the Production Lines were legal under Chinese laws and regulations.

## CHALLENGES TO TRANSFERS OF PRODUCTION LINES TO FFH, INDIRECTLY OWNED ENTIRELY BY TRANSFEREES

### Neo-Luck Asset Transfers Challenged by Great Wall

116.    On or about October 2005, Great Wall Asset Management Co. ("Great Wall"), one of four Chinese companies that are the largest purchasers of non-performing debt owed to Chinese banks, purchased approximately RMB 1.9 billion of non-performing debt owed by Neo-Luck Group to banks in China.  Great Wall began negotiations with Neo-Luck Group to receive payment on this debt in late 2005 and continued these negotiations throughout 2006.

117.    Subsequent to the failure of Great Wall's negotiations to get paid by Neo-Luck Group, which was controlled by the Transferees, on or about April or May of 2006, approximately seven or eight months prior to the effective date of the Registration Statement and Prospectus, Great

28

Wall reported to the media that the executive management of Neo-Luck Group (which included Yin and Wang) had caused Neo-Luck Plastics to sell, and Neo-Luck Group was in the process of selling, their state-owned assets to private companies owned by the executive managers and control persons of Neo-Luck Group, who were, again, the Transferees.

## DMT S.A. Served FFH in Arbitration Proceeding in ICC International
## Court of Arbitration for Debt related to Purchase of DMT Line

118.   On or about April 2006, DMT S.A. filed an arbitration proceeding seeking recovery of money owed related to the purchase of the DMT Line by FFH in the ICC International Court of Arbitration ("ICC") seeking monetary damages in the amount of $1,250,000.

119.   This fact was not disclosed in the Registration Statement, which was filed and declared effective approximately eight months later on December 18, 2006.

120.   For the first time, FFH revealed information regarding the arbitration proceeding in its 20-F annual report filed with the SEC on April 2, 2007, one year after the fact, as follows:

> In April 2006, we received a request for arbitration and related papers in an arbitration proceeding between DMT S.A. ("DMT") and Shandong Neoluck Plastics Co. Ltd. ("Neoluck"). The arbitration was filed in the ICC International Court of Arbitration and seeks monetary damages against Neoluck of approximately $1,250,000, plus interest. The claim relates to Neoluck's purchase of certain equipment from DMT (the subject equipment is the DMT production line we acquired from Beijing Baroui in 2005 in Neoluck's bankruptcy). We do not have any contract with DMT, written or otherwise, let alone one requiring we arbitrate before the ICC International Court of Arbitration. Despite our arguments to the Court of Arbitration that we are not subject to arbitration, in January 2007 the ICC notified us that it would permit DMT's claim to proceed against us (rather than Neoluck, which is bankrupt). We have not yet answered the request for arbitration. Although we intend to vigorously oppose the claim, we may become obligated to pay damages if the three (3) arbitrators hearing the matter conclude that we (rather than Neoluck) should be responsible for Neoluck's debt to DMT.

121.    Thus, in its 20-F annual report, FFH admits it was served with the arbitration demand in connection with a claim concerning the DMT Line as early as April 2006 – well before the IPO date.

122.    FFH claimed that the arbitration proceeding was originally between DMT S.A. and Neo-Luck. The fact that FFH was served with the Arbitration demand in April 2006, in conjunction with the decision by ICC in January 2007 that FFH could not be dismissed as a party, begs the question whether or not FFH was also originally named as a defendant at the inception of the arbitration proceeding.

123.    The Registration Statement was false and misleading for failing to disclose the arbitration proceeding demanding payment of $1,250,000 and concerning its main production asset because Regulation SK, Item 103, requires that any pending legal proceeding be disclosed if it is material and if the Registrant or one of its subsidiaries is a party to, or if property the Registrant owns is a subject of, the proceeding.

124.    Because the claim for $1,250,000 is material, and because the DMT Line, property belonging to FFH, is a subject of the arbitration proceeding, the failure to disclose this proceeding rendered the Registration Statement false and misleading.

30

**Investigation and Proceedings Led by Ministry of Public Authority:**

**Suspension of Ability to Travel Abroad**

125.    Because Great Wall was unable to recover its debt, and because Great Wall deemed the transfers of the Production Lines to be illegal, in mid-2006 Great Wall requested the Ministry of Public Security, through China Banking Regulatory Commission to commence legal proceedings and an investigation of the Transferees misconduct in causing Neo-Luck Plastics to sell the Production Lines at below market values to entities owned by the Transferees.

126.    As a result of the investigation, an order was issued to suspend the ability of Yin, Wang and several others to travel outside of China.

127.    In November 2006, the ability of Yin and Wang to travel outside of China was suspended. The Registration Statement failed to disclose either the legal proceedings, investigation, or the order restricting Yin and Wang's travel outside of China.

128.    The Registration Statement was false and misleading for failing to disclose the investigation and legal proceedings conducted by the Ministry of Public Authority against Yin and Wang.

129.    FFH also omitted the material fact from its Registration Statement that, at the inception of the proceedings against Yin and Wang, the Chinese authorities issued an order suspending the travel outside of China.

130.    Regulation S-K, Item 401(f), as it pertains to directors, and Item 401(g), as it pertains to controlling shareholders, require disclosure of any order limiting the respective abilities of any directors or any shareholders to engage in "any business."

31

131.    FFH conducted much business in the United States, Japan, and India, according to the Registration Statement, while the order made at the inception of the criminal proceedings suspended the Transferees ability to engage in business in those foreign countries. The Registration Statement thus failed to adhere to Reg. S-K's disclosure requirements.

132.    FFH also materially misrepresented the dire risk it faced of losing its essential assets, the Productions Lines, without which FFH would be out of business.

133.    That there were an investigation and legal proceedings conducted by the Ministry of Public Security against the two people who owned 90% of FFH based on its acquisition of the Production Lines in the auctions showed that the purchases did not merely subject the Transferees to an uncertain civil claim, but that the purchases were clearly, at the time of the respective transactions, in violation of Chinese law and were threatened with a serious challenge to the lawfulness of the acquisitions of the Production Lines.

134.    That DMT S.A. had initiated the arbitration proceeding against FFH, rather than Neo-Luck, reinforces that, from the time the purchases of the Production Line were made, anyone who actually understood how the Transferees engineered the transactions involved in consummating said purchases could also see the flagrant illegality of the conduct.

135.    Thus, it was clear as early as when the Production Lines were purchased that there was a huge risk that claims against FFH regarding FFH's acquisition of the state-owned assets at below-market price would be successful.

136.    Yet the Registration Statement falsely stated that, based on opinion of FFH's counsel, where the opinion was claimed by FFH to have been based on facts that FFH *itself* presented to

32

counsel, the chance of success of any potential claim for repayment regarding the purchase of the Production Lines was "remote."

### Suspension of Travel Continued

137.    In or about February 2007, at the end of the three-month period of time during which the Transferees' passports (and maybe the passports of other current and former managers of Neo-Luck Group in addition) were confiscated by the State, the Ministry of Public Security, through China Banking Regulatory Commission, renewed the suspension of the ability of the Transferees, and maybe of some other top managers of New-Luck Group in addition, whose passports had been previously confiscated in November 2006, to travel outside of China.

### National Audit Office of China conducted Audit of Great Wall and Neo-Luck

138.    On or about March 2007, during an audit of the Neo-Luck loans owned by Great Wall, the National Audit Office of China found Neo-Luck Plastics' bankruptcy fake in that it was used by the Transferees for the purpose of illegally escaping debt and selling state-owned assets for less than fair market value.

139.    The National Audit Office proceeded to do a special on-site audit of Neo-Luck Plastics' as well as of other subsidiaries of Neo-Luck Group.

140.    On or about mid-April, after completing the audit, the National Audit Office determined the case relating to the bankruptcy of Neo-Luck Plastics, and the below fair market value sale of its assets, to be very serious, and then reported the case to the State Council.

### FFH Dismissed Independent Auditor, KPMG

141.    On or about April 24, 2007, FFH declared that it had dismissed KPMG, which had been its independent auditor since before the Registration Statement and Prospectus were declared effective on December 19, 2006.

142.    FFH appointed Murrell, Hall, McIntosh & Co PLLP as its independent auditor on or about the same day it dismissed KPMG, April 24, 2007.

143.    KPMG was "dismissed" just three weeks after FFH revealed for the first time to the public on or about April 2, 2007 in its 20-F Annual Report, that the ICC International Court of Arbitration would allow DMT S.A. to proceed in its legal proceeding against FFH regarding matters related to the purchase of the DMT Line, a legal proceeding which was served on FFH in April 2006.

144.    In addition, KPMG was dismissed less than a month after the Shandong Police stated publicly on May 7, 2007 that a special investigation team had been formed by the Ministry of Public Security, China Banking Regulatory Commission, the National Audit Office and the Chinese Communist Party Central Committee for Discipline Inspection. The purpose of the special team was to address the alleged false bankruptcy and below fair market-value sale of state owned assets by Yin, Wang and Zhou.

145.    KPMG had provided a clean audit opinion for the financial statements in the Registration Statement, which conveyed that there were no pending legal proceedings against FFH relating to the purchases of the Production Lines.

**Transferees Become the Object of Special Investigation by Chinese Communist Party**

146.    Once the State Council received the report from the National Audit Office that the case relating to the seizure of state-owned Neo-Luck assets by the Transferees was serious, the Central Commission for Discipline Inspection of the Chinese Communist Party, the Ministry of

34

Public Security, the National Audit Office and the Banking Regulatory Commission filed the criminal case immediately.

147.    On or about May 2007, the Chinese Communist Party commenced a special investigation of the Transferees, and other top managers of Neo-Luck Group, such investigation being conducted in the unique manner that Chinese Communist Party members are investigated for criminal acts.

### Departure of CFO of FFH

148.    On or about June 1, 2007, following the inception of the special criminal investigation of the Transferees, which occurred on or about May 2007, FFH's CFO, Lin Tang, was replaced by Cindy Lu.

### Fourth Stage of Criminal Proceedings: Transferees Arrested

149.    Having been charged with seizing state-owned assets, on or about September 28, 2007, the Transferees, and certain other managers of Neo-Luck Group in addition, were arrested and put under "Shuanggui," a method of arrest used only in cases where members of the Chinese Communist Party are prosecuted for criminal acts.

150.    When the unlawful manner by which the Transferees acquired the Production Lines was discovered by Chinese governmental bodies, the Transferees were thus immediately arrested: demonstrating that the transfers were in fact illegal and against Chinese laws and regulations..

151.    Therefore, at the time of the transfers of the Production Lines and prior to the IPO, it should have been clear to all Defendants upon even the smallest investigation that the risk that the transfers would be successfully challenged in court was colossal.

152.    Yet, there was even greater certainty of imminent successful challenges to the transfers of the Production Lines by the time the Registration Statement was declared effective, because, by that date, the first stage of the investigation and legal proceedings had begun, with the initial investigation and legal proceedings having begun and the passports of the Yin and Wang having been confiscated; and, by that date the arbitration proceeding had already been initiated.

### Departure of Directors of FFH

153.    On or about October 18, 2007, Zhou, one of the Transferees who was under Chinese Communist Party arrest, Shuanggui, and Stulga both resigned as directors of FFH.

### Second Resignation/Replacement of FFH's Independent Auditors in Six Months

154.    On or about November 1, 2007, little more than one month after the transferees were put under Chinese Communist Party arrest, a/k/a Shuanggui, FFH's independent auditor, Murrell, Hall, McIntosh & Co. PLLP ("MHM"), resigned.

155.    FFH stated in a Press Release, dated November 6, 2007:

As a result of the disclosure that three significant direct or indirect shareholders of the Company were arrested on charges related to the suspicion of the crime of irregularities for favoritism and to sell state-owned assets at low prices, MHM resigned as the independent auditor of Fuwei.

156.    The resignation of MHM was the second time in approximately six months that FFH's independent auditors successively resigned or were replaced.

157.    KPMG had been "dismissed" as FFH's independent auditor on or about April 24, 2007, about three weeks after FFH announced that FFH had been served approximately eight months prior to the IPO date a complaint in the arbitration proceeding for which FFH's property, the DMT Line, was the subject matter.

36

**The False And Misleading Statements in the Registration Statement
Caused Class Members to Suffer Economic Losses**

158.    On April 30, 2007 the Company announced that it had hired a new accounting firm to

serve as the Company's independent registered auditor—Murrell, Hall, McIntosh & Co., PLLP,

replacing the Company's previous auditor, KPMG, LLP.

159.    This announcement, which was issued midday on April 30, 2007, caused the

Company's stock price to fall on 6.2% or $.66 to $9.97 per share that day. The announcement caused

additional $.41 decline on May 1, 2007.

160.    Upon information and belief, the replacement of KPMG as auditors occurred because

KPMG learned that (i) FFH had failed to disclose the arbitration demand concerning the DMT Line

in April 2006, and (ii) Chinese authorities had recently commenced a special investigation of FFH's

acquisition of the Production Lines.

161.    On the morning of June 25, 2007, the Company revealed, for the first time, details of

the criminal proceedings against the Transferees.  The press release states in relevant part:

> Fuwei Films Discusses Proceedings Related to Three of Its Stockholders
>
> BEIJING, June 25 /Xinhua-PRNewswire-FirstCall/ -- Fuwei Films (Holdings)
> Co., Ltd. (Nasdaq: FFHL - News; "Fuwei Films") today stated that it had become
> aware of reports that Mr. Jun Yin, Mr. Duo Wang, and Mr. Tongju Zhou are
> involved in an investigation conducted by the Chinese Communist Party that
> began in May and mid-June 2007. Mr. Jun Yin is a 53% shareholder of Fuwei
> Films and Mr. Tongju Zhou, a director of Fuwei Films, together with Mr. Duo
> Wang, indirectly own 14% of Fuwei Films. None of these individuals are
> involved in Fuwei Films' day-to-day operations [sic].
>
> Upon Fuwei Films' receipt of what it deems to be credible, accurate and verifiable
> information relating to such investigation, it will promptly notify the public
> thereof. Unofficial sources have reported that the inquiry relating to these three
> individuals is as a result of the ongoing financial dispute between Weifang
> Neoluck Group ("Neoluck") and a certain Chinese asset management company.

37

Messrs. Yin, Zhou and Wang are the former management executives of Neoluck. Although Fuwei purchased certain equipment formally owned by Neoluck through a public auction, Neoluck does not have any current relationship with Fuwei Films.

162.    The June 25, 2007 announcement caused the Company's stock to fall approximately 14% or $1.01 to $6.14 per share, from the previous trading day.

163.    On October 16, 2007, FFH announced that Chinese authorities had issued arrest notices for Jun Yin, Duo Wang, and Tongju Zhou, "relating to the suspicion of the crime of irregularities for favoritism and to sell state-owned assets at low prices." The announcement caused the Company's stock to drop 23.5% or $2.25 to $7.30 per share from the previous day close, and continued to fall an additional $.40 through October 19, 2007.

164.    On November 6, 2007 the Company announced that its recently retained independent registered auditor, Murrell, Hall, McIntosh & Co., PLLP, had resigned "[a]s a result of the disclosure that three significant direct or indirect shareholders of the Company were arrested on charges related to the suspicion of the crime of irregularities for favoritism and to sell-state owned assets at low prices."

165.    This adverse news caused the Company's stock to fall 17.5% or $1.12 to $5.25 per share on November 6, 2007.  The Company' stock fell an additional $.57 per share through November 9, 2007 as a result of the negative announcement.

166.    On November 12, 2007 the Company announced its Third Quarter 2007 results and revealed that its much touted third production line would be delayed, as a result of the capital shortfall "required to commence operation of the Third Production Line." This delay was a result of the "limited response from commercial banking lenders because of the shareholder investigation"

38

related to the arrest of Yin, Wang and Zhou for acquiring the Production Lines illegally. Consequently, the Company was "unable to find sufficient sources of financing on satisfactory terms to meet our original estimated timeline for capital availability in order to ensure the delivery of equipment by the end of December 2007. As a result the commencement of the operation of the Third Production Line has been delayed."

167.    The November 12, 2007 adverse announcement caused the Company's stock to fall 33.5% or $1.57 to $3.11 per share on that day.

168.    On March 6, 2008 the Company announced that its CFO, Cindy Liu had resigned. This caused the Company's stock to fall 14.7% or $.69 per share to $3.69 per share. This announcement caused additional declines through the next three trading days of $.39 per share closing at $2.95 per share on March 11, 2008.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

169.    Pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), Plaintiffs bring this action as a class action on behalf of themselves and all others who purchased FFH common stock (i) in the Company's IPO on December 19, 2006, or (ii) in the aftermarket pursuant, and/or traceable to, the Company's Registration Statement and Prospectus issued in connection with the IPO, during the period from December 19, 2006 through November 12, 2007.

170.    Excluded from the Class are Defendants, all current and former officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which such excluded persons have or had a controlling interest.

39

171.    The members of the Class are so numerous that joinder of all members is impracticable.    Approximately 4,312,500 shares of the Company's common stock were sold in the IPO.

172.    The precise number of the Class members is unknown to Plaintiffs at this time but it is believed to be in the thousands.  Members of the Class may be identified from records maintained by FFH or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

173.    Plaintiffs' claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal securities laws that is complained of herein.

174.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

175.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)  whether the provisions of the Securities Act were violated by Defendants' acts as alleged herein;

(b)  whether the Registration Statement and Prospectus issued by Defendants to the investing public omitted and/or misrepresented material facts about the Company and its business; and

(c)  the extent to which members of the Class have sustained damages, and the proper measure of damages.

40

176.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## FIRST CLAIM

### Violation of Section 11 of the Securities Act
### Against All Defendants, Except Wang and Yin

177.    Plaintiffs repeat and realleges each and every allegation contained above as if fully set forth herein. This claim is not based on, does not allege, nor does it sound in, fraud.

178.    This Section 11 claim is asserted against all Defendants, except Wang and Yin.

179.    This claim is brought by Plaintiffs on their own behalf and on behalf of other members of the Class who acquired FFH stock in and pursuant to or traceable to the Company's IPO. Each Class Member acquired his, her, or its shares in, pursuant to and/or traceable to, and in reliance on, the Registration Statement and Prospectus. FFH is the issuer of the securities through the Registration Statement and Prospectus.

180.    The Individual Defendants, except Wang and Yin, are signatories of the Registration Statement.

181.    Each of the Defendants owed to the purchasers of the stock obtained through the Registration Statement and Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement and Prospectus at the time they became effective

41

to ensure that such statements were true and correct and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading.

182.     None of the Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the challenged statements contained in the Registration Statement and Prospectus were true or that there was no omission of material facts necessary to make the statements made therein not misleading.

183.     Defendants issued and disseminated, caused to be issued and disseminated, and participated in the issuance and dissemination of, material misstatements to the investing public that were contained in the Registration Statement and Prospectus, which misrepresented or failed to disclose, among other things, the challenged facts set forth above. By reason of the conduct alleged herein, each defendant violated and/or controlled a person who violated Section 11 of the Securities Act.

184.     FFH is the issuer of the stock sold via the Registration Statement and Prospectus. As issuer of stock, the Company is strictly liable to Plaintiff and the Class for the material misstatements and omissions therein.

185.     At the times they purchased their shares of FFH, Plaintiff and members of the Class did so without knowledge of the true facts concerning the misstatements and omissions alleged herein.

186.     This action is brought within one year after discovery of the untrue statements and omissions in the Registration Statement and Prospectus that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Registration Statement and Prospectus.

187.    By virtue of the foregoing, Plaintiffs and the other members of the class are entitled to damages under Section 11 as measured by the provisions of the Section 11(e), from the Defendants and each of them, jointly and severally.

## SECOND CLAIM

### Against Defendants FFH, the Underwriters, Stulga, Zhou and He for Violation of §12(a)(2) of the Securities Act

188.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein. This claim is not based on, does not allege, nor does sound in, fraud.

189.    This Count is asserted against Defendants FFH, the Underwriters, Stulga, Zhou and He for violations of §12(a)(2) of the Securities Act by Jerome Sahlman on behalf of all plaintiffs and members of the Class who purchased FFH common stock directly from the Underwriters in the IPO.

190.    Plaintiff Jerome Sahlman purchased 1,000 shares of FFH common stock in the IPO on December 19, 2006 at a price of $8.28/share directly from one of the Underwriters.

191.    Each of the Defendants was a seller, offeror, and/or solicitor of sales of the shares offered in connection with the IPO as defined under §12(a)(2) of the Securities Act and pertinent common law.

192.    The Prospectus contained misstatements of material facts, and omitted to state facts necessary to make the statements made therein not misleading, concerning FFH's business, circumstances surrounding acquisition of the Production Lines, risks to the Company's assets, pending legal proceedings and future business prospects, as set forth herein.

193.    Each of the Defendants' actions of solicitation included participating in the preparation of the false and misleading Prospectus and soliciting investors in person, over the

43

telephone, through the mails and through road show presentations. The Underwriter Defendants, Defendants Zhou, Stulga and He attended road show presentations with investors with the specific intent to solicit the purchase of FFH common stock in the IPO.

194.    Plaintiff Jerome Sahlman and the other members of the Class purchased or otherwise acquired FFH common stock directly from the Underwriter Defendants and issued in the IPO pursuant to or traceable to the false and misleading Registration Statement and Prospectus.

195.    Plaintiffs did not know, or in the exercise of due diligence could not have known, of the untruths and omissions contained in the Registration Statement and Prospectus.

196.    By reason of the conduct alleged herein, each of the Defendants have violated §12(a)(2) of the Securities Act and Plaintiffs and members of the Class have suffered damages as a result of such violations.

197.    Plaintiffs, individually and representatively, hereby elect to rescind and tender to those defendants named in this Count those securities that plaintiffs and other members of the Class continue to own, in return for the consideration paid for those securities together with interest thereon. Plaintiffs and the other members of the class who have sold their FFH common stock seek rescissory damages.

198.    This action was brought within one year after the discovery of the untrue statements and omissions and within three years after the IPO.

## THIRD CLAIM

### Violations of Section 15 of the Securities Act
### Against the Individual Defendants

44

199.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.  This claim is not based on, and does not allege, nor does it sound in, fraud.

200.    This claim is asserted against each of the Individual Defendants, each of whom was a control person of FFH during the relevant time period.

201.    For the reasons set forth above and pursuant to the first and second claims, FFH is liable to the plaintiffs and the members of the Class who purchased FFH common stock in the IPO or pursuant and/or traceable to the Registration Statement based on the untrue statements and omissions of material fact contained in the Registration Statement and Prospectus, under §11 and §12(a)(2) of the Securities Act.

202.    The Individual Defendants were control persons of FFH by virtue of, among other things, their positions as senior officers, directors and/or controlling shareholders of the Company.  Each was in a position to control and did in fact control FFH and the false and misleading statements and omissions contained in the Registration Statement and Prospectus

203.    None of the Individual Defendants made reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and Prospectus were accurate and complete in all material respects.  Had they exercised reasonable care, they could have known of the material misstatements and omissions alleged herein.

204.    This claim was brought within one year after the discovery of the untrue statements and omissions in the Registration Statement and Prospectus and within three years after FFH common stock was sold to the Class in connection with the IPO.

205.    By reason of the misconduct alleged herein, for which FFH is primarily liable, as set forth above, the Individual Defendants are jointly and severally liable with and to the same

extent as FFH pursuant to Section 15 of the Securities Act.

**WHEREFORE**, Plaintiffs pray for relief and judgment, as follows:

(a) Determining that this action is a proper class action, and certifying Plaintiffs herein as class representatives under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Class Counsel;

(b) Awarding damages in favor of Plaintiffs and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c) Awarding Plaintiffs and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

<u>**JURY TRIAL DEMANDED**</u>

Plaintiffs hereby demand a trial by jury.

Dated: March 14, 2008                     Respectfully submitted,

                                          **THE ROSEN LAW FIRM, P.A.**

                                          Phillip Kim, Esq. (PK 9384)
                                            Email: pkim@rosenlegal.com
                                          Laurence Rosen, Esq. (LR 5733)
                                            Email: lrosen@rosenlegal.com
                                          350 Fifth Avenue, Suite 5508
                                          New York, NY  10118
                                          Phone: (212) 686-1060
                                          Fax: (212) 202-3827

                                          Lead Counsel for Plaintiffs and Class

## CERTIFICATION

The individual or institution listed below (the "Plaintiff") authorizes the Rosen Law Firm, P.A. to file an action or amend a current action under the federal securities laws to recover damages and to seek other relief against Fuwei Films (Holdings) Co., Ltd. ("FFH"), and certain of its officers and directors. The Rosen Law Firm, P.A. agrees to prosecute the action on a contingent fee basis not to exceed one-third of any recovery and will advance all costs and expenses. Any legal fees and expenses will be determined by, and payable, only upon order of the U.S. District Court.

Plaintiff declares, as to the claims asserted under the federal securities laws, that:

1.      I have reviewed the complaint against FFH and certain of its officers and directors and I retain the Rosen Law Firm, P.A. as counsel in this action for all purposes.

2.      I did not engage in transactions in the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this or any other litigation under the securities laws of the United States.

3.      I am willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.

4.      The following is a list of all of the purchases and sales I have made in FFH securities during the class period set forth in the complaint. I have made no transactions during the class period in the debt or equity securities that are the subject of this lawsuit except those set forth below.

| Number of Shares Purchased or Sold | Date(s) Purchased | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| | see attached | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM:  (212) 202-3827

5.      I have not, within the three years preceding the date of this certification, sought to serve or served as a representative party on behalf of a class in an action involving alleged violations of the federal securities laws, except: for the following company(ies):

6.      I will not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as travel expenses and lost wages directly related to the class representation, as ordered or approved by the court pursuant to law.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ___14___ day of __NOVEMBER__, 2007.


Signature: _Daniil Reouk_____
Name:      DANIIL REOUK
Address:

Phone:
E-mail:


Item. 4 (continue from prior page if needed)

| Number of Shares Purchased or Sold | Date(s) Purchased | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM at (212) 202-3827
OR MAIL TO:
THE ROSEN LAW FIRM PA
350 FIFTH AVENUE, SUITE 5508
NEW YORK, NY   10118

2

| DATE | TRANSACTION ID | DESCRIPTION | QUANTITY | SYMBOL | PRICE | COMMISS | AMOUNT |
|---|---|---|---|---|---|---|---|
| 10/4/2007 | 3197044551 | Bought 1700 FFHL @ 9.26 | 1700 | FFHL | 9.26 | 9.99 | -15752 |
| 10/4/2007 | 3197044553 | Bought 1700 FFHL @ 9.27 | 1700 | FFHL | 9.27 | 0 | -15759 |
| 10/4/2007 | 3197044555 | Bought 300 FFHL @ 9.28 | 300 | FFHL | 9.28 | 0 | -2784 |
| 10/4/2007 | 3197044557 | Bought 8300 FFHL @ 9.3 | 8300 | FFHL | 9.3 | 0 | -77190 |
| 10/4/2007 | 3197088328 | Bought 12500 FFHL @ 9.2498 | 12500 | FFHL | 9.24976 | 9.99 | -115632 |
| 10/4/2007 | 3197088331 | Bought 2500 FFHL @ 9.25 | 2500 | FFHL | 9.25 | 0 | -23125 |
| 10/4/2007 | 3197223750 | Bought 1099 FFHL @ 9.2 | 1099 | FFHL | 9.2 | 9.99 | -10120.8 |
| 10/5/2007 | 3200006772 | Bought 15000 FFHL @ 9.25 | 15000 | FFHL | 9.25 | 9.99 | -138760 |
| 10/5/2007 | 3200552603 | Bought 4440 FFHL @ 9.2 | 4440 | FFHL | 9.2 | 9.99 | -40858 |
| 10/9/2007 | 3206322370 | Bought 372 FFHL @ 9.25 | 372 | FFHL | 9.25 | 9.99 | -3450.99 |
| 10/9/2007 | 3206322366 | Bought 200 FFHL @ 9.27 | 200 | FFHL | 9.27 | 9.99 | -1863.99 |
| 10/9/2007 | 3206322368 | Bought 372 FFHL @ 9.25 | 372 | FFHL | 9.25 | 9.99 | -3450.99 |
| 10/9/2007 | 3206336813 | Sold 5000 FFHL @ 10.3 | 5000 | FFHL | 10.3 | 9.99 | 51489.22 |
| 10/10/2007 | 3209288033 | Sold 100 FFHL @ 10.35 | 100 | FFHL | 10.35 | 9.99 | 1024.99 |
| 10/10/2007 | 3209288035 | Sold 200 FFHL @ 10.34 | 200 | FFHL | 10.34 | 0 | 2067.96 |
| 10/10/2007 | 3209288037 | Sold 9700 FFHL @ 10.33 | 9700 | FFHL | 10.33 | 0 | 100199.5 |
| 10/10/2007 | 3210056509 | Sold 8928 FFHL @ 10.3 | 8928 | FFHL | 10.3 | 9.99 | 91947 |
| 10/10/2007 | 3210054902 | Sold 900 FFHL @ 10.4 | 900 | FFHL | 10.4 | 9.99 | 9349.86 |
| 10/11/2007 | 3213567164 | Sold 400 FFHL @ 10.43 | 400 | FFHL | 10.43 | 9.99 | 4161.94 |
| 10/11/2007 | 3213567166 | Sold 400 FFHL @ 10.39 | 400 | FFHL | 10.39 | 0 | 4155.93 |
| 10/11/2007 | 3213567168 | Sold 200 FFHL @ 10.37 | 200 | FFHL | 10.37 | 0 | 2073.96 |
| 10/11/2007 | 3213583659 | Bought 100 FFHL @ 9.6 | 100 | FFHL | 9.6 | 9.99 | -969.99 |
| 10/11/2007 | 3213367195 | Bought 100 FFHL @ 9.68 | 100 | FFHL | 9.68 | 9.99 | -977.99 |
| 10/11/2007 | 3213367200 | Bought 600 FFHL @ 9.69 | 600 | FFHL | 9.69 | 0 | -5814 |
| 10/11/2007 | 3213367203 | Bought 19200 FFHL @ 9.7 | 19200 | FFHL | 9.7 | 0 | -186240 |
| 10/11/2007 | 3213585220 | Bought 7810 FFHL @ 9.53 | 7810 | FFHL | 9.53 | 9.99 | -74439.3 |
| 10/12/2007 | 3216566401 | Bought 20000 FFHL @ 9.7 | 20000 | FFHL | 9.7 | 9.99 | -194010 |
| 10/12/2007 | 3216792723 | Bought 1800 FFHL @ 9.72 | 1800 | FFHL | 9.72 | 9.99 | -17506 |
| 10/19/2007 | 3233196073 | Sold 494 FFHL @ 6.93 | 494 | FFHL | 6.93 | 9.99 | 3413.37 |
| 10/22/2007 | 3235698900 | Sold 2000 FFHL @ 6.52 | 2000 | FFHL | 6.52 | 9.99 | 13029.81 |
| 11/12/2007 | 3305367572 | Sold 300 FFHL @ 4.66 | 300 | FFHL | 4.66 | 9.99 | 1387.98 |
| 11/12/2007 | 3305367574 | Sold 2300 FFHL @ 4.65 | 2300 | FFHL | 4.65 | 0 | 10694.83 |
| 11/12/2007 | 3304597458 | Sold 7400 FFHL @ 4.421 | 7400 | FFHL | 4.421 | 9.99 | 32704.9 |
| 11/12/2007 | 3304665576 | Sold 1800 FFHL @ 3.7433 | 1800 | FFHL | 3.74333 | 9.99 | 6727.89 |
| 11/12/2007 | 3304665582 | Sold 1450 FFHL @ 3.74 | 1450 | FFHL | 3.74 | 0 | 5422.91 |
| 11/12/2007 | 3305171388 | Sold 5000 FFHL @ 3.51 | 5000 | FFHL | 3.51 | 9.99 | 17539.74 |
| 11/12/2007 | 3305368281 | Sold 1150 FFHL @ 4.41 | 1150 | FFHL | 4.41 | 9.99 | 5061.43 |
| 11/12/2007 | 3305368558 | Sold 600 FFHL @ 4.29 | 600 | FFHL | 4.29 | 9.99 | 2563.97 |
| 11/13/2007 | 3308979507 | Sold 516 FFHL @ 3.3 | 516 | FFHL | 3.3 | 9.99 | 1692.78 |
| 11/13/2007 | 3308979510 | Sold 300 FFHL @ 3.27 | 300 | FFHL | 3.27 | 0 | 980.98 |
| 11/13/2007 | 3308979512 | Sold 1200 FFHL @ 3.25 | 1200 | FFHL | 3.25 | 0 | 3899.94 |
| 11/13/2007 | 3308208135 | Sold 10000 FFHL @ 3.22 | 10000 | FFHL | 3.22 | 9.99 | 32189.51 |
| 11/13/2007 | 3308241537 | Sold 10000 FFHL @ 3.26 | 10000 | FFHL | 3.26 | 9.99 | 32589.51 |

## CERTIFICATION

The individual or institution listed below (the "Plaintiff") authorizes the Rosen Law Firm, P.A. to file an action or amend a current action under the federal securities laws to recover damages and to seek other relief against Fuwei Films (Holdings) Co., Ltd. ("FFH"), and certain of its officers and directors. The Rosen Law Firm, P.A. agrees to prosecute the action on a contingent fee basis not to exceed one-third of any recovery and will advance all costs and expenses. Any legal fees and expenses will be determined by, and payable, only upon order of the U.S. District Court.

Plaintiff declares, as to the claims asserted under the federal securities laws, that:

1.    I have reviewed the complaint against FFH and certain of its officers and directors and I retain the Rosen Law Firm, P.A. as counsel in this action for all purposes.

2.    I did not engage in transactions in the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this or any other litigation under the securities laws of the United States.

3.    I am willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.

4.    On December 19, 2006, I purchased 1,000 shares of Fuwei Films (Holdings) Co., Ltd in the IPO at a price of $8.28. I still retain all of these shares.

5.    I have not, within the three years preceding the date of this certification, sought to serve or served as a representative party on behalf of a class in an action involving alleged violations of the federal securities laws, except: for the following company(ies):

6.    I will not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as travel expenses and lost wages directly related to the class representation, as ordered or approved by the court pursuant to law.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ___10th___ day of __January_____, 2008.

Signature: _____

Name: Jerome Sahlman

Address:

Phone:

E-mail:

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM at (212) 202-3827

OR MAIL TO:

THE ROSEN LAW FIRM PA

350 FIFTH AVENUE, SUITE 5508

NEW YORK, NY  10118