Alyson M. Weiss (AW-8474)
Laura M. Vasey (LV-0847)
LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154-1895
(212) 407-4000 (telephone)
(212) 407-4990 (fax)

*Attorneys for Defendants Fuwei Films (Holdings) Co.,*
*Ltd., Xiaoan He, and Mark Stulga*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X
                        :

                        :   No. 07-CV-9416 (RJS)

*In re*                 :

FUWEI FILMS SECURITIES LITIGATION

                        :

-------------------------------------------------------- X

# MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS FUWEI FILMS (HOLDINGS) CO., LTD., XIAOAN HE, AND MARK STULGA'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Defendants Fuwei Films (Holdings) Co., Ltd. ("Fuwei" or the "Company"), Xiaoan He, and Mark Stulga, respectfully submit this memorandum of law in support of their motion to dismiss with prejudice Plaintiffs' Consolidated Amended Class Action Complaint (the "Complaint" or "Cmplt.") pursuant to Rule 8(a)(2), (9)(b), and 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim for violation of Sections 11, 12(a)(2), or 15 of the Securities Act of 1933 (the "Securities Act").[1]

## PRELIMINARY STATEMENT

Plaintiffs purport to assert claims against the Company, Xioaon He, Mark Stulga, and others for violation of Sections 11, 12(a)(2), and 15 of the Securities Act, based upon alleged misstatements and omissions in the Company's Registration Statement ("Registration Statement") and Prospectus, issued in connection with the Company's December 19, 2006 initial public offering ("IPO") of common stock.[2]  Plaintiffs initiated this suit following the Company's disclosure that three of its major shareholders – defendants Jun Yin, Duo Wang, and Tongju Zhou – had been arrested in China for suspicion of the crimes of "irregularities for favoritism" and the sale of state-owned assets at low prices.

Plaintiffs' theory, which is not supported by any facts whatsoever, is that these shareholders are under investigation for improperly selling state-owned assets to Fuwei – specifically, the Company's primary operating assets, the Bruckner and DMT production lines. Plaintiffs now contend that Fuwei's acquisition of its primary operating assets was illegal and therefore subject to rescission, which the Registration Statement failed to disclose to the

---

[1]    The legal arguments in the memorandum of law in support of the motion to dismiss of defendants Maxim Group, LLC, WR Hambrecht + Co, and Chardan Capital Markets, LLC (collectively, the "Underwriters") are incorporated herein by reference.

[2]    The Registration Statement (without accompanying exhibits) is attached to the Complaint as Exhibit 1 and cited herein as "Reg. Stmt. (Compl. Ex. 1) at __".  Citations refer to the page numbers in the upper right corner of the Registration Statement.

investing public.  Plaintiffs' claims, however, are belied by the disclosures in the Registration Statement itself, and Plaintiffs fail to plead any facts <u>existing at the time of the IPO</u> that the Company had a duty to disclose but did not.

All of Plaintiffs' allegations concern the Company's acquisition of its production lines from Shandong Neo-Luck Plastics Co., Ltd. ("Neo-Luck") and the risk of recourse against those assets.  In essence, Plaintiffs assert that the Registration Statement (1) misrepresented the possibility that any creditor or government authority would challenge the Company's purchase and ownership of the production lines; (2) failed to disclose that Messrs. Yin and Wang "were under investigation for illegally selling the state-owned assets of Neo-Luck Group and its subsidiary, Shandong Neo-Luck, including the two production lines that Fuwei ultimately purchased; and (3) failed to disclose that Messrs. Yin, Wang, and Zhou were effectively on both sides of Shandong Fuwei's acquisitions from Neo-Luck.  *See* Compl. ¶¶ 5, 7.  However, these claims are based upon an egregious mischaracterization of the Registration Statement's disclosures and are not supported by any facts whatsoever.

First, Plaintiffs' allegations are pleaded exclusively "on information and belief" and the "investigation of counsel," yet they fail to reveal, as they must, the sources of information and bases of belief.  Plaintiffs' broad-brush reliance on "publicly available information" is insufficient.  They do not, as they must, identify their alleged sources by name, quote from the alleged reports, or even identify the dates of such reports.  This deficiency alone is fatal to Plaintiffs' claims.

Second, the information that Plaintiffs allege should have been disclosed in the Registration Statement was publicly available in the Chinese news media and, as Plaintiffs

admit, "readily obtainable on the Internet" (Compl. intro para.). Defendants thus had no duty to disclose this information, which is equally fatal to Plaintiffs' claims. *See infra* Part III.B.

Third, remarkably, the supposed statement that is the lynchpin of Plaintiffs' claim that the Registration Statement described as "remote" the possibility of a challenge to the Company's acquisitions actually <u>appears nowhere in the Registration Statement</u>. To the contrary, the Registration Statement warned that "[t]here can be **<u>no assurance</u>** that relevant authorities or creditors of the predecessor owner of these assets **<u>will not challenge</u>** the effectiveness of these asset transfers…." Reg. Stmt. at 11 (emphasis added). The only possibility that the Registration Statement described as "remote" was the possibility of a <u>successful challenge</u> to the Company's acquisitions, which was a forward-looking statement of opinion by the Company's PRC counsel surrounded by ample cautionary language. *See* Reg. Stmt. (Compl., Ex. 1) at 12. Plaintiffs do not, as they must, plead facts establishing that the speaker did not actually hold the opinion <u>and</u> that the opinion stated was, in fact, incorrect. In any event, Plaintiffs fail to plead facts showing that PRC counsel had actual knowledge that their forward-looking statement was incorrect (which, notably, remains to be seen), as they must to overcome the Private Securities Litigation Reform Act's ("PSLRA") safe harbor for forward-looking statements and the judicial bespeaks caution doctrine.

Fourth, Plaintiffs' claims also should be dismissed because the alleged misstatements and omissions in the Registration Statement did not cause Plaintiffs' alleged losses. Although the Company's stock declined temporarily following the Company's disclosure of the investigation, it rebounded shortly thereafter and by October 2007, was trading above the December 2006 IPO price. The investigation of Messrs. Yin, Wang, and Zhou thus was immaterial to the Company's investors or had already been incorporated into the Company's stock price (because, according to

Plaintiffs, such information was publicly available before the IPO).  Either way, the facts establish the affirmative defense of negative loss causation.

As further demonstrated below, Plaintiffs' allegations are incurably deficient and should be dismissed with prejudice.[3]

### FACTUAL BACKGROUND

The relevant facts, in contradistinction to the bevy of irrelevant and confusing digressions interjected by Plaintiffs, are quite simple and straightforward.  Fuwei manufactures and sells high-quality plastic film for consumer packaging and industrial uses in China.  In 2003 and 2004, it bought its primary product lines from Neo-Luck, which filed for bankruptcy between the two sales.  The latter sale was conducted under the auspices of the bankruptcy authorities and both were conducted through a public auction.

Trouble followed Neo-Luck.  In 2006, a company called Great Wall Asset Management Company ("Great Wall"), which had acquired some of Neo-Luck's debt in 2005, questioned the legitimacy of Neo-Luck's bankruptcy filing.  Contrary to the intimation set forth in the Complaint, nothing that Great Wall alleged did, or could, implicate the sales to Fuwei, which had occurred one and two years prior to Great Wall's acquisition of the Neo-Luck debt.

Neo-Luck, of course, is not Fuwei.  The connection between the two is that three of the largest shareholders of Fuwei were former managers of Neo-Luck.  Because of the Great Wall allegations, according to certain press reports, these three individuals were subjected to some sort of travel restrictions prior to the time of the Fuwei IPO.  Subsequent to the IPO, the individuals apparently have been arrested for suspicion of engaging in certain conduct that apparently is

---

[3]    The Complaint should be dismissed with prejudice because Plaintiffs' allegations are incurably deficient and granting them leave to replead would be futile.  *See In re AOL Time Warner Inc. Secs. and "ERISA" Litig.*, 381 F. Supp. 2d 192, 248 (S.D.N.Y. 2004) (denying plaintiffs leave to replead Section 11 claims against defendant because defendant's disclosure precluded liability as a matter of law).

illegal in the People's Republic of China: "irregularities for favoritism" and the sale of state-owned assets at low prices. Since there has never been any public complaint with regard the 2003 – 2004 sales to Fuwei, there is no reason to believe that the arrests have anything to do with the sales to Fuwei. There is an indication, however, that a different sale has garnered complaint.

<u>**ARGUMENT**</u>

In deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *See Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 5 (2d Cir. 1996). *Cf. American Centennial Ins. Co. v. Seguros La Republica, S.A.*, No. 91 Civ. 1235, 1996 WL 304436, at *16 (S.D.N.Y. June 5, 1996) ("Allegations are not well pleaded if they are 'made indefinite or erroneous by other allegations in the same complaint[, or] ... are contrary to facts of which the Court will take judicial notice.'"). "[L]egal conclusions, deductions or opinions couched as factual allegations" are not entitled to "a presumption of truthfulness," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007), *cert. denied*, 128 S. Ct. 1707 (2008) nor are "unreasonable inferences" and "legal conclusions at odds with plaintiff's own factual allegations." *Solow v. Stone*, 994 F. Supp. 173, 181 (S.D.N.Y.), *aff'd*, 163 F.3d 151 (2d Cir. 1998) .

On a motion to dismiss, the Court may consider not only the complaint and attachments thereto, but also documents incorporated into the complaint by reference, SEC filings, documents integral to Plaintiffs' allegations, and matters subject to judicial notice. *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995); *ATSI Commc'ns. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

**I.    PLAINTIFFS' SECTION 11 AND 12(A)(2) CLAIMS SHOULD BE DISMISSED FOR FAILURE TO SATISFY THE MINIMAL PLEADING REQUIREMENTS.**

Whether measured against the pleading requirements of Rule 8(a)(2) or Rule 9(b),

Plaintiffs' allegations do not and cannot state a claim for violation of Section 11 or 12(a)(2).

### A.     Requirements to State a Claim under Sections 11, 12(a)(2), and 15

To state a claim for violation of Sections 11 or 12(a)(2) of the Securities Act, a plaintiff must plead facts establishing that defendants made an untrue statement of a material fact or made a material omission in the registration statement or prospectus. *See* 15 U.S.C. § 77k(a) (applying to registration statements); *id.* § 77*l* (applying to prospectuses). Here, Plaintiffs' claims principally concern alleged omissions from the Registration Statement.

When a plaintiff claims a material omission, "a plaintiff must allege that defendants had a legal obligation to disclose the allegedly omitted information." *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 610-11 (S.D.N.Y. 2008). *See Geiger v. Solomon-Page Group, Ltd.,* 933 F. Supp. 1180, 1187-88 (S.D.N.Y. 1996) (dismissing claims where defendants were not required to disclose allegedly omitted information). As a matter of law, however, there is no duty to disclose information that is publicly available. *Garber*, 537 F. Supp.2d at 611 ("the securities laws do not require disclosure of information that is publicly known.") (citation omitted).

A duty to disclose arises only when the alleged omission or misrepresentation is material. *See Garber*, 537 F. Supp.2d at 610 ("omission or misrepresentation must be material … for a duty to disclose to attach") (citations omitted). To establish materiality, the plaintiff must show "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available", *id.* at 610-11, such that defendants' representations "would have [misled] a reasonable investor' about the nature of the investment." *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.,* 936 F.2d 759, 761 (2d Cir. 1991) (citation omitted). A complaint may be properly dismissed under Rule 12(b)(6) where the alleged misstatements or omissions "are so

obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Garber*, 537 F. Supp. 2d at 611.

### B.　　The Pleading Requirements

#### 1.　　Under Rule 8(a)(2)

The pleading requirements of Rule 8(a) apply to claims for violation of Section 11 and 12(a)(2) when they sound in negligence. To satisfy the pleading requirements of Rule 8(a)(2), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007) (factual allegations "must be enough to raise a right to relief above the speculative level").[4] As interpreted by the Second Circuit, *Bell Atlantic* "requir[es] a flexible 'plausibility standard,' which obligates a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir. 2007). "Asking for plausible grounds to infer [a violation of the securities laws] … calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the violation]." *Bell Atlantic*, at 1969.

#### 2.　　Under Rule 9(b)

Where claims sound in fraud, as here, the heightened pleading requirements of Rule 9(b) apply. *See Rombach v. Chang,* 355 F.3d 164, 171 (2d Cir. 2004) (applying Rule 9(b) to Sections 11 and 12(a)(2) claims grounded in fraud). In those circumstances the complaint must "state with particularity the specific facts in support of [plaintiffs'] belief that [defendants'] statements were false when made[.]" *Rombach*, 355 F.3d at 172. Failure to satisfy Rule 9(b)'s pleading

---

[4]　　In *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955 (2007), the Supreme Court jettisoned the long-standing rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

requirements is grounds for dismissal of the complaint.  *See IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp.2d 574, 596 (S.D.N.Y. 2007) (dismissing Section 11 claims for failure to satisfy requirements of Rule 9(b)).

### C.    Plaintiffs' Section 11 and 12(a)(2) claims are subject to the heightened pleading requirements of Rule 9(B).

Plaintiffs' Complaint is rife with precisely the kinds of allegations that are classically associated with fraud.  Plaintiffs repeatedly assert that the Registration Statement was "false and misleading" (Compl. ¶¶ 11, 40, 47, 59, 128 and p. 8); "misrepresented" the legality of Fuwei's acquisitions and the risk of recourse against those assets (¶¶ 45, 48, 132 and p. 12); "falsely stated" that there were no pending or threatened legal proceedings regarding the Production Lines at the time of the IPO (¶ 68); and "misleadingly failed to disclose" an arbitration proceeding concerning the DMT production line and certain other information, which rendered the Registration Statement "materially false" (¶¶ 60, 69, 70).

Courts in this Circuit repeatedly have held that such allegations sound in fraud and  have applied Rule 9(b) to plaintiffs' claims under Sections 11 and 12(a)(2).  *See Rombach*, 355 F.3d at 172 (concluding that "the wording and imputations of the complaint [were] classically associated with fraud" where plaintiffs alleged "that the Registration statement was 'inaccurate *and* misleading;' that it contained '*untrue* statements of material facts;' and that 'materially *false* and *misleading* written statements' were issued"); *In re Ultrafem Secs. Litig.,* 91 F. Supp. 2d 678, 690 (S.D.N.Y. 2000) (applying Rule 9(b) where "plaintiffs [made] little, if any, effort to differentiate their asserted negligence claims from the fraud claims which permeate the

Complaint.").[5] Thus, to survive the instant motion to dismiss, Plaintiffs' allegations must satisfy the heightened pleading requirements of Rule 9(b).

### D. Plaintiffs Fail to Plead Facts Supporting Their Allegations on "Information and Belief," as Required to Satisfy Rule 9(b).

Where plaintiffs' allegations are made "on information and belief" and "the investigation of counsel," plaintiffs must plead facts describing their sources "with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Novak v. Kasaks,* 216 F.3d 300, 314 (2d Cir. 2000).[6] *See Toussaint v. JJ Weiser & Co.,* No. 04-CV-2592 (MBM), 2005 WL 356834, at *10-11 (S.D.N.Y. Feb. 9, 2005) ("To base a general allegation of fraud on allegations that themselves rest 'on information and belief' without any factual support or source does not satisfy Rule 9(b).") *See also Kershaw v. Nautica S.A. Ltd.*, 885 F. Supp. 617, 621-22 (S.D.N.Y. 1995) ("[E]ach allegation made on information and belief must include "a statement of facts upon which the belief is founded," ... including the 'source of the information and the reasons upon which the belief is founded.'").[7]

Here, Plaintiffs' allegations are based entirely upon "information and belief" and "the investigation conducted by and through [Plaintiffs'] attorneys" (Compl., intro. para.), yet

---

[5]    This conclusion is not altered by Plaintiffs' boilerplate assertions that each of these claims "is not based, does not allege, nor does it sound in, fraud" (Compl. ¶¶ 177, 188). Plaintiffs indisputably contend that Messrs. Yin, Wang, and Zhou engaged in fraudulent acts (*see* Compl. ¶¶ 50, 58, 60) and incorporates all of those allegations by reference into Plaintiffs' Section 11 and 12(a)(2) claims. *See id.* ¶¶ 177, 188. Thus, although Plaintiffs make a token effort to cast their claims in terms of negligence (*see* Compl. ¶¶ 181-82), even those allegations are inextricably intertwined with their allegations of fraud.

[6]    *See Van Ormer v. Aspen Tech., Inc.,* 145 F. Supp. 2d 101, 104 (D. Mass. 2000) ("Pleading based on investigation by counsel is similar to pleading on information and belief; the complaint must specify the facts upon which the information is based.").

[7]    *See G-I Holdings, Inc. v. Baron & Budd*, No. 01 Civ. 0216, 2004 WL 1277870, at *2 (S.D.N.Y. June 10, 2004) (collecting cases in which district courts in this Circuit required plaintiffs to specifically plead the sources of their information for Rule 9(b) pleadings based on "information and belief").

Plaintiffs provide absolutely no factual detail regarding the sources upon which they rely. Although Plaintiffs contend that their allegations are based upon a variety of publicly available information – including "information readily obtainable on the Internet" (*id.*) and "the Chinese news media (Compl. ¶¶ 28, 63), Plaintiffs do not identify their alleged media sources by name, quote from the alleged media reports, or even identify the dates of such reports. Without this specificity, neither defendants nor the Court can determine whether the information upon which Plaintiffs rely was reported by a reliable source or simply "chat-room" rumor, much less whether Plaintiffs have drawn reasonable inferences from the information. *See Crystal v. Foy,* No. 80 Civ. 446, 1981 WL 1648, at *3 (S.D.N.Y. June 30, 1981) ("[T]he sources of the information and belief should be sufficiently identified so as to allow each defendant and the Court to review the sources and determine, at the pleading stage, whether an inference of fraud may be fairly drawn from the information contained therein.").

Courts in this district have consistently dismissed allegations for failure to satisfy Rule 9(b) where, as here, the allegations are made on information and belief, but fail to specify the sources upon which plaintiffs rely. *See, e.g., Feasby v. Industri-Matematik Int'l Corp.*, No. 99 Civ. 8761, 2000 WL 977673, at *6 (S.D.N.Y. July 17, 2000) (dismissing fraud allegations as unsupported by facts where complaint was "a series of conclusory generalizations – a generic reference to 'press releases' or 'analysts' reports' does not cure that defect."); *Crystal,* 562 F. Supp. at 425-26 (Rule 9(b) not satisfied where plaintiff cited defendant's annual and other reports, press releases, and a "potpourri" of newspaper and magazine articles to which the

complaint did not make specific reference).[8]  The Complaint should be dismissed for this reason alone.

## II.   PLAINTIFFS' CLAIMS ARE BASED UPON THE ALLEGED OMISSION OF PUBLICLY AVAILABLE INFORMATION, WHICH DEFENDANTS HAD NO DUTY TO DISCLOSE.

Plaintiffs' claims also should be dismissed because all of the alleged false and misleading statements in the Registration Statement are based upon information that was, by Plaintiffs' own admissions, publicly available, which defendants had no duty to disclose.  *See Garber*, 537 F. Supp. 2d at 610; *In re Merrill Lynch & Co. Research Reports Secs. Litig.*, 272 F. Supp. 2d 243, 249-51 (S.D.N.Y. 2003) ("Sections 11 and 12(a)(2) do not require the disclosure of publicly available information.") (citing cases).  *See also Klein v. Gen. Nutrition Cos.,* 186 F.3d 338, 343 (3d Cir. 1999) (where the information was public knowledge, "[f]ederal securities laws do not require a company to state the obvious"); *Wielgos v. Commonwealth Edison Co.,* 892 F.2d 509, 517 (7th Cir. 1989) ("It is pointless and costly to compel firms to reprint information already in the public domain"); *Seibert v. Sperry Rand Corp.,* 586 F.2d 949, 952 (2d Cir. 1978) ("Although the underlying philosophy of federal securities regulations is that of full disclosure, there is no duty to disclose information to one who reasonably should already be aware of it.") (internal citations omitted).

Plaintiffs' allegations, by their own admissions, are based upon publicly available information, namely, reports in the Chinese news media, information they claim was "readily

---

[8]   *See also Kershaw*, 885 F. Supp. at 621-22 (Rule 9(b) not satisfied where "almost the entire section of the complaint regarding its causes of action are based upon plaintiffs' allegations made upon "information and belief," and plaintiffs do not specify the specific sources of their information and belief"); *Moll v. U.S. Life Title Ins. Co. of New York,* 654 F. Supp. 1012, 1035 (S.D.N.Y. 1987) (pleading failed to satisfy Rule 9(b) where a "preponderance of plaintiffs' allegations [were] made upon information and belief" and the sources were only generally identified materials such as congressional reports, governmental agency pamphlets, and testimony from state court proceedings).

obtainable on the Internet," SEC filings, press releases, analyst reports, and advisories about the Company. *See* Compl. intro. para. and ¶¶ 28, 63. *See In re Pfizer, Inc. Secs. Litig.*, No. 06 Civ. 14199, 2008 WL 540120, at *6 (S.D.N.Y. Feb. 28, 2008) ("It is evident that the allegedly omitted information was available to the market because plaintiffs, in their effort to identify allegedly omitted information, rely entirely on sources that were available publicly during the class period."). Because an issuer has no duty to disclose publicly available information, the alleged non-disclosure of this information cannot be actionable and this Plaintiffs' claimed violation of Sections 11 or 12(a)(2) must be dismissed. As this deficiency is both fatal to Plaintiffs' claims and incurable, the Complaint should be dismissed with prejudice.

III.    **PLAINTIFFS FAIL TO IDENTIFY ANY STATEMENT IN THE REGISTRATION STATEMENT THAT WAS FALSE OR MISLEADING WHEN MADE.**

Plaintiffs contend that the Registration Statement: (1) misrepresented as "remote" the risk that the Company's acquisitions might be challenged by Neo-Luck's creditors or the Chinese government; (2) falsely stated that the Company's acquisition of the production lines from Neo-Luck "conformed with Chinese law" and that "no challenge to the legality of the [Company's acquisitions] had been initiated"; (3) failed to disclose that Messrs. Yin, Wang, and Zhou were effectively on both sides of the transactions in which Fuwei acquired the Bruckner and the DMT production lines from Neo-Luck and Beijing Baorui, respectively; and (4) failed to disclose an arbitration concerning the DMT production line. Compl. ¶¶ 5, 9, 11. However, all of these allegations are belied by the disclosures in the Registration Statement itself or otherwise fail to plead an actionable misstatement or omission in the Registration Statement.

**A.     The Registration Statement Contains No Actionable Misstatement or Omission Regarding the Risk of Recourse Against the Company's Production Lines.**

Plaintiffs cannot state a valid claim for relief based upon any purported misrepresentation regarding the risk of recourse against the Company's production lines because the Registration Statement repeatedly and conspicuously disclosed the very facts and risks that Plaintiffs contend were omitted.   Where, as here, the alleged omissions are belied by the disclosures in the Registration Statement, plaintiffs' allegations cannot be credited as true and should be dismissed. *See Miller v. Lazard, Ltd.*, 473 F. Supp. 2d 571, 579 (S.D.N.Y. 2007) ("If a plaintiff's claims of misstatement or omission contradict the plain language of the prospectus, the court bears no obligation to accept as true the allegations of the complaint …. and dismissal is appropriate because no set of facts could prove the plaintiff's claims."); *Barnum v. Millbrook Care Ltd. P'ship,* 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994) (citing cases), *aff'd,* 43 F.3d 1458 (2d Cir. 1994).

Plaintiffs insist that the Registration Statement represented that "there was only <u>a remote possibility</u> that any creditor or government authority <u>would seek to challenge</u> the Company's purchase and ownership of the production lines." Compl. ¶ 5 (emphasis added).  But this alleged statement appears nowhere in the Registration Statement.   To the contrary, the Registration Statement plainly warned:

> There can be **<u>no assurance</u>** that relevant authorities or creditors of the predecessor owner of these assets **<u>will not challenge</u>** the effectiveness of these asset transfers based upon the facts and circumstances of these transfers, despite the existence of independent appraisals, and **<u>other facts and circumstances of the auctions that cannot be verified</u>** by our PRC counsel.

Reg. Stmt. at 11 (emphasis added).

Indeed, given the ample, detailed, and repeated warnings throughout the Registration Statement, no reasonable investor could have misunderstood the magnitude of the risk involved

in investing in the Company's stock.  The Registration Statement repeatedly and conspicuously warned:  "**Investing in our ordinary shares involves a high degree of risk.  You should read carefully the "Risk Factors" beginning on page 10 of this prospectus before investing in our ordinary shares.**" Reg. Stmt. at 4 (emphasis in original) and at 13 ("Risk Factors").[9]

The "Risk Factors" exhaustively and specifically detail the risks related to the Company's business as well as the risks of operating a business in China, including changes in China's political and economic policies, the uncertain legal environment, and the risk of recourse against the Company's primary operating assets – the very risk that Plaintiffs contend was not adequately disclosed.  As to the risk posed by changes in China's political and economic policies, the Registration Statement warns that this "may lead to changes in the laws and regulations, and interpretation of the same." Reg. Stmt. at 19, 21.  The Registration Statement also discloses that there are "significant uncertainties" regarding the interpretation and enforcement of China's laws, regulations, and legal requirements, and that "the enforceability of contracts in China, especially with the government, is relatively uncertain…."  Reg. Stmt. at 21.

The Registration Statement also contains a risk factor specifically aimed at the risk of recourse against the Company's production lines:  "**The circumstances under which we acquired ownership of our main productive assets may jeopardize our ability to continue as an operating business**." Reg. Stmt. at 14 (bold in original, italics omitted).  Under the rubric of this cautionary language, the Company disclosed a variety of circumstances that could threaten Fuwei's ownership of the Bruckner and DMT production lines, including the very facts that the Bruckner line was acquired in a foreclosure proceeding and the DMT line was acquired from a

---

[9]    The Registration Statement also disclosed the Company's expectation that it "would face challenges in [its] business operations" engendered by, among other things, the political and economic conditions in China and the other factors detailed in the "Risk Factors."  *Id.* at 7-8.

consigner (Beijing Baorui), who purchased the asset from Shandong Neo-Luck in a bankruptcy proceeding. *Id.* at 14-15.

The Registration Statement provides, however, that, "[i]n the opinion of our PRC counsel, Concord & Partners, these proceedings are both valid under Chinese auction and bankruptcy law based upon certain factual assumptions." Reg. Stmt. at 14. However, the disclosures emphasized that "PRC counsel's opinion solely relates to the legal procedure of the auctions …." *Id.* (emphasis added). The Registration Statement also disclosed that "our PRC counsel is of the opinion that the auctions of the Bruckner and DMT production lines were valid under PRC law and the possibility of the creditors of Shandong Neo-Luck successfully exercising recourse or claiming repayment with respect to our assets purchased in the bankruptcy proceeding should be remote." *Id.* at 15 (emphasis added). This forward-looking statement of opinion was surrounded by ample cautionary language and conditioned upon a number of factual assumptions and qualifiers, all of which bespoke caution. *See id.*

To date, there has not even been a challenge to Fuwei's acquisitions, much less a successful challenge, and, most importantly, Plaintiffs do not allege (nor could they) any fact to the contrary. Moreover, since the actual statement is one of opinion, the only cognizable challenge that may be made to a statement of opinion is that the speaker did not actually hold the opinion and that the opinion stated was, in fact, incorrect. *See Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 1093-98 (1991). Plaintiffs do not adequately allege either here. The Company's PRC counsel opined that the likelihood of Neo-Luck creditors successfully seeking recourse against the production lines "should be remote" because "the legal procedure of the auctions" at which Fuwei purchased its assets were valid under Chinese auction and bankruptcy law. Reg. Stmt. at 12. The mere fact that one of Neo-Luck's creditors alleged that its

15

bankruptcy was false is entirely irrelevant to what Fuwei's PRC counsel (much less the Company) actually believed and whether, in fact, they incorrectly assessed the legality of the auction proceedings or the risk of recourse against the production lines.

The statements of the Company's PRC counsel also are protected by the PSLRA's safe harbor for forward-looking statements and the judicial bespeaks caution doctrine.  *See Panther Partners, Inc. v. Ikanos Commc'ns., Inc.*, 538 F. Supp. 2d 662, 668 (S.D.N.Y. 2008).  The statements of PRC counsel regarding the risk of recourse against the Company's assets in the future are inherently forward-looking, and the Registration Statement repeatedly advised that investors should not rely upon such statements as predictions of future events.[10]  Furthermore, as discussed above, PRC counsel's statements of opinion are surrounded by ample cautionary language concerning the risks.   For all of the same reasons, the statements of PRC counsel are likewise protected by the judicial bespeaks caution doctrine.

## B.    The Registration Statement Contains No Actionable Misstatements or Omissions regarding the Legality of Fuwei's Acquisitions or the Existence of an Investigation.

Plaintiffs contend that the Registration Statement misstated that the Company's acquisitions complied with Chinese law and that no challenge to the legality of the Company's acquisitions had been commenced.   Plaintiffs' allegations are once again defeated by the disclosures in the Registration Statement and their failure to plead sufficient facts to state the causes of action.

The Registration Statement does not contain any statements regarding the legality of the Company's acquisitions generally.  Rather, as the Registration Statement plainly disclosed, PRC

---

[10]    The   Registration   Statement   repeatedly   warned   that   investors "should not rely upon forward-looking statements as predictions of future events", particularly because "we operate in an emerging and evolving environment and new risk factors and uncertainties emerge from time to time…."  Reg. Stmt. at 27.  All of the Company's forward-looking statements were expressly qualified by the Company's cautionary statements.  *See id.* at 13, 27.

counsel's opinion solely related to the <u>legal procedures of the auctions</u> pursuant to which the Company acquired the Bruckner and DMT lines. Plaintiffs do not contend that the auction proceedings themselves were in any way improper, much less plead facts supporting such an inference.

Plaintiffs also fail to plead any facts remotely suggesting that Fuwei's acquisitions were under investigation at the time of the IPO or even now. Although there were reports in 2006 that a Neo-Luck creditor – Great Wall Asset Management Co. ("Great Wall") – had challenged the legitimacy of Neo-Luck's bankruptcy, the reports of that challenge did not vest on Fuwei or evidence any investigation of Fuwei. Those reports made clear that: 1) the challenge concerned Neo-Luck's disposition of state-owned assets **other than** those acquired by Fuwei; 2) the reporter was **not** able to determine whether Great Wall's allegations were consistent with the facts; and 3) the government had **not launched an investigation** into Neo-Luck's bankruptcy and would **not halt the bankruptcy**. *See Great Wall Asset Management Co. Encounters Avoidance of Huge Debt*, April 29, 2006, The Economic Observer (Vasey Decl., Ex. A), and *The Story of Great Wall Asset Company's Collection of 1.9 Billion Debt in Shandong*, June 13, 2006, <u>The Financial and Economic News</u> (Vasey Decl., Ex. B).

There is no hint in the article that the state-owned assets <u>Fuwei</u> purchased from Neo-Luck were at issue in Great Wall's allegations, nor could they have been. Fuwei acquired the Bruckner and DMT production lines at public auction in 2003 and 2004 – long before Great Wall acquired Neo-Luck's non-performing loans in 2005. *See id.* at 1. Rather, the challenge involved a hotel and amusement park. *See id.* ("Currently, a hotel and amusement park belong to Xin Li

Ke that have been involved in the debt claim of Great Wall have entered bankruptcy proceedings.").[11]

The only allegation in the Complaint about the existence of a supposed investigation that comes even close to involving the Company is about Fuwei's major shareholders – not Fuwei itself – Messrs. Yin and Wang, who were also managers of Neo-Luck. That allegation is that these two men allegedly were subject to travel restrictions in November 2006 at the behest of Great Wall. Without much more, that is too thin a reed to support a securities fraud claim. Plaintiffs plead no facts demonstrating that this information was known or capable of being known by defendants, much less that the imposition of such travel restrictions had anything to do with Fuwei's acquisition of assets from Neo-Luck or constituted a disclosable matter. *See Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1445 (5th Cir. 1993) (essential element of Section 11 claim is that the information allegedly omitted from the prospectus was known to the issuer at the time the prospectus was distributed). In any event, the Registration Statement clearly disclosed that there was uncertainty surrounding the circumstances of Neo-Luck's bankruptcy, which is about the only disclosure legitimately supported by these ambiguous facts.

All of Plaintiffs' remaining allegations regarding Fuwei's acquisitions concern events that occurred after Fuwei's IPO and cannot support an inference that the Registration Statement was false when made. *See, e.g.,* Compl. ¶ 137 (in February 2007, passports of Messrs. Yin, Wang, and Zhou were confiscated); ¶ 138 (in March 2007, "during an audit of the Neo-Luck loans owned by Great Wall, the National Audit Office of China found" that Neo-Luck Plastics'

---

[11] Plaintiffs' allegations apparently are based upon the erroneous assumption that the only state-owned assets owned or sold by Neo-Luck (which is largely owned by Weifang Neo-Luck Group, Ltd.) were the production lines acquired by Fuwei; therefore, any investigation regarding the sale of Neo-Luck's state-owned assets must relate to Fuwei's acquisitions. Plaintiffs plead no facts from which this inference could be drawn, and there are none.

bankruptcy was used to "illegally escap[e] debt and sell[] state-owned assets for less than fair market value"); ¶ 147 (in May 2007, "the Chinese Communist Party commenced a special investigation" of Messrs. Yin, Wang, and Zhou).[12]

Such "fraud by hindsight" pleading has been universally rejected as a means of pleading falsity.  *See Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 8 (2d Cir. 1996) ("'Fraud by hindsight' alone will not sustain a complaint."   Just as a plaintiff cannot prove "fraud by hindsight" under § 10(b) of the Securities Exchange Act of 1934, a plaintiff cannot prove that a statement was untrue merely by demonstrating that, in hindsight, a prediction was wrong.); *Sedighim v. Donaldson, Lufkin & Jenrette, Inc.*,  167 F. Supp. 2d 639, 650 (S.D.N.Y. 2001) ("Hindsight is always 20/20.").  In fact, Plaintiffs do not identify any report tying the assets acquired by Fuwei to the investigation of Messrs. Yin, Wang, and Zhou or the allegations of Great Wall, and Plaintiffs' conclusory allegations of a link between the two cannot be credited as true.  *See* Compl. ¶ __.[13]

### C.    The Registration Statement Contains No Actionable Misstatements or Omissions regarding the DMT Arbitration.

Plaintiffs also allege that the Registration Statement failed to disclose that in April 2006 the Company was served with an arbitration demand asserting damages of $1.25 million in

---

[12]   These allegations cannot be accepted as true because Plaintiffs fail to identify the sources of their information.  *See supra* Part II.  Furthermore, the reports available on the Internet do not support Plaintiffs' allegations.  *See, e.g.,* ___.

[13] "[T]he focus of the federal disclosure requirements is publication of 'material objective factual matters.'"   *In re AnnTaylor Stores Secs. Litig.*, 807 F. Supp. 990, 998 (S.D.N.Y. 1992) (quoting  *Data Probe Acquisition Corp. v. Datatab, Inc.,*  722 F.2d 1, 6 (2d Cir.1983)).  The unsupported allegations of Great Wall were not "material objective facts" and defendants had no duty to disclose them, even if they knew about them.  Moreover, to the extent that such allegations were publicly available – and thus equally available to Plaintiffs – Defendants had no duty to disclose these allegations.

connection with the purchase of the DMT production line by Neo-Luck Group. This alleged omission was immaterial as a matter of law.

As disclosed in the Company's April 2, 2007 Form 20-F, DMT's claim concerned Neo-Luck's purchase of the DMT line in 2001 (not Fuwei's purchase of the DMT line at auction in 2004); the Company had no contract with DMT, written or otherwise, let alone one requiring the Company to arbitrate before the ICC International Court of Arbitration; and the Company first received notice in January 2007 (after the IPO) that the Court of Arbitration would permit DMT's claim to proceed against the Company, rather than Neo-Luck. That this alleged omission was immaterial is further supported by the fact that the Company's stock price declined slightly for two days after the filing of the Form 20-F disclosing the arbitration, but rebounded strongly thereafter.

### D. The Registration Statement Contains No Actionable Misstatements or Omissions regarding the Ownership Interests of Messrs. Yin, Wang, and Zhou.

Plaintiffs plead a morass of confusing allegations regarding the entities allegedly controlled or owned by Messrs. Yin, Wang, and Zhou and the minutiae regarding those entities that the Registration Statement allegedly should have disclosed. Although Plaintiffs suggest that there is something nefarious about the complexity of the interrelationships between various entities owned or controlled by these shareholders, Plaintiffs plead no facts supporting such an inference. Even if Plaintiffs allegations could be accepted as true for purposes of this motion (and they cannot), Plaintiffs fail to explain why defendants had a duty to disclose these "facts" in the Registration Statement. *See In re Time Warner, Inc. Secs. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993) ("[A] corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact."); *Howard v. Galesi*, No. 83 Civ. 9078, 1987 WL

18460, at \*6 (S.D.N.Y. Oct. 6, 1987) ("Failure to disclose even material facts does not state a claim unless the defendant has a duty to disclose.").

In essence, Plaintiffs complain that the Registration Statement failed to disclose that Messrs. Yin, Wang, and Zhou effectively were on both sides of the transactions in which Fuwei's subsidiary, Shandong Fuwei, acquired the Bruckner and the DMT production lines from Neo-Luck in October 2003 and December 2004, respectively. *See* Compl. ¶¶ 57-58.  However, the Registration Statement plainly disclosed their interests in the Company, Shandong Fuwei, and the entities that sold the production lines to Shandong Fuwei (Neo-Luck and Beijing Baorui), and Plaintiffs plead no facts – as opposed to bald assertions – to the contrary.[14]

Moreover, although Plaintiffs do not make it clear in their Complaint, these alleged non-disclosures have no independent impact.  Rather, the unspoken allegation is that had Fuwei disclosed the multiple affiliations of its shareholders, the investing public would have known that the product line acquisitions were at risk.  As discussed above, however, Plaintiffs have failed to plead facts to support such a conclusion, no such facts exist, there was adequate disclosure of the facts, and there was adequate disclosure of the risks.

## IV.    ANY ALLEGED MISSTATEMENTS OR OMISSIONS IN THE REGISTRATION STATEMENT DID NOT CAUSE PLAINTIFFS' ALLEGED LOSSES.

Sections 11 and 12 provide an affirmative defense of negative causation: where a defendant proves that the decline in the value of the security in question was not caused by the material omissions or misstatements in the registration statement or prospectus, plaintiff is not

---

[14]    Shandong Fuwei (the wholly-owned operating subsidiary of the Company) was formed in January 2003 and acquired the Bruckner and DMT production lines in October 2003 and December 2004.  *See* Reg. Stmt. at 34.  The Registration Statement repeatedly discloses that Messrs. Yin, Wang, and Zhou founded the Company in 2004; that they owned all of its stock prior to the IPO; and that the Company's wholly-owned subsidiary acquired all of Shandong Fuwei's stock from Shendong Group Co., Ltd. and Shandong Baorui in 2004.  *See* Reg. Stmt. at 35, 74 & F-25.

entitled to recover any damages. *See* 15 U.S.C.A. §§ 77k(e), *l*(b). *See McMahan & Co. v. Wherehouse Entm't, Inc.*, 65 F.3d 1044, 1048 (2d Cir. 1995); *Akerman,* 810 F.2d at 340. This affirmative defense may be established on a motion to dismiss where, as here, the absence of loss causation is apparent from the face of the Complaint and documents of which the Court may take judicial notice. *See In re Merrill Lynch & Co. Research Reports Secs. Litig.*, 272 F. Supp. 2d 243, 253-54 (S.D.N.Y. 2003) (dismissing sections 11 and 12(a)(2) claims where absence of loss causation was apparent from face of complaint).

Plaintiffs seek damages based upon the decline in the Company's stock price following the alleged disclosure of "the truth" beginning in April 2007. *See* Compl. ¶¶ 158-68. However, Plaintiffs cannot recover damages based upon the decline in the Company's stock price following the Company's April 2007 announcement of the dismissal of its auditor, KPMG, because Plaintiffs plead no facts – as opposed to surmise – linking the dismissal to the alleged investigation of Fuwei's shareholders, the DMT arbitration, or any other alleged misstatement or omission in the Registration Statement.

Plaintiffs likewise cannot recover damages based upon any alleged decline in the Company's stock price following the Company's June 25, 2007 press release, disclosing reports that Messrs. Yin, Wang, and Zhou were under investigation. Since there were no misstatements, this press release was not a "corrective" disclosure – revealing prior misstatements – but a disclosure of recent developments. *See McKowan Lowe & Co. v. Jasmine, Ltd.*, No. Civ. 94-5522, 2005 WL 1541062, at *9 (D.N.J. June 20, 2005) ("[B]ecause '[t]he market can only react to news when it is revealed", a defendant who demonstrates that the fraud was not disclosed to the market during the relevant time period has demonstrated that the plaintiffs' loss during that period was caused by factors other than the fraud. Thus, a defendant can make out an

22

affirmative defense under section 11 by demonstrating that the misrepresentations at issue were not disclosed to the market during the relevant time period.), *aff'd*, 231 Fed. Appx. 216 (3d Cir. 2007). This fact alone severs any causal connection between the disclosure of the investigation and Plaintiffs' alleged losses.

Furthermore, damages under Sections 11 and 12 are limited to "the price at which the security was offered to the public." 15 U.S.C. § 77k(e)-(g). *See DeMaria v. Andersen*, 318 F.3d 170, 177 (2d Cir. 2003). Here, although the Company's stock price declined temporarily following the Company's disclosure of the investigation of Messrs. Yin, Wang, and Zhou, it rebounded shortly thereafter and by October 2007, was trading above the December 2006 IPO price of $8.28 per share – months after the Company disclosed the PRC investigation of the shareholders. The investigation thus was immaterial to the Company's investors or had already been incorporated into the Company's stock price (because, according to Plaintiffs, such information was publicly available before the IPO). Either way, Plaintiffs suffered no damages.

Lastly, Plaintiffs cannot recover damages based upon the stock price declines following the Company's October 16, 2007 announcement of the shareholders' arrests because such information did not exist at the time of the IPO.[15]

### CONCLUSION

For all of the foregoing reasons, Plaintiffs' claims for alleged violation of Sections 11, 12(a)(2), and 15 of the Securities Act as against Fuwei Films (Holdings) Co., Ltd., Xiaoan He, and Mark Stulga should be dismissed with prejudice.

---

[15] Because Plaintiffs have failed to pleaded a primary violation of Sections 11 or 12(a)(2), as required to establish control person liability, Plaintiffs' Section 15 claim should be dismissed as well. *See In re Globalstar Sec. Litig.*, 2003 WL 22953163, at *12 (S.D.N.Y. 2003) (citations omitted).

Dated: New York, New York
       May 14, 2008

LOEB & LOEB LLP

By:_____/s/_____

       Alyson M. Weiss (AW-8474)
       Laura M. Vasey (LV-0847)
       345 Park Avenue
       New York, New York 10154-1895
       (212) 407-4000

       *Attorneys for Defendants Fuwei Films
       (Holdings) Co., Ltd., Xiaoan He, and Mark
       Stulga*