**Westlaw Delivery Summary Report for ROSEN,LAURENCE 4761442**

Date/Time of Request:            Wednesday, June 11, 2008 16:25 Eastern

Client Identifier:               FFHL

Database:                        USCA

Citation Text:                   15 USCA s 78u-5

Lines:                           1361

Documents:                       1

Images:                          0

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.



15 U.S.C.A. § 78u-5                                                                                    Page 1



**Effective:[See Text Amendments]**

United States Code Annotated Currentness
    Title 15. Commerce and Trade
        Chapter 2B . Securities Exchanges (Refs & Annos)
            → **§ 78u-5. Application of safe harbor for forward-looking statements**


(a) Applicability

This section shall apply only to a forward-looking statement made by--

**(1)** an issuer that, at the time that the statement is made, is subject to the reporting requirements of section 78m(a) of this title or section 78o (d) of this title; or

**(2)** a person acting on behalf of such issuer;

**(3)** an outside reviewer retained by such issuer making a statement on behalf of such issuer; or

**(4)** an underwriter, with respect to information provided by such issuer or information derived from information provided by such issuer.

(b) Exclusions

Except to the extent otherwise specifically provided by rule, regulation, or order of the Commission, this section shall not apply to a forward-looking statement--

**(1)** that is made with respect to the business or operations of the issuer, if the issuer--

**(A)** during the 3-year period preceding the date on which the statement was first made--

**(i)** was convicted of any felony or misdemeanor described in clauses (i) through (iv) of section 78*o* (b)(4)(B) of this title; or

**(ii)** has been made the subject of a judicial or administrative decree or order arising out of a governmental action that--

**(I)** prohibits future violations of the antifraud provisions of the securities laws;

**(II)** requires that the issuer cease and desist from violating the antifraud provisions of the securities laws; or

**(III)** determines that the issuer violated the antifraud provisions of the securities laws;

**(B)** makes the forward-looking statement in connection with an offering of securities by a blank check company;

**(C)** issues penny stock;

**(D)** makes the forward-looking statement in connection with a rollup transaction; or

**(E)** makes the forward-looking statement in connection with a going private transaction; or

**(2)** that is--

**(A)** included in a financial statement prepared in accordance with generally accepted accounting principles;

**(B)** contained in a registration statement of, or otherwise issued by, an investment company;

**(C)** made in connection with a tender offer;

**(D)** made in connection with an initial public offering;

**(E)** made in connection with an offering by, or relating to the operations of, a partnership, limited liability company, or a direct participation investment program; or

**(F)** made in a disclosure of beneficial ownership in a report required to be filed with the Commission pursuant to section 78m(d) of this title.

(c) Safe harbor

(1) In general

Except as provided in subsection (b) of this section, in any private action arising under this chapter that is based on an untrue statement of a material fact or omission of a material fact necessary to make the statement not misleading, a person referred to in subsection (a) of this section shall not be liable with respect to any forward-looking statement, whether written or oral, if and to the extent that--

  **(A)** the forward-looking statement is--

    **(i)** identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement; or

    **(ii)** immaterial; or

  **(B)** the plaintiff fails to prove that the forward-looking statement--

    **(i)** if made by a natural person, was made with actual knowledge by that person that the statement was false or misleading; or

    **(ii)** if made by a business entity; [FN1] was--

      **(I)** made by or with the approval of an executive officer of that entity; and

      **(II)** made or approved by such officer with actual knowledge by that officer that the statement was false or misleading.

(2) Oral forward-looking statements

In the case of an oral forward-looking statement made by an issuer that is subject to the reporting requirements of section 78m(a) of this title or section 78o (d) of this title, or by a person acting on behalf of such issuer, the requirement set forth in paragraph (1)(A) shall be deemed to be satisfied--

  **(A)** if the oral forward-looking statement is accompanied by a cautionary statement--

    **(i)** that the particular oral statement is a forward-looking statement; and

    **(ii)** that the actual results might differ materially from those projected in the forward-looking statement; and

  **(B)** if--

    **(i)** the oral forward-looking statement is accompanied by an oral statement that additional information concerning factors that could cause actual results to materially differ from those in the forward-looking statement is contained in a readily available written document, or portion thereof;

    **(ii)** the accompanying oral statement referred to in clause (i) identifies the document, or portion thereof, that contains the additional information about those factors relating to the forward-looking statement; and

    **(iii)** the information contained in that written document is a cautionary statement that satisfies the standard established in paragraph (1)(A).

(3) Availability

Any document filed with the Commission or generally disseminated shall be deemed to be readily available for purposes of paragraph (2).

(4) Effect on other safe harbors

The exemption provided for in paragraph (1) shall be in addition to any exemption that the Commission may establish by rule or regulation under subsection (g) of this section.

(d) Duty to update

Nothing in this section shall impose upon any person a duty to update a forward-looking statement.

(e) Dispositive motion

On any motion to dismiss based upon subsection (c)(1) of this section, the court shall consider any statement cited in the complaint and any cautionary statement accompanying the forward-looking statement, which are not subject to material dispute, cited by the defendant.

(f) Stay pending decision on motion

In any private action arising under this chapter, the court shall stay discovery (other than discovery that is specifically directed to the applicability of the exemption provided for in this section) during the pendency of any motion by a defendant for summary judgment that is based on the grounds that--

**(1)** the statement or omission upon which the complaint is based is a forward-looking statement within the meaning of this section; and

**(2)** the exemption provided for in this section precludes a claim for relief.

(g) Exemption authority

In addition to the exemptions provided for in this section, the Commission may, by rule or regulation, provide exemptions from or under any provision of this chapter, including with respect to liability that is based on a statement or that is based on projections or other forward-looking information, if and to the extent that any such exemption is consistent with the public interest and the protection of investors, as determined by the Commission.

(h) Effect on other authority of Commission

Nothing in this section limits, either expressly or by implication, the authority of the Commission to exercise similar authority or to adopt similar rules and regulations with respect to forward-looking statements under any other statute under which the Commission exercises rulemaking authority.

(i) Definitions

For purposes of this section, the following definitions shall apply:

(1) Forward-looking statement

The term "forward-looking statement" means--

**(A)** a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items;

**(B)** a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer;

**(C)** a statement of future economic performance, including any such statement contained in a discussion and analysis of financial condition by the management or in the results of operations included pursuant to the rules and regulations of the Commission;

**(D)** any statement of the assumptions underlying or relating to any statement described in subparagraph (A), (B), or (C);

**(E)** any report issued by an outside reviewer retained by an issuer, to the extent that the report assesses a forward-looking statement made by the issuer; or

**(F)** a statement containing a projection or estimate of such other items as may be specified by rule or regulation of the Commission.

(2) Investment company

The term "investment company" has the same meaning as in section 80a-3(a) of this title.

(3) Going private transaction

The term "going private transaction" has the meaning given that term under the rules or regulations of the Commission issued pursuant to section 78m(e) of this title.

(4) Person acting on behalf of an issuer

The term "person acting on behalf of an issuer" means any officer, director, or employee of such issuer.

(5) Other terms

The terms "blank check company", "roll-up transaction", "partnership", "limited liability company", "executive officer of an entity" and "direct participation investment program", have the meanings given those terms by rule or regulation of the Commission.

CREDIT(S)

(June 6, 1934, c. 404, Title I, § 21E, as added Dec. 22, 1995, Pub.L. 104-67, Title I, § 102(b) , 109 Stat. 753.)

[FN1] So in original. The semicolon probably should be a comma.

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

1995 Acts. Senate Report No. 104-98 and House Conference Report No. 104-369 , see 1995 U.S. Code Cong. and Adm. News, p. 679.


References in Text

This chapter, referred to in subsecs. (c)(1), (f), and (g), was, in the original read "this title". See References in Text note set out under section 78a of this title.


Effective and Applicability Provisions

1995 Acts. This section shall not affect or apply to any private action arising under this chapter or subchapter I (section 77a et seq.) of chapter 2A of this title commenced before and pending on Dec. 22, 1995, see section 108 of Pub.L. 104-67, set out as a note under section 77*l* of this title.

Construction

Nothing in Pub.L. 104-67 shall be deemed to create or ratify any implied private right of action, or to prevent the Commission, by rule or regulation, from restricting or otherwise regulating private actions under the Securities and Exchange Act of 1934, see section 203 of Pub.L. 104-67, set out as a note under section 78j-1 of this title.

LAW REVIEW COMMENTARIES

Annual review of federal securities regulation. 51 Bus.Law. 511 (1996) .

*Asher* to *Asher and dust to dust: The demise of the PSLRA safe harbor? Note, 1 N.Y.U. J. L. & Bus. 799 (2005)* .

Forward-looking information--Navigating in the safe harbor. Carl W. Schneider and Fay A. Dubow, 51 Bus.Law. 1071 (1996).

Limiting shareholder class actions: Private Securities Litigation Reform Act of 1995. Gregory P. Hansel, 70 Fla.B.J. 60 (July/Aug. 1996) .

Payment of expenses in securities class actions: Ethical dilemmas, class counsel, and congressional intent. Geoffrey P. Miller, 22 Rev. Litig. 557 (2003) .

Securities litigation reform: Long and winding road to the Private Securities Litigation Reform Act of 1995. John W. Avery, 51 Bus.Law. 335 (1996) .


LIBRARY REFERENCES

American Digest System

   Insider trading generally; actions to enforce regulations, see Securities Regulation ⟳ 53.10 et seq. , 60.34 et seq.

Corpus Juris Secundum

CJS Federal Civil Procedure § 307 , Pleading Particular Matters--Fraud, Mistake, and Condition of Mind.

CJS Securities Reg. & Commodity Futures Trading § 192 , Opinions, Predictions, Forecasts, and Uncertain Events.

## RESEARCH REFERENCES

ALR Library

183 ALR, Fed. 141 , Liability of Officer, Director, Employee, or Other Individual Associated With Seller or Issuer of Securities as "Control Person" Under § 15 of Securities Act (15 U.S.C.A. § 77 ) and § 20(A) of Securities Exchange Act...

130 ALR, Fed. 119 , "Bespeaks Caution" Doctrine Under Federal Securities Laws.

49 ALR, Fed. 392 , What Constitutes Recklessness Sufficient to Show Necessary Element of Scienter in Civil Action for Damages Under § 10(B) of Securities Exchange Act of 1934 (15 U.S.C.A. § 78j (B)) and Rule 10b-5 of the Securities...

Encyclopedias

11 Am. Jur. Proof of Facts 2d 271 , Failure to Disclose Material Facts to Stock Purchaser.

Am. Jur. 2d Securities Regulation-Federal § 934 , Generally; Express Causes of Action.

Forms

Federal Procedural Forms § 59:334 , Interlocutory Appeals by Permission.

Federal Procedural Forms § 59:335 , Fraud, Generally.

Securities Litigation: Forms and Analysis § 1:2 , Private Securities Litigation Reform Act at Ten Years--Major Developments and Issues.

Securities Litigation: Forms and Analysis § 5:7 , Motion to Dismiss--Brief in Support of Motion to Dismiss.

Securities Litigation: Forms and Analysis § 5:8 , Motion to Dismiss--Brief in Opposition.

Securities Litigation: Forms and Analysis § 5:9 , Motion to Dismiss--Brief in Opposition--Reply Brief.

Securities Litigation: Forms and Analysis § 3:10 , Section 10(B) and Rule 10b-5.

Securities Regulation Forms § 14:13 , Management's Discussion and Analysis of Financial Condition and Results of Operation (Md&a).

Securities Regulation Forms § 14:13.14 , Management's Discussion and Analysis of Financial Condition and Results of Operation (Md&a)--Safe Harbor for Forward-Looking Information.

Treatises and Practice Aids

Due Diligence in Securities Transactions § 4:8 , Preventive Lawyering: Written Disclosure of Warnings, Caveats, and Risk Factors--Forward-Looking Information: the 1995 Statutory Safe Harbor; the Judicial Bespeaks Caution...

Restatement (Third) of Law Governing Law § 51 , Duty of Care to Certain Nonclients.

Securities and Federal Corporate Law § 15:26 , Judge Easterbrook Holds Forth on Meaningful Cautionary Statements--Cautionary Statement Prong.

Securities and Federal Corporate Law § 16:10 , Recklessness and the PSLRA --Ninth Circuit--Silicon Graphics: Recklessness as Scienter.

Securities and Federal Corporate Law § 16:38 , Third Circuit Applies Its Standard--Third Circuit--Forward-Looking Statements: No Duty to Update.

Securities and Federal Corporate Law § 16:115 , A Different View.

Securities and Federal Corporate Law § 15:20.4 , PSLRA Safe Harbor for Forward-Looking Statements--The Sixth Circuit Divides Over Soft Information--The Conceptual Background to the Soft-Information/Immateriality Divide.

Securities and Federal Corporate Law App. 19-A , Regulation FD Adopting Release.

Securities and Federal Corporate Law § 15:22.10 , Judge Easterbrook Holds Forth on Meaningful Cautionary Statements.

Securities and Federal Corporate Law § 16:112.30 , District Courts in the Second Circuit Post-Dura.

Securities Litigation: Damages § 24:2 , Pleading Stage.

Securities Litigation: Damages § 3:10 , Pleading State of Mind.

Securities Litigation: Damages § 3:11 , Pleading Standards Under the PSLRA.

Securities Litigation: Damages § 10:27 , Materiality and the "Bespeaks Caution" Doctrine.

Securities Litigation: Damages § 10:28 , The PSLRA's Forward-Looking Incentives.

Securities: Public and Private Offerings App A , Special Appendix--Sec Reforms Securities Act Offering Scheme--Securities Act Reform Rule--Sec Release 33-8591.

Securities: Public and Private Offerings § 9:32 , Year 2000 Disclosure Issues.

Securities: Public and Private Offerings App B5 , Regulation S-B, Part 228: Integrated Disclosure System for Small Business Issuers.

Securities: Public and Private Offerings App C4 , Auditor Independence Requirements.

Securities: Public and Private Offerings App I6 , Amendments to Penny Stock Rules (7/05).

Securities: Public and Private Offerings App C15 , Sec Rule 10A-3--Listing Requirements Based on Compliance With Sarbanes-Oxley Act of 2002.

US § L. Int'L Fin. Trans. & Cap. Markets 2d Ed § 12:66 , U.S. Liability -- Civil Liability and Antifraud Provisions: Material Misstatements or Omissions -- Safe Harbor for "Forward-Looking Statements".

US § L. Int'L Fin. Trans. & Cap. Markets 2d Ed § 7:193 , Prospective Information.

NOTES OF DECISIONS

Application 2
Cautionary language 1a
Forward-looking statements 1
Knowledge 3

1 . Forward-looking statements

Corporation executive's statement in press release, several months before planned initial public offering (IPO) for subsidiary that never occurred, "we believe the best way to enhance the success of both businesses going forward is to enable each one to pursue independently its unique and focused strategy," was not "in connection with" IPO, so as to remove statement from protection of Private Securities Litigation Reform Act's (PSLRA) safe harbor. In re Merck & Co., Inc. Securities Litigation, C.A.3 (N.J.) 2005, 432 F.3d 261 . Securities Regulation ☞ 60.27(7)

Directors' statements professing inability to assess impact of Balanced Budget Act on company's earnings were forward-looking and thus potentially within safe harbor provision of Private Securities Litigation Reform Act (PSLRA). Helwig v. Vencor, Inc., C.A.6 (Ky.) 2001, 251 F.3d 540 , certiorari dismissed 122 S.Ct. 2616, 536 U.S. 935, 153 L.Ed.2d 800 . Securities Regulation ☞ 60.27(5)

Safe Harbor provision of Private Securities Litigation Reform Act (PSLRA), shielding from securities fraud liability forward looking statements accompanied by sufficient cautionary language, applied to announcement of preliminary results from prior quarter, even though made in press release issued on first day of subsequent quarter. In re SeeBeyond Technologies Corp. Securities Litigation, C.D.Cal.2003, 266 F.Supp.2d 1150 . Securities Regulation ☞ 60.27(7)

Investors failed to make required showing that executives of aircraft manufacturer knew that government would not approve sale of fighter aircraft to United Arab Emirates, at time they made forward looking statement that significant sales would be made by year's end, precluding securities fraud suit under § 10(b). In re Lockheed Martin Corp. Securities Litigation, C.D.Cal.2003, 272 F.Supp.2d 944 . Securities Regulation ☞ 60.27(5)

Statements regarding corporation's earnings, sales, gross margins, supply-chain, and distribution operations were forward-looking, and thus were not actionable in shareholders' securities fraud action against corporation and four of its officers or former officers, where each statement was a prediction of corporation's future expected sales, financial performance, or other financial results. In re LeapFrog Enterprises, Inc. Securities Litigation, N.D.Cal.2007, 2007 WL 2900566 . Securities Regulation ☞ 60.27(5)

Company's announcements regarding its plans to introduce a new product were protected by Private Securities Litigation Reform Act's (PSLRA) "safe harbor" because each was identified as a forward-looking statement, and accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement. In re Sierra Wireless, Inc. Securities Litigation, S.D.N.Y.2007, 2007 WL 1149235 . Securities Regulation ☞ 60.27(5)

Allegedly misleading statements made by defendant officers which were vague and constituted run-of-the-mill corporate optimism were inactionable as corporate puffery; furthermore, all but one of the statements were protected by Private Securities Litigation Reform Act (PSLRA) safe harbor provision precluding liability for forward-looking statements that are identified as such and are accompanied by meaningful cautionary language. In re Wet Seal, Inc. Securities Litigation, C.D.Cal.2007, 518 F.Supp.2d 1148 . Securities Regulation ☞ 60.27(5)

Corporation's forward-looking statements of earnings guidance were protected under the Private Securities Litigation Reform Act's (PSLRA) safe harbor provision and were thus insulated from liability in securities fraud class action; without allegations of insider trading related to earnings forecasts, allegations of generalized motive to make the corporation appear stable and successful provided no support for an inference of scienter, ineffective internal controls of which corporation allegedly was aware did not cause incorrect earnings projections, and accounting errors that resulted in a lowering of earnings forecasts by twenty percent served to create a weak inference of scienter. Andropolis v. Red Robin Gourmet Burgers, Inc., D.Colo.2007, 505 F.Supp.2d 662 . Securities Regulation ☞ 60.53

Corporation making small household appliances made forward looking statement, protected from §§ 10(b) securities fraud liability by safe harbor provision of Private Securities Litigation Reform Act, when press release stated that corporation had gone through significant changes which would have lasting positive effect and create long-term shareholder value. Schultz v. Applica Inc., S.D.Fla.2007, 488 F.Supp.2d 1219 . Securities Regulation ☞ 60.27 (7)

Private Securities Litigation Reform Act's (PSLRA) safe harbor provision could not be applied at pleading stage, in shareholders' securities fraud action against two-year colleges' holding corporation arising out of alleged fraudulent admissions policy by which college's enrollment and revenues were artificially inflated, to corporation's press releases and public filings announcing earnings increases and attributing them to increased enrollments and retention; announcements were not forward-looking, and contained no disclosure of questionable admissions practices. In re EVCI Colleges Holding Corp. Securities Litigation, S.D.N.Y.2006, 469 F.Supp.2d 88 . Securities Regulation ☞ 60.27(7)

Corporation's reaffirmation of its business strategies and guidance, and plans to achieve improved earnings, were forward-looking statements, not false or misleading statements, of corporation's earnings forecast, and thus were protected under safe harbor provision of Private Securities Litigation Reform Act (PSLRA) from investor's claim of fraud in violation of federal securities laws. Yellen v. Hake, S.D.Iowa 2006, 437 F.Supp.2d 941 . Securities

Regulation ⌐⊙ 60.27(5)

Allegedly false or misleading statements made by corporate officer fell within safe harbor provision of Private Securities Litigation Reform Act (PSLRA), where statements were forward-looking and accompanied by meaningful cautionary language, and allegations were not sufficient to support strong inference that officer had actual knowledge that his statements were false. Limantour v. Cray Inc., W.D.Wash.2006, 432 F.Supp.2d 1129 . Securities Regulation ⌐⊙ 60.27(5) ; Securities Regulation ⌐⊙ 60.53

Semiconductor equipment manufacturer's public statements regarding its prospects for booking orders in next year fell within Private Securities Litigation Reform Act's (PSLRA) safe harbor for forward-looking statements, and thus could not form basis of securities fraud claims against manufacturer and its principal, where statements were clearly identified in documents as forward-looking, were accompanied by cautionary statements warning of existence of "number of factors and uncertainties which could cause actual results to differ materially from those described in the forward-looking statements," and mentioned important factors that could cause actual results to differ materially from those in forward-looking statements. In re Ibis Technology Securities Litigation, D.Mass.2006, 422 F.Supp.2d 294 . Securities Regulation ⌐⊙ 60.27(5)

Press release issued by corporation, announcing agreement with prominent computer chip manufacturer was not "forward-looking," and thus did not fall within "safe harbor" clause of Private Securities Litigation Reform Act (PSLRA), for purpose of investors' federal securities fraud claim, since terms of agreement, as subject matter of alleged misrepresentation, was matter of fact rather than conjecture by time statement was made. Brumbaugh v. Wave Systems Corp., D.Mass.2006, 416 F.Supp.2d 239 . Securities Regulation ⌐⊙ 60.27(7)

None of 22 allegedly false and misleading statements cited to by investors were "forward looking" within the safe harbor provisions of the Private Securities Litigation Reform Act (PSLRA), for purposes of securities fraud proceedings brought by investors against mortgage loan originator alleging that originator, and certain of its senior executive officers, violated federal securities laws by issuing a series of materially false and misleading statements representing that the originator had successfully integrated its acquisitions and that it was well positioned to withstand changes in interest rates. South Ferry LP # 2 v. Killinger, W.D.Wash.2005, 399 F.Supp.2d 1121 , reconsideration denied 2005 WL 3307533 . Securities Regulation ⌐⊙ 60.27(5)

Statement in corporation's press release announcing Food and Drug Administration (FDA) approval of its new medical device, that "market potential for [device's] sales are between $75 million and $300 million per annum," was not actionable in investors' securities fraud action against corporation and individual officers, which alleged that actual market potential was approximately $1.2 million; statement either qualified for protection of Private Securities Litigation Reform Act's (PSLRA) safe harbor for forward-looking statements, since investors failed to show officers' knowledge of its falsity, or was estimate of total market for all products that treated condition addressed by device, and not alleged to be false to begin with. In re GeoPharma, Inc. Securities Litigation, S.D.N.Y.2005, 399 F.Supp.2d 432 . Securities Regulation ⌐⊙ 60.27(7)

Safe harbor provision of Private Securities Litigation Reform Act (PSLRA) did not apply to make non-actionable under federal securities laws oral forward-looking statements made by manufacturer and its president during public conference calls, given that conference calls referred listeners to factors that could affect actual results as detailed in manufacturer's filing with Securities and Exchange Commission (SEC), but cautionary language in referenced filing did not contain meaningful identification of risk factors required by safe harbor provision. Yanek v. Staar Surgical Co., C.D.Cal.2005, 388 F.Supp.2d 1110 . Securities Regulation ⌐⊙ 60.27(7)

Alleged misrepresentations in private placement offering memorandum (PPM) regarding status of contracts purportedly obtained by company did not fall within scope of Private Securities Litigation Reform Act's (PSLRA) safe harbor for forward-looking statements, and thus could form basis of securities fraud claims, despite company's contention that only stated basis for claim was allegation that company's actual performance was substantially lower than what was represented in PPM, where investors stated that they were induced into purchasing stocks after learning that number of contracts had purportedly been signed, not that they were induced based upon projected revenue from those contracts. Burman v. Phoenix Worldwide Industries, Inc., D.D.C.2005, 384 F.Supp.2d 316 .
Securities Regulation ⟨⟩ 60.27(5)

Income projections were not forward looking statements, protected from securities fraud liability under safe harbor provision of Private Securities Litigation Reform Act (PSLRA), when they were accompanied by knowingly false allegations that revenue growth had been "very healthy." In re AOL Time Warner, Inc. Securities and "ERISA" Litigation, S.D.N.Y.2004, 381 F.Supp.2d 192 . Securities Regulation ⟨⟩ 60.27(5)

Alleged false and misleading financial results, reasons for company's spin-off, company's business condition and prospects, and company's capitalization were not protected by Private Securities Litigation Reform Act's (PSLRA) safe harbor provision or the "bespeaks caution" doctrine; many of the alleged statements, including statements concerning growing demand and lack of bandwidth glut, were not forward-looking, but rather, were statements of historical or then-existing conditions, and, even if forward-looking, the statements were not accompanied by sufficiently specific risk disclosures or other cautionary statements concerning the subject matter of the statements, so as to nullify any potentially misleading effect. In re Williams Securities Litigation, N.D.Okla.2003, 339 F.Supp.2d 1206 . Securities Regulation ⟨⟩ 60.27(5)

Forward looking statements regarding company's energy trading activities were protected, by safe harbor provision of Private Securities Litigation Reform Act, from claim company violated §§ 10(b) due to failure to disclose absence of procedure to control traders who allegedly gave inflated trading information to trade press compiling industry data used to evaluate traders; statements were accompanied by other statements identifying important factors that could cause unfavorable trading results. Albert Fadem Trust v. American Elec. Power Co., Inc., S.D.Ohio 2004, 334 F. Supp.2d 985 . Securities Regulation ⟨⟩ 60.27(5)

Private Securities Litigation Reform Act (PSLRA) "safe harbor" provision, covering optimistic forward looking statements accompanied by appropriate cautions, covered statements by pharmaceutical company that it would ultimately prevail over competitor in being first to market drug for treatment of Fabry Disease, statements of goals and plans for future, and expressions of belief there was real possibility of Food and Drug Administration (FDA) approval within year. In re Transkaryotic Therapies, Inc. Securities Litigation, D.Mass.2004, 319 F.Supp.2d 152 . Securities Regulation ⟨⟩ 60.27(5)

In context of shareholders' lawsuit alleging securities fraud, cautionary language used by energy corporation and its officers in statements made to public regarding condition of nuclear reactor was not sufficient to bring those statements within forward-looking safe harbor provision of Private Securities Litigation Reform Act (PSLRA), since defendants had actual knowledge of problems at plant, cautionary language was general and failed to disclose actual risks known by corporation, and none of corporation's cautionary warnings intimated that those statements might be inaccurate because of company's failure to repair and maintain its facilities. In re FirstEnergy Corp. Securities Litigation, N.D.Ohio 2004, 316 F.Supp.2d 581 . Securities Regulation ⟨⟩ 60.27(5)

Statute creating safe harbor from securities fraud liability for covered forward-looking statements did not apply to

allegedly false or misleading statements made by corporation in certain press releases and conference calls and annual and quarterly filings made with Securities and Exchange Commission (SEC), inasmuch as statements pertained to past events and earnings, and thus were not "forward-looking" as defined by statute, and SEC filings also fell within exclusion for forward-looking statement included in financial statement prepared in accordance with generally accepted accounting principles (GAAP). In re NUI Securities Litigation, D.N.J.2004, 314 F.Supp.2d 388 . Securities Regulation ⌘ 60.27(6) ; Securities Regulation ⌘ 60.27(7)

Magazine marketer's forward looking statements regarding future revenue prospects were shielded from securities fraud liability under safe harbor provision of Private Securities Litigation Reform Act (PSLRA), and bespeaks caution doctrine; cautionary statements alluded to many factors which could effect earnings of company, and specially emphasized Federal Trade Commission (FTC) proceeding challenging marketing practices, which could have unfavorable impact. In re Cross Media Marketing Corporation Securities Litigation, S.D.N.Y.2004, 314 F. Supp.2d 256 . Securities Regulation ⌘ 60.27(5)

Public statements by pharmaceutical manufacturer, regarding size of existing market for macular degeneration eye medicine, and report on progress in obtaining reimbursement from Health Care Financing Administration (HCFA) for eye treatment involving use of drug, were not forward looking and thus not protected from § 10(b) securities fraud liability by safe harbor provision of Private Securities Litigation Reform Act (PSLRA) or bespeaks caution doctrine. In re QLT Inc. Securities Litigation, S.D.N.Y.2004, 312 F.Supp.2d 526 . Securities Regulation ⌘ 60.27 (5)

Forward-looking statements in company press releases, Securities Exchange Commission (SEC) filings, conference calls and follow-up conversations, which constituted forecasts of future revenues and earnings and were predictions regarding company's future economic performance, were entitled to safe harbor protection under Private Securities Litigation Reform Act (PSLRA); statements were all identified with the requisite specificity and the safe harbor warnings, which included references to specific factors that were either the same or of similar significance to the actual causes of company's downturn, were adequate. In re Copper Mountain Securities Litigation, N.D.Cal.2004, 311 F.Supp.2d 857 . Securities Regulation ⌘ 60.27(5) ; Securities Regulation ⌘ 60.27(7)

Failure to make any showing that officers of company providing data communications services knew that forward looking statements regarding earnings and growth of company were false or misleading, precluded any securities fraud liability for statements under § 10(b), as modified by safe harbor provision of Private Securities Litigation Reform Act (PSLRA). In re Infonet Services Corp. Securities Litigation, C.D.Cal.2003, 310 F.Supp.2d 1080 . Securities Regulation ⌘ 60.45(1)

Corporation's statements, regarding information about cardiac side effects of new drug in animal studies, were not "forward-looking," in context of safe harbor provision of Private Securities Litigation Reform Act (PSLRA), since subject matter of alleged misrepresentations were matter of fact rather than conjecture by the time the statements were made. In re Sepracor, Inc. Securities Litigation, D.Mass.2004, 308 F.Supp.2d 20 . Securities Regulation ⌘ 60.27(5)

Corporation's statements, regarding information about cardiac side effects of new drug in animal studies, were not "forward-looking," in context of safe harbor provision of Private Securities Litigation Reform Act (PSLRA), since subject matter of alleged misrepresentations were matter of fact rather than conjecture by the time the statements were made. In re Sepracor, Inc. Securities Litigation, D.Mass.2004, 308 F.Supp.2d 20 . Securities Regulation ⌘ 60.27(5)

Officer's statement at shareholders' meeting that biotechnology corporation would be opening three new clinics to treat HIV and AIDS patients by end of fiscal year was statement of future events not actionable under §§ 10(b). Glaser v. Enzo Biochem, Inc., E.D.Va.2003, 303 F.Supp.2d 724 , affirmed in part , reversed in part 126 Fed.Appx. 593, 2005 WL 647745 . Securities Regulation ⬤═ 60.27(5)

Investors bringing claim under § 10(b) failed to establish securities fraud on part of company providing mechanical computer-aided design software, claiming in press release that it had confidence in fundamental strength of its business and strong competitive position, and in conference call made same day in which executives agreed with analysts' revenue projections, occurring at time company was allegedly aware of business trends that would cause it to miss goals; statements could be considered nonactionable puffery, they were forward looking and couched in specific cautionary language, thus satisfying safe harbor provisions of Private Securities Litigation Reform Act (PSLRA), and necessary showing of scienter had not been made. In re Parametric Technology Corp., D.Mass.2001, 300 F.Supp.2d 206 . Securities Regulation ⬤═ 60.27(7) ; Securities Regulation ⬤═ 60.45(1)

Company's statements regarding its "strategic operating plan" and its anticipation for "a very good year" related to management's expectations for company's future operations and its projections of revenues and future economic performance, and thus constituted "forward-looking statements" that could not form basis of liability under § 10(b). In re Kindred Healthcare, Inc. Securities Litigation, W.D.Ky.2004, 299 F.Supp.2d 724 . Securities Regulation ⬤═ 60.27(5)

Safe harbor provision of Private Securities Litigation Reform Act (PSLRA) shielded from §§ 10(b) and Rule 10b-5 securities fraud liability statements made by utilities holding company that non-utility investments would return to profitability, allowing company to achieve financial projections; statements were forward looking and accompanied by cautionary language that identified specific possible problem areas. Sandmire v. Alliant Energy Corp., W.D. Wis.2003, 296 F.Supp.2d 950 . Securities Regulation ⬤═ 60.27(5)

Statements made by battery company and its officers and directors were not "forward-looking" within scope of safe harbor provision of Private Securities Litigation Reform Act (PSLRA) to the extent that statements were descriptions of past and current conditions, including press release stating that revenue for particular quarter "had risen," and conference call statements that company was not overinventoried anywhere and that company's stock was undervalued, in that accuracy of such statements could have been determined at the time they were made. Friedman v. Rayovac Corp., W.D.Wis.2003, 295 F.Supp.2d 957 , reconsideration denied 2003 WL 24272407 . Securities Regulation ⬤═ 60.27(5)

Corporation's statements about lease impairment costs were forward-looking under Private Securities Litigation Reform Act (PSLRA), since lease statements were for future costs, the accuracy of which could be verified only after they were made. Smith v. Circuit City Stores, Inc., E.D.Va.2003, 286 F.Supp.2d 707 . Securities Regulation ⬤═ 60.27(5)

Alleged misstatements about future performance did not fall under safe-harbor provision of Private Securities Litigation Reform Act (PSLRA) if company had no basis for optimistic statements and knew that certain risks had become reality or that accompanying recitations of historical facts were misleading. In re Nortel Networks Corp. Securities Litigation, S.D.N.Y.2003, 238 F.Supp.2d 613 .

Shareholders' complaint in securities fraud class action against corporation and certain of its executive officers and

directors in their individual capacities sufficiently showed that defendants' allegedly fraudulent statements were not "forward looking" and did not contain sufficient cautionary language to warrant protection under safe harbor provision of the Private Securities Litigation Reform Act (PSLRA), where statements alleged to be fraudulent concerned primarily "hard" financial reporting results for corporation. In re PSS World Medical, Inc. Securities Litigation, M.D.Fla.2002, 250 F.Supp.2d 1335 . Securities Regulation ☜ 60.27(5)

Statutory safe harbor provisions of Private Securities Litigation Reform Act (PSLRA), and common law bespeaks caution doctrine, shielding forward looking statements from liability under § 10(b) and Rule 10b-5, did not mandate dismissal of optimistic claims regarding earnings and financial condition of corporation providing telecommunications cable; statements were combined with misrepresentations and omissions of historical fact not subject to safe harbor, there were claims that corporation spokespersons had actual knowledge of falsity of forward-looking claims, and cautionary language was boilerplate not sufficiently addressed to actual hazards of present case. In re Scientific-Atlanta, Inc. Securities Litigation, N.D.Ga.2002, 239 F.Supp.2d 1351 . Securities Regulation ☜ 60.27(5)

Pharmaceutical company, marketing hormone replacement products in Europe through licensee, did not provide sufficiently tailored cautionary statements to qualify forward looking statements regarding anticipated aggressive campaign to boost sales of product in Europe for safe harbor provided in Private Securities Litigation Reform Act (PSLRA); company referred to general competitive factors, without mentioning that licensee was marketing its own competitive product. In re Noven Pharmaceuticals, Inc. Securities Litigation, S.D.Fla.2002, 238 F.Supp.2d 1315 . Securities Regulation ☜ 60.27(5)

Safe harbor provision of Private Securities Litigation Reform Act (PSLRA), and bespeaks caution doctrine, shielding from securities fraud liability forward looking statements accompanied by sufficient cautionary language, applied to company spokesperson's statement that it would take approximately one year for company to resolve problems created by acquisition of company selling products subject to rebates; prediction occupied only two sentences of speech, and was accompanied by cautionary statements disclaiming certainty and referring audience to public filings containing other cautions. In re Clorox Company Securities Litigation, N.D.Cal.2002, 238 F.Supp.2d 1139 , affirmed 353 F.3d 1125 . Securities Regulation ☜ 60.27(5)

General cautionary statements made in press release regarding expected revenues were sufficiently meaningful to bring the statements within Private Securities Litigation Reform Act's (PSLRA) safe harbor for forward-looking statements, and, even if not, statement was within safe harbor since there was no showing that the statement was made with actual knowledge that it was false or misleading; investing public was warned that the accuracy of revenue forecasts involved a number of risks and uncertainties, and further told that successful growth depended upon the ability to integrate the acquisitions. Cutsforth v. Renschler, M.D.Fla.2002, 235 F.Supp.2d 1216 . Securities Regulation ☜ 60.27(7) ; Securities Regulation ☜ 60.45(1)

Statements by oxygen therapeutics manufacturer respecting its plan to file biologic license application (BLA) for its experimental blood substitute with Food and Drug Administration (FDA) by certain date fell within definition of "forward-looking statement" under Private Securities Litigation Reform Act (PSLRA), and thus came within PSLRA's safe harbor requiring dismissal of action based on omissions or misrepresentations in forward-looking statements accompanied by meaningful cautionary language, inasmuch as press releases at issue contained cautionary language, indicating that there were no assurances that manufacturer would be able to develop its products, that necessary regulatory approvals would be obtained, that any clinical trials would be successful, or that any approved product would find market acceptance. Meyer v. Biopure Corp., D.Mass.2002, 221 F.Supp.2d 195 . Securities

Regulation ⌐━○ 60.27(7)

False statements made by chief executive officer (CEO) of telecommunications equipment company during conference call with financial news forum, characterizing company as a market leader reaping exceptionally strong growth in optical networking business and stating that such business was growing at same rate as market, were not "forward-looking" statements shielded from securities fraud action under Rule 10b-5; statements depicted both previous and then existing growth rate issues. In re Lucent Technologies, Inc. Securities Litigation, D.N.J.2002, 217 F.Supp.2d 529 . Securities Regulation ⌐━○ 60.27(5)

Corporate officials, who allegedly gave the investing public forecasts that were materially false and misleading, were immune from liability under safe harbor provisions of Private Securities Litigation Reform Act (PSLRA) since the forecasts of revenue, profit margins, and sales were forward-looking statements and investors could not show that those who made them or approved of them had "actual knowledge" of their falsity and since complaint did not allege particularized facts giving rise to strong inference of scienter. In re ATI Technologies, Inc. Securities Litigation, E.D. Pa.2002, 216 F.Supp.2d 418 . Securities Regulation ⌐━○ 60.27(5) ; Securities Regulation ⌐━○ 60.53

Forward looking statements made by company, engaged in producing software to enable creation of catalogues on Internet, were accompanied by sufficient cautionary language to qualify for safe harbor from § 10(b) securities fraud action; company stated that its securities were high risk, no guarantees were being made, and actual results could vary substantially from predictions. In re Smith Gardner Securities Litigation, S.D.Fla.2002, 214 F.Supp.2d 1291 . Securities Regulation ⌐━○ 60.27(5)

Corporation's statement, that "We believe that our insurance subsidiaries' capital and surplus presently meet or exceed the requirements in all jurisdictions in which they are licensed," did not qualify as a forward-looking statement falling within the statutory safe harbor against securities fraud claims. In re Penn Treaty American Corp. Securities Litigation, E.D.Pa.2002, 202 F.Supp.2d 383 .

Forward-looking, primarily oral statements by corporation's executives, consisting of allegedly misleading revenue and earnings per share forecasts and projections of merger synergies, were not within Private Securities Litigation Reform Act's (PSLRA) safe harbor provision, where executives had not identified statements as forward-looking, and had not stated as to each statement that results might differ materially from those projected, nor identified important factors that could cause actual results to differ materially. In re Honeywell Intern., Inc. Securities Litigation, D.N.J.2002, 182 F.Supp.2d 414 . Securities Regulation ⌐━○ 60.27(5)

Corporate officer's statements concerning corporation's financial projections were "forward-looking statements" protected under safe harbor provisions of the Private Securities Litigation Reform Act (PSLRA), for purposes of shareholders' proposed securities fraud class action against corporation and its officers, where shareholders failed to establish that officers knew statements were false when made. In re Nike, Inc. Securities Litigation, D.Or.2002, 181 F.Supp.2d 1160 .

Alleged misrepresentations made regarding company's merger with other entities, such as that merger could make company "dominant force in software," that merger positioned company for executing long-term global strategy, and that company had taken "several bold steps" to distance itself from competition, were general, forward-looking statements that predicted future business success and economic performance, as required for statements to come within protection from securities fraud liability provided by statutory safe harbor under Private Securities Litigation Reform Act (PSLRA) and "bespeaks caution" doctrine. In re S1 Corp. Securities Litigation, N.D.Ga.2001, 173 F.

Supp.2d 1334 . Securities Regulation ☞ 60.27(3)

Corporation and its former officers could not establish that their statements regarding corporation's financial condition and other projections, which were basis of stock purchasers' securities fraud claims, were forward-looking statements protected by statutory safe harbors or "bespeaks caution" doctrine; stock purchasers' complaint also referred to repeated misrepresentations or omissions of historical facts or "hard" facts about current or past conditions. Gross v. Medaphis Corp., N.D.Ga.1997, 977 F.Supp. 1463 . Securities Regulation ☞ 27.24 ; Securities Regulation ☞ 60.27(5)

Corporation's affirmative representations about current or historical performance of corporation and newly acquired division, and statements omitting disclosure of material information regarding corporation's alleged accounting improprieties, were outside "bespeaks caution" doctrine and Private Securities Litigation Reform Act's (PSLRA) safe harbor, and thus actionable in investors' securities fraud class action; statements were not forward-looking, and some were contained in Securities and Exchange Commission (SEC) filings. In re Veeco Instruments, Inc. Securities Litigation, S.D.N.Y.2006, 235 F.R.D. 220 . Securities Regulation ☞ 60.27(1) ; Securities Regulation ☞ 60.28 (13)

Allegedly materially misleading statements in prospectus, which concerned company's plans and expectations regarding revenues, products and services, and economic performance, were forward-looking in nature and therefore fell within the safe harbor provisions of Private Securities Litigation Reform Act (PSLRA); statements all are couched in conditional terms or phased in the future tense, and accompanied by cautionary language. In re SeaChange Intern., Inc., D.Mass.2004, 2004 WL 240317 , Unreported. Securities Regulation ☞ 60.27(5)

Certain forward-looking earnings predictions made by the company fell within safe-harbor provision of the Private Securities Litigation Reform Act (PSLRA); however, those which were made in tandem with, and were premised upon, misrepresentations of existing facts did not merit the protection of the statutory safe harbor. In re KeySpan Corp., E.D.N.Y.2003, 2003 WL 21981806 , Unreported. Securities Regulation ☞ 60.27(5)

Results of drug testing being conducted by Food and Drug Administration (FDA), on drug for treatment of metabolic disorders, were not "forward looking statements" and consequently not protected from securities fraud liability by safe harbor provision of Private Securities Litigation Reform Act (PSLRA), despite claim that results were assumption of future approval of drug. In re Amylin Pharmaceuticals, Inc. Securities Litigation, S.D.Cal.2003, 2003 WL 21500525 , Unreported. Securities Regulation ☞ 60.27(5)

Drug company's written and oral statements to market, indicating that Food and Drug Administration (FDA) had granted fast track status to review of drug, that company intended to initiate filing of biologics license application (BLA) by month certain and that it reasonably expected to obtain FDA approval of drug early in following year, were not protected by safe harbor provision under PSLRA as forward-looking statements; majority of company's statements were not forward-looking, and did not include sufficient cautionary language. Irvine v. ImClone Systems, Inc., S.D.N.Y.2003, 2003 WL 21297285 , Unreported. Securities Regulation ☞ 60.27(5)

Boilerplate warnings contained in pharmaceutical company's public statements regarding prospects for Federal Drug Administration (FDA) approval of synthetic version of Amylin were not sufficiently meaningful to entitle company to protection under Private Securities Litigation Reform Act's (PSLRA) safe harbor doctrine from liability under federal securities fraud statutes; warnings merely informed investors that FDA might not approve drug, and did not warn investors about some of known shortcomings of Phase III trials. In re Amylin Pharmaceuticals, Inc., Securities

Litigation, S.D.Cal.2002, 2002 WL 31520051 , Unreported, amended on denial of reconsideratin 2003 WL 21500525 . Securities Regulation ⟳ 60.27(5)

1a . Cautionary language

Under fraud-on-the-market theory underlying investors' securities fraud class action against corporation and individual executives, cautionary language contained in Form 10-K and other filings potentially brought allegedly misleading press releases and executives' oral statements within safe harbor provisions of Private Securities Litigation Reform Act (PSLRA), even though language of 10-K did not "accompany" press release and oral statements. Asher v. Baxter Intern. Inc., C.A.7 (Ill.) 2004, 377 F.3d 727 , as amended, rehearing and rehearing en banc denied , on remand 2005 WL 331572 , certiorari denied 125 S.Ct. 1639, 544 U.S. 920, 161 L.Ed.2d 476 , certiorari denied 125 S.Ct. 1642, 544 U.S. 920, 161 L.Ed.2d 476 . Securities Regulation ⟳ 60.27(7)

Corporation's risk factor disclosures in its quarterly and annual filings with the Securities and Exchange Commission (SEC) amounted to cautionary statements that were not actionable in shareholders' securities fraud action against corporation and four of its officers or former officers, absent a showing that risk factor disclosures were false or misleading statements when made. In re LeapFrog Enterprises, Inc. Securities Litigation, N.D.Cal.2007, 2007 WL 2900566 . Securities Regulation ⟳ 60.27(6)

Investors failed to state claim of securities fraud, under §§ 10(b) , when they alleged that satellite radio programming supplier falsely claimed that costs of acquiring new subscribers would decline in ensuing period, when spokespersons knew costs would increase; statements were accompanied by appropriate cautionary statements, qualifying them for protection of safe harbor provision of Private Securities Litigation Reform Act (PSLRA) and common law bespeaks caution doctrine, and there was insufficient showing that spokespersons knew statements were false when made. In re XM Satellite Radio Holdings Securities Litigation, D.D.C.2007, 2007 WL 926468 . Securities Regulation ⟳ 60.27(5)

Company engaged in travel business did not commit securities fraud in violation of §§ 10(b), when it announced yearly earnings projection of $1.0 to $1.02 billion; there was no showing company knew projection was false or involved any misrepresentation of current facts, projections were accompanied by cautionary statements regarding uncertainties of income prediction, satisfying safe harbor requirements of Private Securities Litigation Reform Act (PSLRA) and bespeaks caution doctrine, and earnings actually achieved low end of predicted range. In re IAC/ InterActiveCorp Securities Litigation, S.D.N.Y.2007, 2007 WL 853021 . Securities Regulation ⟳ 60.27(5)

Private Securities Litigation Reform Act's (PSLRA) safe harbor provision could not be applied at pleading stage, in shareholders' securities fraud action against two-year colleges' holding corporation arising out of alleged fraudulent admissions policy, to corporation's forward-looking projections of increased enrollments and revenues; although corporation included accompanying cautionary language mentioning possible contrary factors including failure to comply with federal/state regulations and failure to manage enrollment growth, it did not warn investors that identified factors were not hypothetical. In re EVCI Colleges Holding Corp. Securities Litigation, S.D.N.Y.2006, 469 F.Supp.2d 88 . Securities Regulation ⟳ 60.27(5)

Safe harbor provision of Private Securities Litigation Reform Act (PSLRA) applied to allegedly false or misleading statements regarding corporation's earnings forecast, as forward-looking statement, that was accompanied by meaningful cautionary statements which identified important factors that could have caused actual results to differ materially from those in forecast. Yellen v. Hake, S.D.Iowa 2006, 437 F.Supp.2d 941 . Securities Regulation ⟳

60.27(5)

Boilerplate disclaimer at close of press release issued by corporation, announcing agreement with prominent computer chip manufacturer, was not sufficiently detailed to fall within protections of "bespeaks caution" doctrine, at pleading stage of investors' federal securities fraud claim, where cautionary language warned that corporation's agreement with manufacturer was not exclusive but it did not sufficiently counter strong implication that partnership with manufacturer would have led to substantial deployment and thus, significant revenue stream. Brumbaugh v. Wave Systems Corp., D.Mass.2006, 416 F.Supp.2d 239 . Securities Regulation ⌘ 60.27(7)

Cautionary language in manufacturer's press releases did not meaningfully disclose risks involved and assumptions underlying forward-looking statements made by manufacturer respecting Food and Drug Administration (FDA) approval for manufacturer's implantable contact lenses (ICL), and thus did not trigger protection of safe harbor provision of Private Securities Litigation Reform Act (PSLRA), given that risks identified were so broad as to apply to any business selling products to consumers, and reference to need to obtain regulatory approval for new products inadequately identified risks related to FDA approval of ICL. Yanek v. Staar Surgical Co., C.D.Cal.2005, 388 F. Supp.2d 1110 . Securities Regulation ⌘ 60.27(5)

Allegations that chief financial officer (CFO) of company engaged in Internet communications business knew that allegations of "healthy" revenue were false when made, precluded claim that statements were protected from §§ 10 (b) securities fraud liability under bespeaks caution doctrine. In re AOL Time Warner, Inc. Securities and "ERISA" Litigation, S.D.N.Y.2004, 381 F.Supp.2d 192 . Securities Regulation ⌘ 60.27(5)

Cautionary statements, which suggested that future studies may never be completed or prolonged delays may occur and that other factors presented in "SEC filings" may threaten ultimate success of particular drug, were too generic to invoke safe harbor protection under Private Securities Litigation Reform Act (PSLRA) to investors' fraud claims, since general warning did not present investors with any indications as to likelihood of future drug studies facing obstacles, risk factors were not specified, and investors were left to obtain those other documents and compare their contents with press release themselves. In re Immune Response Securities Litigation, S.D.Cal.2005, 375 F.Supp.2d 983 . Securities Regulation ⌘ 60.27(5)

"Bespeaks caution" doctrine did not bar investors' claim that stock analyst violated §§ 10(b) by misrepresenting his opinion about companies by continuing to rate each stock "Buy" after concluding that such recommendation was no longer warranted, even though analyst's reports clearly disclosed risks involved in investing in companies, where investors' claims were based on allegation that they suffered losses because analyst's false statements of his opinion on investment quality of stocks artificially inflated their value. In re Salomon Analyst Level 3 Litigation, S.D.N. Y.2004, 350 F.Supp.2d 477 , reconsideration denied 373 F.Supp.2d 248 . Securities Regulation ⌘ 60.27(5)

Cautionary language required to trigger safe harbor provision of Private Securities Litigation Reform Act (PSLRA) accompanied allegedly false or misleading forward-looking statements made in disease management company's press releases and filings with Securities and Exchange Commission (SEC), insulating company and its officers from liability for securities fraud based on such statements. Barr v. Matria Healthcare, Inc., N.D.Ga.2004, 324 F.Supp.2d 1369 . Securities Regulation ⌘ 60.27(5)

Statement by chief executive officer of pharmaceutical manufacturing corporation, during conference call with securities analysts, that she was "comfortable" with 35% quarter-over-quarter growth prediction, was not protected by statutory safe harbor provision for forward looking statements or bespeaks caution doctrine, when there was no

showing of what, if any, cautionary language accompanied statement, or any showing that language was adequate. In re QLT Inc. Securities Litigation, S.D.N.Y.2004, 312 F.Supp.2d 526 . Securities Regulation ☞ 60.27(5)

Generic cautionary statements of pharmaceutical company, that "[o]ur potential products may not be proven safe and efficacious in clinical trials," were not "meaningful," and, therefore, were not entitled to safe harbor under Private Securities Litigation Reform Act (PSLRA), since they were not sufficiently tailored to the circumstances; corporation and its officers were obliged to disclose known facts about animal studies that undermined their predictions for success of new antihistamine, since Food and Drug Administration (FDA) had "zero tolerance" policy for cardiac side effects in any new antihistamines, and side effects were observed in animal studies for new drug, which cast serious doubt on its prospects for FDA approval. In re Sepracor, Inc. Securities Litigation, D.Mass.2004, 308 F. Supp.2d 20 . Securities Regulation ☞ 60.27(5)

Health care company's warnings that forward-looking statements in press releases were "inherently uncertain" and that "stockholders and other potential investors must recognize that actual results may differ materially from the Company's expectations as a result of a variety of factors" were sufficient to absolve company of any liability under § 10(b), even though company used much of same cautionary language in all press releases, where list of factors that company provided was detailed and informative, and company specifically admonished investors about actual risks that it faced. In re Kindred Healthcare, Inc. Securities Litigation, W.D.Ky.2004, 299 F.Supp.2d 724 . Securities Regulation ☞ 60.27(7)

Cautionary language offered during conference call conducted by battery company's officers regarding "competitive market factors" and changes in industry or economy would not effectively put investor on notice of risk of substantially decreased demand for company's products resulting from practice of channel stuffing, in that overselling product to customer to create appearance of growth was not external source of change over which company had little control, unlike market factors and economy changes, and therefore securities fraud liability premised on officers' statements during call was not precluded under safe harbor provision of Private Securities Litigation Reform Act (PSLRA) on grounds that statements qualified as forward-looking statements accompanied by meaningful cautionary language. Friedman v. Rayovac Corp., W.D.Wis.2003, 295 F.Supp.2d 957 , reconsideration denied 2003 WL 24272407 . Securities Regulation ☞ 60.27(5)

Corporation's alleged misrepresentations and omissions made in connection with acquisition, including "belief" that acquired division would be "accretive to [corporation] on a cash basis by [second quarter following acquisition]," were within "bespeaks caution" doctrine and Private Securities Litigation Reform Act's (PSLRA) safe harbor, and thus not actionable in investors' securities fraud class action; statements were accompanied by cautionary statements, including reference to "risks associated with integrating acquired businesses and the acceptance of new products," which could not have been more specific when made. In re Veeco Instruments, Inc. Securities Litigation, S.D.N.Y.2006, 235 F.R.D. 220 . Securities Regulation ☞ 60.27(5)

2 . Application

Safe harbor provision of Private Securities Litigation Reform Act (PSLRA), shielding forward looking statements from securities fraud liability, did not protect statements regarding earnings contained in press release of corporation providing business-integration software; accompanying cautionary language was not sufficiently particularized, and there was evidence corporation knew statements in release were false. In re SeeBeyond Technologies Corp. Securities Litigation, C.D.Cal.2003, 266 F.Supp.2d 1150 . Securities Regulation ☞ 60.27(7)

Private Securities Litigation Reform Act's (PSLRA) safe harbor provisions were not necessarily applicable in investors' securities fraud class action alleging materially false financial projections for period of several months prior to sharp stock price drop that followed lower-than-expected financial results; cautionary statements accompanying corporation's Form 10-K and other filings listed numerous possible risks but failed to mention others that executives were allegedly aware of, and there was no way to tell at pleading stage of investors' action whether executives had known of unmentioned risks at time cautionary language was written, especially given fact that language remained fixed during months preceding price drop even as risks changed. Asher v. Baxter Intern. Inc., C. A.7 (Ill.) 2004, 377 F.3d 727 , as amended, rehearing and rehearing en banc denied , on remand 2005 WL 331572 , certiorari denied 125 S.Ct. 1639, 544 U.S. 920, 161 L.Ed.2d 476 , certiorari denied 125 S.Ct. 1642, 544 U.S. 920, 161 L.Ed.2d 476 . Securities Regulation ☞ 60.27(7)

Corporation's expression of its view in press release, that it had put measures in place which it expected to offset increased costs, was forward looking statement protected by safe harbor provision of Private Securities Litigation Reform Act (PSLRA), although expectations did not materialize. Yellen v. Hake, S.D.Iowa 2006, 437 F.Supp.2d 941 . Securities Regulation ☞ 60.27(5)

Generic cautionary statements of pharmaceutical company, that "[o]ur potential products may not be proven safe and efficacious in clinical trials," were not "meaningful," and, therefore, were not entitled to safe harbor under Private Securities Litigation Reform Act (PSLRA), since they were not sufficiently tailored to the circumstances; corporation and its officers were obliged to disclose known facts about animal studies that undermined their predictions for success of new antihistamine, since Food and Drug Administration (FDA) had "zero tolerance" policy for cardiac side effects in any new antihistamines, and side effects were observed in animal studies for new drug, which cast serious doubt on its prospects for FDA approval. In re Sepracor, Inc. Securities Litigation, D.Mass.2004, 308 F. Supp.2d 20 . Securities Regulation ☞ 60.27(5)

Corporation's forward-looking statements about lease impairment costs merited safe harbor under Private Securities Litigation Reform Act (PSLRA), since corporation cautioned that "undue reliance should not be placed on any forward-looking statements, which are based on current expectations." Smith v. Circuit City Stores, Inc., E.D. Va.2003, 286 F.Supp.2d 707 . Securities Regulation ☞ 60.27(5)

Company's press release claim that the challenges unique to the current period of its history were behind it was a "forward-looking statement," for purposes of the safe harbor provision of the Private Securities Litigation Reform Act (PSLRA); while the "grammar" of the statement suggested a representation as to current conditions, the meaning was that good times were ahead. Harris v. IVAX Corp., S.D.Fla.1998, 998 F.Supp. 1449 , affirmed 182 F.3d 799 , rehearing and suggestion for rehearing en banc denied 209 F.3d 1275 . Securities Regulation ☞ 60.27(5)

Neither "bespeaks caution" doctrine nor safe harbor provision of Private Securities Litigation Reform Act (PSLRA) applied to protect general partner of limited partnership and its former chief executive officer (CEO) from liability under Securities Act for alleged misrepresentations of currently existing fact in registration statement and prospectus for secondary public offering of common stock by general partner. In re Globalstar Securities Litigation, S.D.N. Y.2003, 2003 WL 22953163 , Unreported. Securities Regulation ☞ 25.18 ; Securities Regulation ☞ 60.27(5)

Public statements by pharmaceutical company regarding sufficiency of Phase III trials for synthetic version of Amylin, incidence of severe hypoglycemia in Phase III clinical trials, and accuracy safety database all related to future submission of company's application for Federal Drug Administration (FDA) approval of product, and thus were eligible for protection under safe harbor doctrine in Private Securities Litigation Reform Act (PSLRA), even

file:///S|/FFH - Fuwei Film Film/002 - Motion to Dismiss  MSJ/Plaintiffs Moving Papers/PSLRA Safe Harbor 15_USCA_s_78U-5.html

Case 1:07-cv-09416-RJS    Document 46-8    Filed 06/26/2008    Page 22 of 24

though statements referred to clinical studies that had already been conducted. In re Amylin Pharmaceuticals, Inc., Securities Litigation, S.D.Cal.2002, 2002 WL 31520051 , Unreported, amended on denial of reconsideration 2003 WL 21500525 . Securities Regulation ⟔ 60.27(5)

3 . Knowledge

Investors failed to make required showing that executives of aircraft manufacturer knew that schedule of delivery of cargo plane to Air Force would not be completed in accordance with schedule, at time they made forward looking statement that they would be delivering 25 to 30 aircraft prior to year's end, precluding securities fraud suit under § 10 (b). In re Lockheed Martin Corp. Securities Litigation, C.D.Cal.2003, 272 F.Supp.2d 944 . Securities Regulation ⟔ 60.27(5)

Shareholders' allegations did not set forth why forward-looking statements regarding corporation's competition and supply-chain and distribution problems were made with actual knowledge of falsity, as required to plead a securities fraud claim under Private Securities Litigation Reform Act's (PSLRA) safe harbor provisions, in action against corporation and four of its officers or former officers, where, even assuming defendants knew extent of competition and of the various distribution problems prior to any statements, there were no allegations that competition or distribution problems rendered any of the specific predictive statements false when made. In re LeapFrog Enterprises, Inc. Securities Litigation, N.D.Cal.2007, 2007 WL 2900566 . Securities Regulation ⟔ 60.53

Although some of company defendants' statements made in press releases, registration statements, and prospectus filings, were forward-looking and contained cautionary language, they were not protected by the Private Securities Litigation Reform Act (PSLRA) safe harbor because shareholders alleged that defendants had actual knowledge of their falsity. Gargiulo v. Isolagen, Inc., E.D.Pa.2007, 2007 WL 2791827 . Securities Regulation ⟔ 60.27(5)

Investors pled sufficient facts to give rise to a strong inference that defendants had actual knowledge that the forward-looking statements were false or misleading and the safe harbor provision of the Private Securities Litigation Reform Act (PSLRA) was not applicable; executives allegedly had access to internal data and forecasts that belied the public statements, the corporation allegedly engaged in accounting fraud to manipulate the financial statements to support its public claims of a high-growth subsidiary, it specifically pointed to European operations as a source of revenue growth knowing that it had lost its largest contract, and the discrepancy between public guidance and internal financial data was well known within the company. In re Catalina Marketing Corp. Securities Litigation, M.D. Fla.2005, 390 F.Supp.2d 1110 . Securities Regulation ⟔ 60.27(5) ; Securities Regulation ⟔ 60.45(1)

Investors adequately pled scienter necessary to support securities fraud claims with regard to company's directors' alleged misrepresentation of status of two contracts they claimed they had procured, where investors specifically detailed each transaction and in, both cases, clearly demonstrated that at time initial representations were made concerning contracts, they were not in fact signed or finalized. Burman v. Phoenix Worldwide Industries, Inc., D.D. C.2005, 384 F.Supp.2d 316 . Securities Regulation ⟔ 60.51

Statement that company would turn free-cash flow positive by the end of 2003 did not merit protection of safe-harbor provision of the Private Securities Litigation Reform Act (PSLRA) since securities fraud defendants allegedly knew at the time that any projections were based on a misrepresentation of existing facts. In re NTL, Inc. Securities Litigation, S.D.N.Y.2004, 347 F.Supp.2d 15 . Securities Regulation ⟔ 60.27(5)

Although shareholders sufficiently alleged that company founder, chief executive officer (CEO), and another

executive failed to disclose the illegal payments made by company's Taiwan subsidiary with either deliberate or conscious recklessness, shareholders failed to satisfy Private Securities Litigation Reform Act (PSLRA) pleading requirements since they failed to plead that any of statements attributing company's current success and future expectations to international expansion were false or misleading; the omissions regarding subsidiary did not affirmatively create an impression of a state of affairs that differed in a material way from one that actually existed. In re Syncor Intern. Corp. Securities Litigation, C.D.Cal.2004, 327 F.Supp.2d 1149 · Securities Regulation ⟜ 60.51

Investors failed to satisfy scienter requirement, for securities fraud claim under §§ 10(b), when they alleged that chief executive officer (CEO) knowingly misrepresented that magazine marketer did not know whether Federal Trade Commission (FTC) suit challenging marketing practices would have adverse effect on business, without making showing that CEO had evidence of adverse effect at time he made statement. In re Cross Media Marketing Corporation Securities Litigation, S.D.N.Y.2004, 314 F.Supp.2d 256 · Securities Regulation ⟜ 60.45(1)

Representation by corporation and its officer, that study tested safety of new antihistamine at "maximum concentration" "such that another dose will not increase exposure," did not raise "strong inference" that it was made knowingly or recklessly, as required in securities fraud action, although allegations in complaints may have raised inference that defendants knew or recklessly disregarded misleading nature of statement; there was no Food and Drug Administration (FDA) approved protocol at time for testing of new antihistamine at maximum exposure in patients' bodies, and such testing was "state of the art," i.e., experimental. In re Sepracor, Inc. Securities Litigation, D. Mass.2004, 308 F.Supp.2d 20 · Securities Regulation ⟜ 60.45(1)

Failure to properly allege scienter precluded claim that spokesperson for company engaged in providing mechanical computer-aided design software committed securities fraud in violation of § 10(b) by presenting facts regarding company's average selling price at time executive should have known that adverse factors necessitated general price cutting; there was no showing that at time of statement competitive pressures compelled overall price drop. In re Parametric Technology Corp., D.Mass.2001, 300 F.Supp.2d 206 · Securities Regulation ⟜ 60.45(1)

Allegations that officials at health care company had current access to adverse non-public information, had advance notice of medical malpractice lawsuits, knew that company no longer carried excess coverage, sold some of their shares in secondary offering, and received performance-based bonuses, neither individually nor collectively, created strong inference that officials had actual knowledge that their forward-looking statements regarding adequacy of company's reserves and its satisfactory financial health were false, and thus officials were not subject to liability under § 10(b), where there was no discrepancy between information known to company management and that presented to public or its actuaries, company expressed its uncertainty concerning effect change in its insurance scheme might have on its financial performance, and stock sale occurred nearly one year before company's announcement that it would take charge of $55 million to cover liability risks. In re Kindred Healthcare, Inc. Securities Litigation, W.D.Ky.2004, 299 F.Supp.2d 724 · Securities Regulation ⟜ 60.45(1)

Neither "bespeaks caution" doctrine nor safe harbor provision of Private Securities Litigation Reform Act (PSLRA) applied to relieve general partner of limited partnership and partnership's former chief executive officer (CEO) of liability on investors' securities fraud claims arising from alleged material misrepresentations inflating value of limited partnership's stocks when investors sufficiently alleged that general partner and former CEO knew that their misrepresentations were false at the time they were made, thereby precluding treatment of alleged misrepresentations as forward-looking comments made with appropriate cautionary statements. In re Globalstar Securities Litigation, S. D.N.Y.2003, 2003 WL 22953163 , Unreported. Securities Regulation ⟜ 60.27(5)

15 U.S.C.A. § 78u-5, 15 USCA § 78u-5

Current through P.L. 110-243 (excluding P.L. 110-234) approved 6-3-08

Copr. (C) 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.