**DLA PIPER**

DLA Piper US LLP
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
www.dlapiper.com

Joshua S. Sohn
joshua.sohn@dlapiper.com
T 212.335.4892
F 212.884.8492

April 11, 2008

**BY HAND**

The Honorable Richard J. Sullivan
United States District Court
Southern District of New York
500 Pearl Street, Room 615
New York, New 10007

Re:    <u>In re Fuwei Films Securities Litigation, Case No. 07-CV-9416 (RJS)</u>

Dear Judge Sullivan:

    We represent defendants Maxim Group LLC; WR Hambrecht + Co; and Chardan Capital Markets, LLC (collectively, the "Underwriters") in this matter. Pursuant to Your Honor's February 19, 2008 Scheduling Order, the Underwriters must respond to plaintiffs' Consolidated Amended Class Action Complaint (the "Amended Complaint") on or before April 30, 2008. In accordance with Your Honor's Individual Practices, we write to respectfully request a pre-motion conference to discuss our intended motion to dismiss the Amended Complaint.

    The Amended Complaint alleges that the Underwriters violated Sections 11 and 12(a)(2) of the Securities Act of 1933. These claims are premised on alleged misstatements and omissions made in connection with the December 2006 initial public offering of Fuwei Films (Holdings) Co., Ltd.'s ("Fuwei" or the "Company") common stock (the "IPO"). Fuwei, whose stock is publicly traded on the NASDAQ Global Market, operates in the People's Republic of China, manufacturing and selling plastic film for consumer packaging and industrial use.[1]

    According to the Amended Complaint, Fuwei's primary assets are two production lines located in China that plaintiffs allege were obtained through fraudulent transactions effected in violation of Chinese law.[2] It alleges that the three original owners of various Fuwei affiliates and predecessors—Jun Yin, Duo Wang, and Tonghu Zhou—perpetrated this scheme and are currently incarcerated in China as a result. The Amended Complaint does not allege that the Underwriters either knew of the scheme or had any reason to suspect it. Instead, the Amended Complaint makes plain that the Underwriters were nothing more than victims of the alleged criminal scheme.

---

[1] Amended Complaint ¶ 19.

[2] Amended Complaint ¶ 10.



The Honorable Richard J. Sullivan
April 11, 2008
Page Two

The Amended Complaint alleges that the Fuwei's registration statement and prospectus (collectively, the "registration statement") improperly described the circumstances of the Company's acquisition of its production lines, including the potential legal consequences thereof, and failed to disclose a pending arbitration. Putative class members are investors who purchased stock either in the Company's IPO or in the aftermarket pursuant and/or traceable to the registration statement.[3] Plaintiffs allege that as the crimes were revealed, the value of their stock declined, damaging them.[4] The Underwriters intend to move to dismiss the Amended Complaint, or portions thereof, on four primary grounds.

First, the registration statement does not contain any actionable misstatements or omissions. In the securities context, when a "dispute exists as to whether the material which the plaintiff alleges is required to be disclosed is actually a fact . . . the law requires only that the disputed facts and the possible outcomes be disclosed."[5] Here, the registration statement described the "tremendous risk" associated with the acquisitions, including the risk that the Company might cease operations if their legality were successfully challenged.[6] Because the disclosures called the facts and possible outcomes to the attention of potential investors, they were sufficient as a matter of law. Similarly, these disclosures trigger the "bespeaks caution" doctrine.[7] This doctrine protects issuers and underwriters that have included warnings with regard to forward-looking information provided to the marketplace. Such cautionary language renders alleged misrepresentations and omissions immaterial as a matter of law.

---

[3] Amended Complaint ¶ 1.

[4] Amended Complaint ¶ 12.

[5] *Ranger Oil Ltd. v. Petrobank Energy and Res. Ltd.*, 2000 WL 33115906, at * 12 (S.D.N.Y. May 23, 2000) (refusing to enjoin tender offer where disclosure was adequate); *Avnet, Inc. v. Scope Indus.*, 499 F. Supp. 1121, 1125 (S.D.N.Y. 1980) (dismissing claim, observing that purpose of disclosure requirements served where dispute and possible outcomes are stated); *Nemo v. Allen*, 466 F. Supp. 192, 195 (S.D.N.Y. 1979) (dismissing complaint upon finding that proxy statement adequately revealed facts and need not characterize conduct as criminal).

[6] Amended Complaint ¶ 39.

[7] *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) (affirming dismissal of securities fraud claims where offering memorandum "statements . . . clearly 'bespeak caution'"); *Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004) (affirming dismissal of Section 11 and 12 claims against underwriters, holding that "alleged misrepresentations in a stock offering are immaterial as a matter of law [if no] . . . reasonable investor could consider them important in light of . . . cautionary language"). This language also entitles Underwriters to dismissal of the Amended Complaint under the PSLRA's safe harbor provision for forward-looking statements. *See* 15 U.S.C. § 77z-2(c).

**DLA PIPER**

The Honorable Richard J. Sullivan
April 11, 2008
Page Three

Second, the Underwriters were under no duty to disclose the pending arbitration—regarding the acquisition of a production line—that the Complaint alleges was wrongfully omitted from disclosure.[8] This arbitration demand was not a "material pending legal proceeding" as a matter of law.[9] As such, disclosure of the arbitration was not required.

Third, the Amended Complaint does not properly allege that the "loss was . . . caused by the materialization of the risk concealed by the fraudulent statement."[10] As late as October, 2007—well after the allegedly damaging information had been publicly revealed—the Company's stock was trading above the price at which it was offered in the IPO. If the defendants' concealment of that information improperly inflated the stock price, then the disclosures should have swiftly driven the price down. They did not.

Fourth, for Section 12(a)(2) claims to survive, a complaint must allege that plaintiffs purchased their shares in an IPO, not simply that they can trace their purchases to a registration statement and prospectus.[11] Here, the proposed class includes aftermarket purchasers.[12] As a result, the Court should dismiss those plaintiffs' claims, regardless of traceability.

Based on the foregoing and other related arguments that will be set forth in briefing, the Underwriters respectfully request that the Court schedule a pre-motion conference.

Respectfully submitted,

*Joshua S. Sohn*

cc:  Laurence M. Rosen, Esq. (via e-mail: lrosen@rosenlegal.com); Phillip Kim, Esq. (via e-mail: pkim@rosenlegal.com); Rebecca A. Tingey (via e-mail: rtingey@dreierllp.com); Laura M. Vasey (via e-mail: lvasey@loeb.com)

---

[8] Amended Complaint ¶¶ 11, 68-70.

[9] *See* Reg. S-K, Item 103, Instr. 2.

[10] *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 107 (2d Cir. 2007) (affirming dismissal of securities fraud claims); *see also Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 173 (2d Cir. 2005) (affirming dismissal of claims, holding "plaintiff must allege . . . that the *subject* of the fraudulent statement or omission [caused] actual loss suffered") (emphasis in original) (internal quotation omitted).

[11] *Yung v. Lee*, 432 F.3d 142, 148 (2d Cir. 2005) (affirming dismissal of Section 12 claims, holding "purchasers in private or secondary offerings are precluded from bringing" such claims).

[12] Amended Complaint ¶ 1.