UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
                                      :
*In re*                               :  INDEX NO. 07 CV 9416 (RJS)
FUWEI SECURITIES LITIGATION           :  ECF CASE
                                      :
                                      :
------------------------------------- X


**MAXIM GROUP LLC, CHARDAN CAPITAL MARKETS, AND WR HAMBRECHT +
CO., LLC'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION TO
<u>DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT</u>[1]**


DLA PIPER US LLP

Joshua S. Sohn
Caryn G. Schechtman
Kevin D. Galbraith
1251 Avenue of the Americas
New York, NY 10020
(212) 335-4500 (Telephone)
(212) 335-4501 (Facsimile)
joshua.sohn@dlapiper.com

Perrie M. Weiner (admitted *pro hac vice*)
1999 Avenue of the Stars
Suite 400
Los Angeles, CA 90067
(310) 595-3000 (Telephone)
(310) 595-3300 (Facsimile)

*Attorneys for the Underwriter Defendants*

---

[1] The abbreviations and defined terms used in this memorandum have the same meaning as in the Underwriters' Memorandum of Law in Support of Their Motion to Dismiss the Consolidated Amended Class Action Complaint, dated May 14, 2008 (the "Mov. Mem.").

## TABLE OF CONTENTS

                                                                                                                                      **Page**

Preliminary Statement ............................................................................................................. 1

Argument ................................................................................................................................ 2

I.     THE COURT SHOULD NOT CONSIDER THE EXHIBITS PLAINTIFFS IMPROPERLY SUBMITTED WITH THEIR OPPOSITION ......................................... 2

II.    THE REGISTRATION STATEMENT DOES NOT CONTAIN ANY MISSTATEMENTS OR ACTIONABLE OMISSIONS ................................................. 3

        A.    There Was No Duty To Disclose The Investigation Of Yin And Wang ................ 5

                1.    The Supposed "Criminal Proceeding" Spurned By The Great Wall Complaint Was Nothing More Than An Investigation Commenced Without Any Evidence Of Wrongdoing ................................................. 5

                2.    Confiscation Of Chinese Passports Does Not Require Due Process And May Not Reasonably Be Considered Indicia Of A Criminal Proceeding ............................................................................................... 6

        B.    There Was No Duty To Disclose The Arbitration ................................................ 7

        C.    Chinese Counsel's Opinion Was Forward Looking And Accurate ...................... 9

III.   PLAINTIFFS SHOULD NOT BE PERMITTED TO REPLEAD ................................. 10

Conclusion ............................................................................................................................ 10

## TABLE OF AUTHORITIES

### CASES

*Avent v. Doe*,
    2008 WL 877176 (N.D.N.Y. Mar. 31, 2008) ..................................................................2

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ........................................................................................................7

*Bolger v. First State Fin. Serv.*,
    759 F. Supp. 183 (D.N.J. 1991) ...............................................................................4, 6, 8

*Calderon v. Tower Associates Intern., Inc.*,
    1989 WL 29916 (D. Or. Mar. 28, 1989) ........................................................................7

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ...........................................................................................2

*Cunningham v. Dept. of Correctional Serv's*,
    2007 WL 2846917 (N.D.N.Y. Sept. 26, 2007) ..............................................................2

*Eunique v. Powell*,
    302 F.3d 971 (9th Cir. 2002) .........................................................................................6

*Faulkner v. Beer*,
    463 F.3d 130 (2d. Cir. 2006) ..........................................................................................2

*GAF Corp. v. Heyman*,
    724 F.2d 727 (2d Cir. 1983) ..................................................................................4, 6, 8

*Ganino v. Citizens Utils. Co.*,
    56 F. Supp. 2d 222 (D. Conn. 1999), *reversed in part, vacated in part on other grounds*, 228 F.3d 154 (2d Cir. 2000) ............................................................................7

*Garber v. Legg Mason*,
    537 F. Supp. 2d 597 (S.D.N.Y. 2008) ............................................................................4

*General Elec. Co. v. Rowe*,
    1992 WL 277997 (E.D. Pa. Sept. 30, 1992) ..................................................................7

*In re Alliance Pharmaceutical Corp. Sec. Litig.*,
    279 F. Supp. 2d 171 (S.D.N.Y. 2003) ............................................................................4

*In re Home Health Corp. of America, Inc. Sec. Litig.*,
    1999 WL 79057 (E.D. Pa. Jan. 29, 1999) ......................................................................7

*In re Kidder Peabody Sec. Litig.*,
    10 F. Supp. 2d 398 (S.D.N.Y. 1998) .................................................................................... 7

*In re Sotheby's Holdings, Inc.*,
    2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000) ...................................................................... 4

*In re Time Warner, Inc. Sec. Litig.*,
    9 F.3d. 259 (2d Cir. 1993) ..................................................................................................... 4

*Kahn v. Wien*,
    842 F. Supp. 667 (E.D.N.Y. 1994) ............................................................................... 4, 6, 8

*L.L. Capital Partners v. Rockefeller Center Properties, Inc.*,
    921 F. Supp. 1174 (S.D.N.Y. 1996) ...................................................................................... 4

*Lingenfelter v. Title Ins. Co. of Minn.*,
    442 F. Supp. 981 (D. Neb. 1977) .......................................................................................... 4

*Mgmt. Assistance Inc. v. Edelman*,
    584 F. Supp. 1021 (S.D.N.Y. 1984) .................................................................................. 4, 6

*P. Stolz Family P'ship L.P. v. Daum*,
    355 F.3d 92 (2d Cir. 2004) .................................................................................................. 10

*Panther Partners v. Ikanos Communications*,
    538 F. Supp. 2d 662 (S.D.N.Y. 2008) ................................................................................... 4

*Rapoport v. Asia Electronics Hold'g Co., Inc.*,
    88 F. Supp.2d 179 (S.D.N.Y. 2000) ...................................................................................... 9

*Seibert v. Sperry Rand Corp.*,
    586 F.2d 949 (2d. Cir. 1978) ................................................................................................. 4

*Walker v. Snyder*,
    2007 WL 2454194 (N.D.N.Y. Aug. 23, 2007) ..................................................................... 2

*Weinstein v. Albright*,
    261 F.3d 127 (2d Cir. 2001) .................................................................................................. 6

## STATUTES

17 C.F.R. § 229.103(2) (2008)..................................................................................................7

22 C.F.R. §§ 51.60-62..............................................................................................................6

**Preliminary Statement**

At the core of plaintiffs' Amended Complaint is the phantasm that Fuwei is about to lose its Production Lines. Plaintiffs allege that the December 2006 Registration Statement concealed the "real and imminent risk" that Fuwei would lose the Production Lines, despite the fact that it has neither happened, nor been threatened at any point since the IPO. Plaintiffs' fifty pages of briefing and new exhibits improperly submitted in opposition to defendants' motions to dismiss cannot change the simple facts that: (1) Fuwei continues to own the Production Lines *unchallenged*; and (2) the Registration Statement explicitly warned investors that there could be challenges to Fuwei or its predecessors' acquisitions of the Production Lines and that such a challenge—if successful—could jeopardize Fuwei's ability to continue as an operating business. Either one of these facts taken alone is sufficient to defeat plaintiffs' Amended Complaint.

Choosing to ignore these facts, plaintiffs simply argue that because Yin and Wang, two significant Fuwei shareholders, were arrested—albeit ten months after the IPO—in connection with their roles in their scheme involving more than twenty companies, the Registration Statement *must* somehow contain an actionable misstatement or omission. This *ipse dixit* logic flies in the face of both reality and well-established pleading standards.

For these reasons, the reasons set forth in the Underwriters' opening brief, the reasons set forth by the other defendants, and the additional reasons that follow, the Amended Complaint fails to allege the requisite elements necessary to hold the Underwriters liable under either Section 11 or Section 12(a)(2) of the Securities Act. Accordingly, the Amended Complaint should be dismissed as a matter of law.

1

**Argument**

I.  THE COURT SHOULD NOT CONSIDER THE EXHIBITS PLAINTIFFS IMPROPERLY SUBMITTED WITH THEIR OPPOSITION

In the face of the Underwriters' and Fuwei's motion, plaintiffs submitted a fifty-page opposition brief and a declaration with thirteen exhibits. These exhibits include "copies" of Chinese-language articles and "true and correct copies" of various other documents, including pages from websites. (Declaration of Lawrence Rosen, dated June 26, 2008 ("Rosen Decl.") Exhs. 1 through 13.) Additionally, in their brief, plaintiffs cite to various pages from www.wikipedia.com—a website containing content drafted and continuously updated by the public. (*See, e.g.,* Plaintiffs' Memorandum of Law in Opposition to Motions to Dismiss The Consolidated Amended Class Action Complaint ("Opp. Mem.") at 5 n.6.)[2] None of these sources, however, is properly before the Court on this motion to dismiss. Instead, the Court may only consider documents actually relied on when drafting the Amended Complaint and on documents in the public record.[3] Moreover, for the Court to consider extraneous documents, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[4]

---

[2] *See* http://en.wikipedia.org/wiki/Wikipedia:Introduction ("Wikipedia is an encyclopedia written collaboratively by many of its readers ... Many people are constantly improving Wikipedia, making thousands of changes per hour").

[3] *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (mere notice or possession of the proffered documents at time of drafting is not enough; plaintiffs must have relied on them in drafting complaint).

[4] *See Faulkner v. Beer*, 463 F.3d 130, 134 (2d. Cir. 2006); *Walker v. Snyder*, No. 05 Civ. 1372, 2007 WL 2454194, at *2 (N.D.N.Y. Aug. 23, 2007) (authenticity, accuracy, and relevance must be undisputed); *Cunningham v. Dept. of Correctional Serv's*, No. 06 Civ. 272, 2007 WL 2846917, at *2 (N.D.N.Y. Sept. 26, 2007) (same); *Avent v. Doe*, No. 05 Civ. 1311, 2008 WL 877176, at *2 (N.D.N.Y. Mar. 31, 2008) (same).

Plaintiffs posit, in a footnote, that the Court may consider these sources since they were relied on in drafting the Amended Complaint. (Opp. Mem. at 1-2 n.3.) This is simply not the case. As a threshold matter, the certification of the translator of the Chinese-language "articles" makes plain that those articles were not translated until more than three months *after* the filing of the Amended Complaint. (Rosen Decl. Exh. 6.) Similarly, the Wikipedia entries referenced in plaintiffs' memorandum of law were "visited" on June 23, 2008, also more than three months *after* the filing of the Amended Complaint. (Opp. Mem. at 5 n.6.) Moreover, the authenticity of the various documents—particularly the Chinese-language "articles"—is suspect. The Rosen Declaration, which attaches the "articles", describes them as "copies" while it describes the other attachments as "true and correct copies."[5] These disparate descriptions make sense upon review of the Chinese "articles," which are unequivocally not the original articles they purport to be. The versions attached as exhibits to the Rosen Declaration have Chinese sentences and English sentences interspersed and are demonstrably different than the actual contents of the websites identified by those "articles."[6] Finally, four of the five Chinese-language "articles" postdate the IPO and are necessarily irrelevant to the Court's inquiry. Accordingly, plaintiffs' eleventh-hour attempt to supplement the record before the Court on this motion should not be countenanced.

II. THE REGISTRATION STATEMENT DOES NOT CONTAIN ANY MISSTATEMENTS OR ACTIONABLE OMISSIONS

Regardless of whether the Court considers the sources improperly submitted by plaintiffs, neither their Amended Complaint nor their opposition brief identifies a single actionable misstatement or omission in the Registration Statement. Instead, plaintiffs attempt to create a

---

[5] *Compare* Rosen Decl. paragraphs 3 through 7 *and* paragraphs 8 through 15.

[6] *Compare* Declaration of Caryn Schechtman, dated July 24, 2008, Exhs. 1 & 2 *and* Rosen Decl. Exhs. 2 & 5.

3

duty where none exists and complain that Fuwei failed to disclose certain information that it was under no duty to disclose. Because it is well settled that defendants may be held liable *only* for failing to disclose material facts they had a duty to disclose,[7] which does not include publicly available information,[8] "bald, untested allegations . . . not involving the subject corporation,"[9] or uncharged illegal conduct, the Amended Complaint should be dismissed as a matter of law.[10]

Plaintiffs claim that the "Registration Statement was false and misleading because it erroneously stated that Fuwei had acquired its primary operating assets, the Production lines, lawfully." (Opp. Mem. at 3.) They, however, ignore that *to this day*, there has been no finding

---

[7] *See also Garber v. Legg Mason*, 537 F. Supp. 2d 597, 610 (S.D.N.Y. 2008) (absent legal obligation to disclose allegedly omitted information, dismissal of Sections 11 and 12 claims granted); *In re Time Warner, Inc. Sec. Litig.*, 9 F.3d. 259, 267 (2d Cir. 1993) ("an omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts."); *In re Alliance Pharmaceutical Corp. Sec. Litig.*, 279 F. Supp. 2d 171, 182 (S.D.N.Y. 2003) (duty to disclose arises from either (1) express mandates of securities laws and the rules promulgated thereunder, or (2) in the general antifraud provisions of the statutes and rules); *L.L. Capital Partners v. Rockefeller Center Properties, Inc.*, 921 F. Supp. 1174, 1179 (S.D.N.Y. 1996) (same); *Panther Partners v. Ikanos Communications*, 538 F. Supp. 2d 662, 668 (S.D.N.Y. 2008) (duties to disclose arise out of S-K and similar regulations, and nowhere else).

[8] *See Garber*, 537 F. Supp. 2d at 611 ("the securities laws do not require disclosure of information that is publicly known."); *Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 952 (2d. Cir. 1978) ("where information is equally available to both parties, a defendant should not be held liable to the plaintiff under the securities laws for failure to disclose.").

[9] *See GAF Corp. v. Heyman*, 724 F.2d 727, 739-40 (2d Cir. 1983) (interpreting Regulation S-K, finding that "unadjudicated allegations … should not automatically be deemed material."). *See also Kahn v. Wien*, 842 F. Supp. 667, 678 (E.D.N.Y. 1994) ("regardless of how serious they may appear on their face, unadjudicated allegations in a pending civil action . . . should not be material."); *Bolger v. First State Fin. Serv.*, 759 F. Supp. 183, 194 (D.N.J. 1991) ("even after allegations have become the subject of a lawsuit, Regulation S-K requires disclosure only of non-routine pending litigation."); *Mgmt. Assistance Inc. v. Edelman*, 584 F. Supp. 1021, 1035 (S.D.N.Y. 1984) (denying preliminary injunction on Section 14(a) claim despite nominee's undisclosed violation of ICA).

[10] *See In re Sotheby's Holdings, Inc.*, No. 00 Civ. 1041, 2000 WL 1234601, at *4 (S.D.N.Y. Aug. 31, 2000) (in 10(b) and 20(a) case, recognizing that "there is no general duty under SEC regulations for a corporation to disclose uncharged illegal conduct."); *Lingenfelter v. Title Ins. Co. of Minn.*, 442 F. Supp. 981, 995 (D. Neb. 1977) (dismissing securities claims, holding that the evidence presented did not establish that the defendants "had a duty to notify the plaintiff [investors] and other similarly situated of the S.E.C. investigation").

(much less any accusations by anyone other than plaintiffs) that *Fuwei's* conduct in connection with its acquisitions violated Chinese law.

### A. There Was No Duty To Disclose The Investigation Of Yin And Wang

Plaintiffs allege that defendants had a duty to disclose in the Registration Statement an investigation of Yin and Wang's business dealings, which commenced one month prior to the filing of the Registration Statement. (Opp. Mem. at 25.) According to plaintiffs, the investigation had to be disclosed because it was a "criminal proceeding." (Opp. Mem. at 26.) Plaintiffs, however, have not alleged facts indicating that, prior to the IPO, the investigation of Yin and Wang was either a proceeding or criminal. Instead, plaintiffs baldly argue that an investigation of Yin and Wang must have been a material "criminal proceeding" because: (1) the investigation was prompted by Great Wall's complaining to the Chinese government about their conduct; (2) the Chinese government confiscated Yin and Wang's passports, effectively preventing them from traveling abroad; and (3) nearly a year later, they were arrested. As plaintiffs' own documents reveal, however, at the time of the IPO, there was not even a substantiated investigation of Yin and Wang—much less a criminal proceeding.

    1.    *The Supposed "Criminal Proceeding" Spurned By The Great Wall Complaint Was Nothing More Than An Investigation Commenced Without Any Evidence Of Wrongdoing*

According to plaintiffs, Great Wall "complained to the Ministry of Public Security, causing the initiation of legal proceedings against Yin and Wang." (Opp. Mem. at 39.) This is simply not the case. First, the Amended Complaint does not allege that at the time of the IPO, there had been an "initiation of legal proceedings against Yin and Wang" much less Fuwei. There was an unsubstantiated investigation. Second, as plaintiffs' opposition concedes, this investigation was commenced because Great Wall "deemed the transfers of the Production Lines to be illegal," and not because there were any objective factual or investigatory findings. (Opp.

Mem. at 5.) Moreover, as one of the "articles" plaintiffs submit makes plain, at the time of the IPO, Great Wall was "unable to provide solid evidence to back up this accusation."[11] At the time of the IPO, therefore, the allegations made by Great Wall to the Chinese government were nothing more than precisely the sort of bald, unadjudicated allegations the Second Circuit has held immaterial as a matter of law.[12] Third, despite plaintiffs' continued conflating of entities and individuals, at the time of the IPO, the investigation generally involved Yin and Wang's myriad business ventures and did not focus on conduct related to, or involving, Fuwei.

### 2. *Confiscation Of Chinese Passports Does Not Require Due Process And May Not Reasonably Be Considered Indicia Of A Criminal Proceeding*

Next, plaintiffs ask this Court to infer from the confiscation of Yin and Wang's passports that a criminal proceeding had been commenced. (Opp. Mem. at 26.) This inferential leap is unsupported by any citation and unwarranted. Although United States courts recognize a liberty interest in the right to possess a passport and travel internationally, the Chinese government shares no such view. Instead, Chinese citizens may be deprived of their passports at the whim and caprice of government officials without regard for due process.[13] Moreover, plaintiffs' argument that Yin and Wang's inability to travel materially affected Fuwei's operations is belied by the absence of any allegations concerning their operating roles—if any—with the company.

---

[11] Rosen Decl. Exh. 1 p. 4/9.

[12] *See GAF*, 724 F.2d at 739-40; *Kahn*, 842 F. Supp. at 678; *Bolger*, 759 F. Supp. at 194; *Mgmt Assistance Inc*, 584 F. Supp. at 1035 (denying preliminary injunction on Section 14(a) claim despite nominee's undisclosed violation of ICA).

[13] *Compare China, Country Reports on Human Rights Practices*—2006, U.S. Dept. of State, Mar. 6, 2007 (noting Chinese authorities' longstanding practice of confiscating passports under a wide variety of circumstances) *and* 22 C.F.R. §§ 51.60–62 (listing conditions for revoking U.S. citizen's passport, including felony arrest, criminal court order, and grand jury subpoena, noting that a person whose passport has been revoked is entitled to a prompt hearing); *see also Weinstein v. Albright*, 261 F.3d 127, 134-38 (2d Cir. 2001) (State Department does not arbitrarily revoke passports); *Eunique v. Powell*, 302 F.3d 971, 977-78 (9th Cir. 2002) (right to international travel may only be curtailed within the bounds of due process).

B.  **There Was No Duty To Disclose The Arbitration**

In their moving memorandum, the Underwriters explained that there was no obligation to disclose the Arbitration both because, pursuant to Regulation S-K, it was not material and because DMT brought the Arbitration against Neo-Luck and *not* Fuwei. (Mov. Mem. at 19.) Moreover, as disclosed in Fuwei's Form 20-F filed with the SEC on April 14, 2008 (the "Fuwei 20-F"), the Arbitration settled when Neo-Luck—not Fuwei—paid DMT $900,000. (Mov. Mem. at 9; Sohn Decl. Exh. D.) The Court may take judicial notice of this filing.[14]

As plaintiffs have acknowledged elsewhere in their opposition and in their Amended Complaint, Regulation S-K controls what information is material for disclosure purposes.[15] While plaintiffs here try to avoid the regulation's unequivocal meaning, these attempts are unavailing.[16] As the Underwriters made plain in their moving memorandum, Regulation S-K, Item 103, Instruction 2, states that in order to be material and therefore subject to mandatory disclosure, a litigation must seek damages equal to or exceeding ten percent of the company's assets.[17] The Arbitration, which was brought by DMT against Neo-Luck—not Fuwei—sought

---

[14] *See Ganino v. Citizens Utils. Co.*, 56 F. Supp. 2d 222, 226 (D. Conn. 1999), *reversed in part, vacated in part on other grounds*, 228 F.3d 154 (2d Cir. 2000) (court may consider publicly filed documents).

[15] *See, e.g.*, Amended Complaint ¶ 123 (identifying Regulation S-K, Item 103 as governing what must be disclosed); Opp. Mem. at 26 ("Failure to make the requisite disclosures under Regulation S-K will generally produce liability under the Securities Act.").

[16] *See* Opp. Mem. at 37-38 (citing *Calderon v. Tower Associates Intern., Inc.*, 1989 WL 29916, at *3 (D. Or. Mar. 28, 1989) (finding that where defendants had provided information beyond scope of Regulation S-K, further discovery on those subjects was appropriate); *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988) (Rule 10b-5 case, noting "[s]ilence, absent a duty to disclose, is not misleading"); *In re Kidder Peabody Sec. Litig.*, 10 F. Supp. 2d 398 (S.D.N.Y. 1998) (Section 10(b) case, finding materiality where chronic overstatement of profits by a GE subsidiary totaled 13.5% of the subsidiary's earnings one year, and 45% the next); *Ganino*, 228 F.3d at 162 (Rule 10b-5 case); and *In re Home Health Corp. of America, Inc. Sec. Litig.*, No. 98 Civ. 834, 1999 WL 79057 (E.D. Pa. Jan. 29, 1999) (Section 10(b) case).)

[17] *See* 17 C.F.R. § 229.103(2) (2008); *see also General Elec. Co. v. Rowe*, No. 89 Civ. 7644, 1992 WL 277997 (E.D. Pa. Sept. 30, 1992) (dismissing complaint ).

7

damages from Neo-Luck of $1.25 million. Even if the Arbitration had been brought against Fuwei, which it was not, it would have sought damages of only 2% of Fuwei's assets. Accordingly, under Regulation S-K's plain and unequivocal language, it is immaterial as a matter of law.

In a last-gasp attempt to create a disclosure obligation where none exists, plaintiffs now argue that "[s]ince the subject matter of the bankruptcy fraud alleged in Great Wall's claim is for the entire value of the DMT Line, the amount of money at stake in both the arbitration proceeding and proceedings initiated by the Ministry of Public Security exceeds the 10% materiality threshold under Regulation S-K." (Opp. Mem. at 37.) In making this argument, Plaintiff again conflates Yin, Wang, and Fuwei; conflates the Great Wall investigation and the DMT/Neo-Luck Arbitration; and ignores the fact that, at the time of the IPO, there was no "proceeding" pending against anyone but Neo-Luck, for that $1.25 million. (Opp. Mem. at 37-39.) At that time, an investigation into Yin and Wang's myriad business dealings had been commenced and no amount of creative characterization of the underlying Great Wall claims can overcome the fact that they were, at the time of the IPO, untested, unlitigated, and immaterial—nothing more.[18]

Plaintiffs argue that despite urging the Court to consider extraneous material outside the pleadings when deciding this motion, that consideration should be limited to the documents plaintiffs submit. (Opp. Mem. at 36.) Consistent with this argument, plaintiffs argue that the Court should disregard the Fuwei 20-F, not because it is somehow unreliable, but because, among other things, Yin and Wang were "able to manipulate the settlement" of the Arbitration and that "[h]aving seen the allegations against them in the CAC, Yin and Wang may simply have

---

[18] *See GAF*, 724 F.2d at 739-40; *Kahn*, 842 F. Supp. at 678; *Bolger*, 759 F. Supp. at 194.

decided that for appearances' sake they would structure the settlement with DMT S.A. in this manner." (Opp. Mem. at 36.) Plaintiffs' suggestion that this supposed manipulation was somehow concocted by two Chinese prisoners who have been held in "shuang'gui" for more than a year and have not even been served with the Amended Complaint simply strains credulity.

### C.   Chinese Counsel's Opinion Was Forward Looking And Accurate

In their moving memorandum, the Underwriters identified numerous explicit warnings contained in the Registration Statement that put prospective investors on notice that if certain events occurred—which they have not—the health of the Company would be at risk. (Mov. Mem. at 13-16.) As a result, the Underwriters are entitled to invoke the bespeaks caution doctrine.[19] (*Id.*) Among these protected statements is Chinese counsel's opinion given at the time of the IPO that "the auctions of the Bruckner and DMT production lines were valid under PRC law and the possibility of the creditors of Shandong Neo-Luck *successfully* exercising recourse or claiming repayment with respect to our assets purchased in the bankruptcy proceeding should be remote." (Opp. Mem. at 20 (emphasis added).)  This opinion has proven to be correct: there has been no finding that the auctions were invalid, nor have any creditors of Shandong Neo-Luck successfully held Fuwei liable for those transactions.

Ignoring the accuracy of this opinion, plaintiffs attempt to evade the protections afforded forward-looking statements under the securities laws by arguing that this opinion was made in ignorance of all relevant facts and was therefore somehow materially misleading.  (Opp. Mem. at 26-31.)  Moreover, plaintiffs argue that had Chinese counsel been aware of these facts—that there were unsubstantiated allegations against Yin and Wang and that their passports had been

---

[19] *See Rapoport v. Asia Electronics Hold'g Co., Inc.*, 88 F. Supp.2d 179 (S.D.N.Y. 2000) (dismissing Section 11 and 12(a)(2) claims against Chinese company whose registration statement warned that because of uncertainties in Chinese law, its IPO might be found to have been unlawful).

9

confiscated—they categorically would not have given this opinion. (*Id.*) Not only do plaintiffs not explain why the opinion, which has proven to be accurate, would not have been given, but plaintiffs' arguments fail for a handful of additional reasons.

First, as described above, there were no material facts hidden from Fuwei's Chinese counsel. Second, the opinion was correct. Plaintiffs' rhetoric notwithstanding, other than possibly this action that seeks unidentified damages, there have been no material litigations— much less *successful* challenges—commenced against Fuwei. This absence of litigation has followed the revelation of facts far more critical of Yin and Wang (*e.g.*, that they had actually been arrested) than those plaintiffs argue should previously have been disclosed at the time of the IPO. Third, the opinion constituted a forward-looking statement and is therefore protected. Plaintiffs cite no authorities that compel a contrary result.[20]

### III. PLAINTIFFS SHOULD NOT BE PERMITTED TO REPLEAD

In their moving papers, the Underwriters argued that plaintiffs should not be permitted to replead their Amended Complaint. (Mov. Mem. at 23.) Tacitly acknowledging this, plaintiffs' opposition does not seek leave to replead.

### Conclusion

Because plaintiffs have not alleged any actionable misstatements of omissions, their Amended Complaint should be dismissed with Prejudice.

---

[20] *See* Opp. Mem. at 18 (citing *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 96 (2d Cir. 2004) (dismissing claims relating to all but one of defendant's statements, finding that—unlike warnings in Fuwei's Registration Statement—defendant's statement lacked blunt cautionary language).)

Dated: July 25, 2008
   New York, New York

DLA PIPER US LLP

By: *[signature: Joshua S. Sohn]*
  Joshua S. Sohn
  Caryn G. Schechtman
  Kevin D. Galbraith
1251 Avenue of the Americas
New York, NY 10020
(212) 335-4500 (Telephone)
(212) 335-4501 (Facsimile)
joshua.sohn@dlapiper.com

Perrie M. Weiner (admitted *pro hac vice*)
1999 Avenue of the Stars
Suite 400
Los Angeles, CA 90067
(310) 595-3000 (Telephone)
(310) 595-3300 (Facsimile)

*Attorneys for the Underwriter Defendants*

11