Alyson M. Weiss (AW-8474)
Laura M. Vasey (LV-0847)
LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154-1895
(212) 407-4000 (telephone)
(212) 407-4990 (fax)

*Attorneys for Defendants Fuwei Films (Holdings) Co.,*
*Ltd., Xiaoan He, and Mark Stulga*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X
                                                        :
                                                        :   No. 07-CV-9416 (RJS)
*In re*                                                 :
FUWEI FILMS SECURITIES LITIGATION                       :
                                                        :
------------------------------------------------------- X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DEFENDANTS FUWEI FILMS (HOLDINGS) CO., LTD., XIAOAN HE, AND**
**MARK STULGA'S MOTION TO DISMISS PLAINTIFFS'**
**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

---

[1] Abbreviations and definitions used in the moving memorandum of Defendants Fuwei, He and Stulga (collectively, "Defendants") are also used herein. To the extent applicable to the claims asserted against Defendants, the legal arguments set forth in the Underwriters' reply memorandum are incorporated herein by reference.

Plaintiffs' opposing memorandum ("Pl. Opp.") makes clear that their entire case is based upon conjecture and alleged fraud by hindsight. They purport to rely on five Chinese news articles (four of which were published <u>after</u> Fuwei's IPO), which state that Great Wall (a disgruntled creditor of Neo-Luck Group, not Fuwei) had alleged that Fuwei's controlling shareholders engaged in wrongdoing <u>not related</u> to Fuwei or its Production Lines. Based on these articles, Plaintiffs make the huge inferential leap that Fuwei's acquisition of its Production Lines was unlawful and that the omission of this "fact" from the Registration Statement rendered it materially false or misleading. Plaintiffs are wrong.

As a matter of law, there is no duty to disclose unsubstantiated allegations, and Plaintiffs plead nothing more here. Plaintiffs do not – and cannot – plead a single fact showing that Fuwei's acquisitions of the Production Lines were in any way improper or that Fuwei's acquisitions had been challenged at the time of the IPO or to this day. Nor do Plaintiffs plead a single fact suggesting that the allegedly undisclosed information existed <u>at the time of the IPO</u>, as they must to demonstrate that the Registration Statement and Prospectus were materially false or misleading <u>when made</u> in violation of Sections 11 and 12(a)(2) of the Securities Act.[2]

Plaintiffs do not and cannot plead facts showing that the Registration Statement was materially false or misleading when made, and nothing in their opposition papers can rescue their deficient claims. Accordingly, the Complaint should be dismissed with prejudice.

---

[2] Plaintiffs attempt to overcome this deficiency by arguing that the purported knowledge of Yin, Wang and Zhou of their own alleged wrongdoing should be imputed to Fuwei for the purpose of establishing that the Registration Statement and Prospectus were false and misleading when made. <u>See</u> Pl. Opp. at 15-17. As shown below, however, there is no legal basis for imputing the alleged knowledge of these shareholders to Fuwei (or any other defendant). <u>See</u> <u>infra</u> Part II.

**Argument**

I.   **The Registration Statement Contains No Material Misstatement Or Omission.**

Plaintiffs cannot state a valid claim under the Securities Act based upon a "false or misleading impression" and, at best, that is all Plaintiffs allege. See In re Union Carbide Class Action Sec. Litig., 648 F. Supp. 1322, 1325-1326 (S.D.N.Y. 1986) (dismissing sections 11 and 12(a)(2) claims against company because plaintiffs failed to identify any affirmative statement rendered false or misleading by the alleged omission). See Fuwei Mem. at 12-21.

   A.   **Defendants had no duty to disclose Great Wall's allegations against Neo-Luck Group.**

Plaintiffs contend that the Registration Statement failed to disclose that a creditor of Neo-Luck Group "had, as of the IPO date, challenged the transfer of the Production Lines." Pl. Opp. at 17, 19.[3] However, Plaintiffs plead no facts demonstrating that a legal proceeding or any other "challenge" had been commenced by a Neo-Luck Group creditor at the time of Fuwei's IPO, much less that this alleged "challenge" had anything to do with Fuwei or the Production Lines. Even if a proceeding had been commenced against **Neo-Luck Group**, Plaintiffs fail to explain how the existence of such a proceeding would render false or misleading the Registration Statement's suggestion that no creditor of **Shandong Neo-Luck** had initiated such a proceeding.

First, as demonstrated by the articles Plaintiffs attached to their Opposition, the Chinese news media did not disclose until after Fuwei's IPO that Great Wall had reported its allegations to Chinese banking authorities, which led to the imposition of travel restrictions upon Yin and Wang in November 2006. It is simply unreasonable to infer that Fuwei possessed this information at the time of its IPO simply because it was disclosed thereafter in May 2007. See

---

   [3]   Plaintiffs self-servingly characterize Great Wall's allegations as a "challenge" in a transparent effort to suggest that there was an existing legal challenge to Fuwei's acquisition of the Production Lines at the time of the IPO, which there was not (and has not been to this day).

Scibelli v. Roth, No. 98 Civ. 7228, 2000 WL 122193, at *3 (S.D.N.Y. Jan. 31, 2000) (not reasonable to infer that the issuer possessed the allegedly omitted information at the time of the offering based upon the disclosure of the information eight weeks later).  Compare Rosen Decl., Ex. 3 (undated article published by Qilu Economic Crime Investigation), with Reply Declaration of Laura M. Vasey, Esq. ("Vasey Reply Decl."), Ex. 1 (attaching translation of same article reflecting date of May 16, 2007).

Second, Great Wall's allegations had nothing to do with the Production Lines that Fuwei acquired from Shandong Neo-Luck.  Plaintiffs plead no facts supporting their assertion that Great Wall had challenged the transfer of the Production Lines, and there are none from which this could reasonably be inferred.  While one of the news articles reporting Great Wall's accusations refers to "a joint venture company producing plastics … and which is still in operation to this day" (Rosen Decl., Ex. 1), the article does not tie Great Wall's allegations to Shandong Neo-Luck or the Production Lines, as shown in Fuwei's Memorandum at 17-18 & Vasey Decl. Exs. A and B.

Third, even if Great Wall had made allegations specific to Shandong Neo-Luck or the Production Lines, mere allegations are not tantamount to the initiation of a legal proceeding or challenge.[4]  As a matter of law, a company has no duty to disclose unsubstantiated allegations to

---

[4] Even after allegations have become the subject of a lawsuit, Regulation S-K requires disclosure only of non-routine pending litigation that is material. 17 C.F.R. § 229.103.  See GAF Corp. v. Heyman, 724 F.2d 727, 739 (2d Cir. 1983) ("[U]nadjudicated allegations in a pending civil action against a director-nominee should not automatically be deemed material.  In a society as litigious as ours, where plaintiffs are permitted great latitude in their pleadings, a reasonable shareholder would not place much stock in the bald, untested allegations in a civil complaint....").  Great Wall's mere allegations certainly had not transformed into a "pending litigation" prior to the IPO or even now.

its shareholders.[5]  See Bolger v. First State Fin. Servs., 759 F. Supp. 182, 194 (D.N.J. 1991) ("A company has no duty to disclose to shareholders unsubstantiated allegations.").[6]  See also Dietrich v. Bauer, No. 95 Civ. 7051 (LMM), 1996 WL 709572, at *9 (S.D.N.Y. Dec. 10, 1996) ("An allegation of two rumors collectively originating from over twenty Defendants, including several large corporate Defendants, is insufficient to notify Defendants of the claims against them or the extent of their alleged involvement in a fraudulent scheme and must be dismissed.").

Even assuming Great Wall's allegations were known to Defendants, Fuwei had no duty to disclose them in the Registration Statement and their omission did not render any statement therein materially false or misleading.

**B.    Defendants had no duty to disclose the travel restrictions imposed upon Yin and Wang.**

Equally unpersuasive is Plaintiffs' argument that Defendants had a duty to disclose that "Yin and Wang were under investigation and that proceedings had been initiated against them for looting the assets of Neo-Luck Group."  Pl. Opp. at 17.  First, Plaintiffs plead absolutely no contemporaneous facts demonstrating that a proceeding had been initiated against Defendants Yin, Wang, or Zhou prior to Fuwei's IPO.  To the contrary, the news articles extant at the time of the IPO made clear that the government had **not** launched an investigation into the Neo-Luck Group bankruptcy and would **not** halt the bankruptcy.  See Fuwei Mem. at 17.

---

[5]   That Great Wall's allegations were unsubstantiated is plain from the articles reporting them.  See Fuwei Mem. at 17.  One of the news articles upon which Plaintiffs rely states that the creditor condemning the bankruptcies as an effort to escape debt "is unable to provide solid evidence to back up this allegation."  See Rosen Decl., Ex. 1 at p. 4.

[6]   The facts here are substantially similar to those in Bolger.  There the court explained: "In essence, Bolger argues First State was obligated to implicate its officers in wrong-doing based on his unproven charges.  The securities laws 'simply do not require management to accuse itself of antisocial or illegal policies....'"  Bolger, at 194 (quoting GAF, 724 F.2d at 740).

Plaintiffs also assert that the confiscation of the passports of Defendants Yin, Wang, and Zhou in November 2006 was a fact that should have been disclosed in the Registration Statement. Even assuming that the passports of these defendants were confiscated in November 2006, such confiscation alone is not a fact that Fuwei was required to disclose in its Registration Statement: that the Chinese government may have responded to Great Wall's allegations by imposing travel restrictions upon Yin and Wang, as present and former managers of Neo-Luck Group, does not legitimize Great Wall's allegations regarding Neo-Luck Group, much less support an inference that Shandong Neo-Luck's bankruptcy was a sham.

The facts here are strikingly similar to those in Rapoport v. Asia Electronics Holding Co., Inc., 88 F. Supp. 2d 179 (S.D.N.Y. 2000). In that case, plaintiffs filed suit after the company disclosed that its Chairman and CFO had been detained for questioning by the Disciplinary Committee of the Municipal Communist Party in Xianyang, China. Plaintiffs claimed that the prospectus falsely portrayed the company as being in compliance with all laws, domestic and international based upon an article in the Washington Post, which contained vague statements by an unnamed Propaganda Bureau official from the local Communist Party, did not identify the specific Chinese law violated or the nature of the alleged violation, and said "it was not clear whether [the company] followed Chinese law when its shares were listed on the Nasdaq…." The court concluded that plaintiffs failed to adequately allege that the company violated Chinese law in connection with the securities offering and, in any event, cautionary statements regarding securities subject to Chinese regulation precluded the claim under the bespeaks caution doctrine. The same conclusion should be reached here. See Fuwei Mem. at 13-16.

**C.      Defendants had no duty to disclose the DMT arbitration because it is was not material under Regulation S-K or otherwise.**

Plaintiffs' Opposition likewise fails to rebut Defendants' showing that they had no duty to disclose the DMT arbitration in the Registration Statement because Fuwei was not a party to the arbitration nor was it material at the time of the IPO.  As Fuwei plainly disclosed in the Company's April 2, 2007 Form 20-F, the Company first received notice in January 2007 (after the IPO) that the Court of Arbitration would permit DMT's claim to proceed against the Company, rather than Neo-Luck.  See Fuwei Mem. at 19-20.  Plaintiffs plead no facts to the contrary.

Furthermore, the DMT litigation was immaterial as a matter of law under Regulation S-K and in the context of the Registration Statement, which contained ample cautionary language regarding the risks associated with Fuwei's acquisition of its Production Lines.  See Fuwei Mem. at 13-16.[7]  Regulation S-K requires that a company disclose a legal proceeding only where the proceeding seeks ten percent or more of the company's assets.  See 17 C.F.R. § 229.103(2) (2008).  In the arbitration, DMT sought damages of $1.25 million; however, at the time the Registration Statement was filed, the Company's assets totaled approximately $57.6 million.  DMT thus sought less than two percent of the Company's assets, so there was no duty to disclose the arbitration because it was not a material pending litigation as a matter of law.

**D.      Plaintiffs Fail to Demonstrate that Defendants Concealed Facts from the Company's PRC Counsel or that its Opinion is Otherwise Actionable.**

Plaintiffs cannot establish Fuwei's liability under Section 11 on the theory that the legal opinion disclosed in the Registration Statement was inaccurate or incomplete.  See Pl. Opp. at

---

[7] Plaintiffs plead absolutely no facts supporting their allegation that the DMT arbitration challenged Shandong Neo-Luck's bankruptcy or Fuwei's acquisition of the DMT production line.  See Pl. Opp. at 37.

29. As a matter of law, the only cognizable challenge that may be made regarding a statement of opinion is that the speaker did not actually hold the opinion <u>and</u> that the opinion stated was, in fact, incorrect. <u>See</u> <u>Virginia Bankshares, Inc. v. Sandberg</u>, 501 U.S. 1083, 1093-98 (1991). Plaintiffs can establish neither. <u>See</u> Fuwei Mem. at 13-16.

The Registration Statement disclosed: "Our PRC counsel is of the opinion that the auctions of the Bruckner and DMT production lines were valid under PRC law and the possibility of the creditors of Shandong Neo-Luck <u>successfully</u> exercising recourse or claiming repayment with respect to our assets purchased in the bankruptcy proceeding should be remote." Reg. Stmt. at 15 (emphasis added).[8] Plaintiffs plead no facts suggesting that Fuwei's PRC counsel did not actually hold this opinion at the time it was offered. And the opinion is correct: no creditor of Shandong Neo-Luck had asserted any challenge to Fuwei's acquisition of the DMT line (the only line purchased in a bankruptcy proceeding) at the time of the IPO or even now, and there has certainly been no successful challenge to the validity of the Production Lines.[9] Indeed, it is only the Plaintiffs here who have asserted that Fuwei's acquisition of its Production Lines was unlawful under Chinese law.

Equally unavailing is Plaintiffs' argument that Defendants caused Fuwei's PRC counsel to issue an inaccurate legal opinion by concealing material facts from them. Pl. Opp. at 17, 26-32. This argument is nothing but pure speculation, unsupported by a single fact asserted anywhere in the Complaint.

---

[8] The bespeaks caution doctrine applies to "mixed statements" consisting of forward-looking and existing facts. <u>See</u> <u>In re Merrill Lynch & Co., Inc.</u>, 273 F. Supp.2d 351, 376-77 (S.D.N.Y. 2003). The legal opinion disclosed in the Registration Statement, while opining as to the validity of the auction procedures pursuant to which Fuwei purchased the Production Lines, also includes a forward-looking component opining about the likelihood of success of any future challenge by a creditor of Shandong Neo-Luck.

[9] Fuwei purchased the Bruckner line in a foreclosure proceeding initiated by the Bank of China in 2003, long before Shandong Neo-Luck's bankruptcy in 2004.

**E. The Registration Statement adequately disclosed Yin's and Wang's Overlapping Roles In Fuwei's Acquisition of the Production Lines.**

Plaintiffs contend that the Registration Statement failed to disclose that Yin and Wang "controlled both sides of the auction sales of the Production Lines." Pl. Opp. at 32. However, the Registration Statement clearly disclosed the substantial overlap between the management and employees of Fuwei and Shandong Fuwei. As demonstrated in Fuwei's Memorandum (at 20-21), the Registration Statement plainly disclosed that Fuwei was established by certain members of the former management team and employees of Shandong Neo-Luck, and that Yin, Wang and Zhou were majority shareholders of Fuwei before the IPO and thereafter. The Registration Statement also identifies Shandong Neo-Luck as a related party and plainly discloses that both of Fuwei's Production Lines were previously owned by Shandong Neo-Luck. These disclosures plainly alerted shareholders to the potential conflicts of interest that existed with respect to these transactions.

Plaintiffs next argue that the Registration Statement should have disclosed that, although Mr. Yin resigned as Chairman of Neo-Luck Group in 2003, "he secretly retained active control over" Neo-Luck Group and Shandong Neo-Luck. Pl. Opp. at 32. But the Complaint pleads no facts existing at the time of the IPO supporting Plaintiffs' assertions regarding Mr. Yin's purportedly "secret" control over Neo-Luck Group and Shandong Neo-Luck. Plaintiffs cite news reports published in May and June 2007 – months <u>after</u> Fuwei's IPO. <u>See</u> Rosen Decl., Exs. 3 and 5. <u>See</u> Declaration of Laura M. Vasey, Ex. 1, attaching translation of same article, dated May 16, 2007. The May 2007 report also makes clear that it was only <u>rumored</u> prior to that time that Neo-Luck Group's bankruptcies were improper. <u>See</u> Rosen Decl., Ex. 3: ("Rumors that have been circulating in the industry since the end of last year have finally been confirmed.").

**II.     The Knowledge of Defendants Yin, Wang and Zhou Cannot Be Imputed to Fuwei.**

Plaintiffs next erroneously contend that the knowledge of Defendants Yin, Wang and Zhou may be imputed to Fuwei. This conclusion does not follow (as Plaintiffs argue) from the basic principles that a corporation acts only through its officers, directors, employees and agents, and that the knowledge of those who "dominate and control" the corporation (such that the corporate veil may be pierced) may be imputed to the corporation. See Pl. Opp. at 16-17. The mere ownership of a controlling percentage of stock alone does not demonstrate that shareholders "dominate and control" the corporation for purposes of piercing the corporate veil, and Plaintiffs plead nothing more. See generally Status Intern. S.A. v. M & D Maritime Ltd., 994 F. Supp. 182, 186 (S.D.N.Y. 1998).

Under common law principles of agency and attribution, an agent's knowledge is not imputed to the corporation that serves as his principal unless: 1) the agent was acting within his scope of authority with respect to the affairs of the corporation, and 2) the agent's knowledge was acquired in the course of his duties on behalf of the corporation.[10] Neither requirement is satisfied by alleged actions taken and knowledge acquired while Defendants Yin, Wang and Zhou were managing Neo-Luck Group.

In any event, whether the knowledge of alleged controlling shareholders of a corporation may be imputed to the corporation concerns the internal affairs of the corporation and is therefore governed by the law under which Fuwei was organized – the Cayman Islands. The law

---

[10] See, e.g., Am Jur. (2d ed.) § 1447 ("An officer's or agent's knowledge is not imputed to the corporation when he or she has no authority to bind the corporation relative to the fact or matter within his or her knowledge, and a corporation is not affected by notice that comes to the agent or officer unless such knowledge comes to the agent or officer while he or she is transacting the business of the corporation."); Lavan v. Flanagan, 695 F. Supp. 800, 807 (D.N.J. 1988) ("'knowledge or duty to know and … failure to act as a director (of one company) cannot be made the constructive knowledge, duty to know or act of a second company' merely because a director concurrently serves as an officer of the second company") (citation omitted).

of the Cayman Islands, like the law of the United States, does not support imputing the knowledge of Messrs. Yin and Wang to Fuwei under principles of agency or Fuwei's incorporating documents.[11]

Under Cayman Islands law, attribution of knowledge to a corporation depends upon "the terms and policies of the substantive rule." Meridian Global Funds Management Asia Ltd. v. Securities Comm'n, [1995] 2 AC 500, at 9, 10 (Privy Council, June 26, 1995) (Vasey Reply Decl., Ex. 2).[12] Plaintiffs cite not a single case in which the knowledge of a controlling shareholder, who was not also an officer, director, or employee of the company, was imputed to a corporation (or any individual defendant) under the Securities Act. There is no basis for doing so here.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' Amended Complaint should be dismissed with prejudice.

Dated: New York, New York
       July 25, 2008

LOEB & LOEB LLP

By: /s/
    Alyson M. Weiss (AW-8474)
    Laura M. Vasey (LV-0847)
    345 Park Avenue
    New York, New York 10154-1895
    (212) 407-4000
    *Attorneys for Defendants Fuwei Films (Holdings) Co., Ltd., Xiaoan He, and Mark Stulga*

---

[11] See Scottish Air Int'l, Inc. v. British Caledonian Group, PLC, 81 F.3d 1224, 1234 (2d Cir. 1996) (in a federal question case, federal choice-of-law principles dictate that "questions relating to the internal affairs of corporations are decided in accordance with the law of the place of incorporation.").

[12] The Privy Council is the highest court of appeal in the Cayman Islands, and its decisions are binding law in the Cayman Islands. See The Cayman Islands (Appeals to Privy Council) Order 1984 (Vasey Decl., Ex. 3).