# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

―――――――――――

N⁰ 07 Civ. 9416 (RJS)

―――――――――――

IN RE: FUWEI FILMS SECURITIES LITIGATION

―――――――――――

MEMORANDUM AND ORDER
July 10, 2009

―――――――――――

RICHARD J. SULLIVAN, District Judge:

Lead Plaintiff Nijat Tonyaz ("Plaintiff") brings this putative federal class action lawsuit against Defendants Fuwei Films (Holdings) Co., Ltd. ("Fuwei" or the "Company"), the underwriters for Fuwei's December 19, 2006 initial public offering (the "underwriters"), and several of Fuwei's officers and directors (the "individual Defendants").[1]   Plaintiff alleges that the registration statement and prospectus filed in connection with Fuwei's initial public offering contained materially false and misleading information, in violation of sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77l(a)(2), and 77(o).

Before the Court are two motions to dismiss pursuant to Rules 8(a)(2), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, the first filed on behalf of the underwriters, and the second filed on behalf of Fuwei and two of the individual Defendants.  For the reasons that follow, these motions are denied in part and granted in part.

## I. BACKGROUND

### A. Facts

The following facts are taken from the Consolidated Amended Class Action Complaint ("CAC") submitted by Plaintiff. The Court also considers any written instrument attached to the CAC, statements or documents incorporated into the CAC by reference, legally required public disclosure documents filed with the Securities and Exchange Commission, and documents upon

―――――――――――

[1]  The Court will refer to all of the various Defendants collectively as "Defendants."

which Plaintiff relied in bringing the suit. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). The Court assumes all alleged facts to be true for the purpose of deciding the motions before it, and construes all alleged facts in the light most favorable to Plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).

### 1. The Parties

Plaintiff purchased Fuwei stock during Fuwei's December 19, 2006 initial public offering (hereinafter referred to as the "IPO") and brings this putative federal class action lawsuit on behalf of all those who either purchased Fuwei stock during the IPO, or purchased shares of Fuwei stock on the open market that are traceable to Fuwei's IPO. (CAC ¶ 18.) Plaintiff asserts claims against the various groups of Defendants: (1) Fuwei; (2) the underwriters; and (3) the individual Defendants.

#### a. Fuwei

Fuwei is a Cayman Islands corporation with its principal place of business in the People's Republic of China. (*Id.* ¶ 19.) Through Fuwei's wholly owned subsidiaries, Fuwei develops, manufactures, and distributes plastic films. (*Id.*)[2] Fuwei's primary operating assets are two factory production lines used to manufacture plastic films: the "DMT Line" and the "Brucker Line"

(collectively, the "Production Lines"). (*Id.* ¶ 21.) At the time of Fuwei's IPO, the Production Lines were the source of all of Fuwei's manufacturing output, and hence, revenue. (*Id.*)

#### b. The Underwriters

Defendant Maxim Group LLC is an investment bank, and acted as the lead underwriter for Fuwei's shares in the IPO. (*Id.* ¶ 31.) Defendant WR Hambrecht + CO and Defendant Chardan Capital Markets, LLC are also investment banks that served as underwriters for Fuwei's shares in the IPO. (*Id.* ¶¶ 32-33.)

#### c. The Individual Defendants

Defendant Xiaoan He ("He") was at all relevant times Fuwei's chairman and chief executive officer. (*Id.* ¶ 23.)

Defendant Mark Stulga ("Stulga") was at all relevant times a director of Fuwei, and is listed as the Company's authorized United States representative in Fuwei's registration statement and prospectus. (*Id.* ¶ 24.)

Defendant Jun Yin ("Yin") was a seventy-nine percent owner of Fuwei at the time of the IPO. (*Id.* ¶ 25.) Yin was also the Chairman of Weifang Neo-Luck Group ("Neo-Luck Group") and its subsidiary, Weifang Neo-Luck Plastics ("Neo-Luck Plastics"). (*Id.*)

Defendant Tongju Zhou ("Zhou") was at all relevant times a director of Fuwei. (*Id.* ¶ 26.) Zhou, along with Defendant Duo Wang ("Wang"), owned twenty-one percent of Fuwei at the time of the IPO. (*Id.* ¶ 27.) Zhou was also the General Manager of Neo-Luck Group and its subsidiary Neo-Luck Plastics. (*Id.* ¶ 26.) Wang was also the Chairman of Neo-Luck Group and its

---

[2] Fuwei produces a variety of films that are used in (1) consumer-based packaging industries, such as food, pharmaceutical, cosmetics, tobacco, and alcohol; (2) imaging products, such as masking film, printing plates, and microfilms; (3) electronics and electrical industries, such as wire and cable wrap, capacitors and motor insulation; and (4) magnetic products, such as audio and video tapes. (CAC ¶ 20.)

subsidiary Neo-Luck Plastics after Yin resigned. (*Id.* ¶¶ 26-28.)

Defendants Stulga, He, and Zhou signed the registration statement; Defendants Yin and Wang did not. (*Id.* ¶ 30.)

### 2. The Registration Statement, the Prospectus, and the IPO

On December 15, 2006, Fuwei filed an amended registration statement on Form F-1/A with the Securities and Exchange Commission ("SEC"). (*Id.* ¶ 36.)[3] The registration statement contained Fuwei's prospectus. (*Id.*) The registration statement became effective on December 18, 2006 at 4:30 p.m. (*Id.* ¶ 37.) On December 19, 2006,

Fuwei filed its prospectus with the SEC and commenced its IPO, selling shares at a price of $8.28 per share. (*Id.* ¶ 38.) On December 22, 2006, Fuwei announced that it had sold 4,312,500 shares of its stock at $8.28 per share, which included 562,500 additional shares issued to cover over-allotments. (*Id.*) The total gross proceeds from the offering were $35,708,500. (*Id.*)

### 3. The Allegedly False and Misleading Statements in the Registration Statement

Plaintiff's CAC alleges that the registration statement and prospectus (hereinafter referred to collectively as the "Registration Statement") filed in connection with Fuwei's IPO contained materially false and misleading information in regard to Fuwei's acquisition of the Production Lines.[4] The Court will first recount the allegedly false and misleading statements contained in the Registration Statement before enumerating Plaintiff's specific allegations in regard to those statements.

#### a. The Statements

Plaintiff points to three specific passages in the Registration Statement that he alleges contain materially false and misleading information. The first passage states: "The circumstances under which we acquired ownership of our main productive assets may jeopardize our ability to continue as an operating business." (CAC ¶ 39; *see also* CAC Ex. 1, Registration Statement at 11 (emphasis omitted).) The passage further provides, in pertinent part:

---

[3] The Court takes judicial notice of the entire Form F-1/A that Fuwei filed with the Securities and Exchange Commission on December 15, 2006. In considering a motion to dismiss under Rule 12(b)(6), the Court may take judicial notice of "any statements or documents incorporated in [the complaint] by reference, as well as public disclosure documents required by law to be, and that have been, filed with the SEC . . . ." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (citing *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989)). Here, the Form F-1/A is indisputably a "public disclosure document[] required by law to be . . . filed with the SEC . . . ." *Id.* Moreover, the Form F-1/A is attached to the CAC as an exhibit, is extensively quoted in the CAC, and is "integral" to Plaintiff's claims. *See San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808-09 (2d Cir. 1996); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991). Further, there is no dispute regarding the authenticity, accuracy, or relevance of the Form F-1/A. *Cf. Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (noting that consideration of materials outside the complaint is permissible on a 12(b)(6) motion if the documents are integral to the complaint, it is clear on the record that no dispute exists regarding the authenticity or accuracy of the document, and the relevance of the document is undisputed).

[4] Plaintiff alleges that "[t]he Prospectus is nearly identical in all material respects to the Registration Statement . . . filed with the SEC on December 15, 2008." (CAC ¶ 38 n.3.)

Substantially all of our operating assets were acquired through two auction proceedings under relevant [People's Republic of China ("PRC")] law. We acquired the Bruckner production line in 2003 as a result of a foreclosure proceeding enforcing an effective court judgment and the DMT production [line] in 2004 as a result of a commercial auction from a consigner who obtained such assets through a bankruptcy proceeding. In the opinion of our PRC counsel, Concord & Partners, these proceedings are both valid under Chinese auction and bankruptcy law based on certain factual assumptions. Our PRC counsel's opinion solely relates to the legal procedure of the auctions and is based upon certain factual assumptions, written representations of the Company and written reports of the auction company and other related parties. *There can be no assurance that relevant authorities or creditors of the predecessor owner of these assets will not challenge the effectiveness of these asset transfers based upon the facts and circumstances of these transfers, despite the existence of independent appraisals, and other facts and circumstances of the auctions that cannot be verified by our PRC counsel.* Taking into consideration the facts known by our PRC counsel related to the auction of the Bruckner production line and the significant difference in the price paid for the DMT production line at the two bankruptcy auctions involved in our purchase of that asset and, assuming the representations and reports received by our PRC counsel are true

and correct in all material respects, *our PRC counsel is of the opinion that the auctions of the Bruckner and DMT production lines were valid under PRC law and the possibility of the creditors of Shandong Neo-Luck successfully exercising recourse or claiming repayment with respect to our assets purchased in the bankruptcy proceeding should be remote. However, should any such challenge be brought in China (or elsewhere) and prevail, we may incur substantial liabilities and be required to pay substantial damages as a result of acquiring these assets. Although we believe any such challenge is unlikely to lead to the forfeiture of the related assets, it could materially affect our ability to continue operations.*

(CAC ¶ 39; *see also* CAC Ex. 1, Registration Statement at 11-12 (emphasis provided by Plaintiff).)

Plaintiff next points to a passage in the Registration Statement entitled "Our Operating History and Corporate Structure" (CAC ¶ 39; *see also* CAC Ex. 1, Registration Statement at 34-35 (emphasis omitted)), which describes, *inter alia,* how Fuwei acquired the Production Lines, and provides detailed information regarding several of the individual Defendants and their relationships with various subsidiaries of Fuwei. The following excerpt from that passage is representative of the detail provided:

In November 2003, Shandong Fuwei's [an operating subsidiary of Fuwei] shares were sold to Shenghong Group Co., Ltd. ("Shenghong Group") and Shandong

4

Baorui for an aggregate consideration of RMB[5] 98.2 million. [Defendant] Tongju Zhou, one of our directors, and [Defendant] Duo Wang each indirectly owned 50% of Easebright Investments Limited ("Easebright"), one of our principal shareholders, and are both officers and directors of Shandong Baorui. [Defendant] Jun Yin and [Defendant] Duo Wang own 17.5% and 4.6%, respectively, of Shandong Baorui. In 2004, Messrs. Zhou and Wang, along with Jun Yin established several offshore holding companies (including the issuer of the shares being sold in this offering) in the British Virgin Islands and the Cayman Islands to acquire and hold these shares. In October 2004, Fuwei . . . entered into a sale and purchase agreement with Shenghong Group and Shandong Baorui pursuant to which Fuwei . . . acquired the respective equity interest of Shenghong Group and Shandong Baorui in Shandong Fuwei for an aggregate consideration of RMB 91 million. Shandon Fuwei thereafter became a wholly-owned subsidiary of Fuwei . . . and was converted into a wholly-foreign owned enterprise pursuant to [Chinese] law.

(CAC ¶ 39; *see also* CAC Ex. 1, Registration Statement at 35.)

Plaintiff finally points to a short passage entitled "Legal Proceedings," which states: "We are not currently a party to any material litigation and are not aware of any pending or threatened material litigation." (CAC ¶ 39;

_____

[5] RMB refers to Renminbi, the currency of the People's Republic of China.

*see also* CAC Ex. 1, Registration Statement at 67.)

### b.  The Allegations

The CAC contains two general categories of allegations: first, that the Registration Statement contained misrepresentations and omissions pertaining to Fuwei's allegedly unlawful acquisition of the Production Lines, and second, that the Registration Statement contained misrepresentation and omissions pertaining to certain arbitration proceedings that were pending against Fuwei at the time of Fuwei's IPO.

### i.  The Allegedly Unlawful Acquisition of the Production Lines

At the core of the CAC is the allegation that "[t]he Registration Statement was false and misleading because it erroneously stated that [Fuwei] had acquired its primary operating assets (the Production Lines) lawfully under Chinese law and regulations," while "[i]n truth, [Fuwei] had acquired the Production Lines, its main operating assets, through transactions that were neither lawful, nor valid transactions under Chinese laws and regulations." (CAC ¶ 40.)

Specifically, Plaintiff alleges that Yin (at the time of Fuwei's IPO, the former Chairman of Neo-Luck Group and Neo-Luck Plastics), with the assistance of Wang (at the time of Fuwei's IPO, the current Chairman of Neo-Luck Group and Neo-Luck Plastics) and Zhou (at the time of Fuwei's IPO, the former General Manager of Neo-Luck Group and Neo-Luck Plastics) improperly put the Neo-Luck Plastics subsidiary into bankruptcy and caused the Production Lines to be sold for less than fair value at auctions to companies that Yin, along with Wang and Zhou, controlled.

(*Id.* ¶¶ 41, 49.)   Plaintiff alleges that Yin, Wang, and Zhou "created such a maze replete with transactions and entities related to the purchases and sales of the Production Lines that probably no one involved in the auctions . . . realized that the [transferors] were the ultimate transferees of the Production Lines." (*Id.* ¶ 60; *see also* CAC Ex. 2 (providing charts).)   Plaintiff contends that "[b]y causing Neo-Luck Plastics, a state-owned enterprise to sell its Production Lines at substantially less than fair value, the auction sales of the Production Lines arranged by Yin, Wang and Zhou violated Chinese law." (CAC ¶ 41; *see also id.* ¶ 42.)

Plaintiff's claims in this action are largely predicated on various alleged misrepresentations and omissions pertaining to the allegedly illegal sale of the Production Lines from Neo-Luck Plastics to Fuwei. Under the umbrella of this allegation, Plaintiff alleges two subcategories of misrepresentations and omissions.  Below, the Court details the factual allegations from the CAC that are relevant to each category.

### (A) Failure to Disclose the Pending Investigation and Legal Proceedings Involving Fuwei, Yin, and Wang

Plaintiff first alleges that "[t]he Registration Statement falsely stated that at the time of the IPO there were no pending or threatened legal challenges or proceedings regarding the Production Lines or the auction-transactions by which [Fuwei] acquired the Production Lines," thereby failing to disclose "pending and threatened material legal proceedings against Fuwei and its two controlling shareholders, Yin and Wang at the time of the IPO." (*Id.* ¶¶ 61-62; *see also id.* ¶ 46 (alleging that "[c]ontrary to statements in the Registration Statement, at the time of the

IPO, [Fuwei's] ownership of the Production Lines was not merely subject to a *remote potential* challenge under civil law, but rather [Fuwei's] ownership of the Production Lines was the object of an ongoing investigation and legal proceedings" (emphasis in original)).)

Specifically, Plaintiff alleges that on or about October 2005, Great Wall Asset Management Co. ("Great Wall") — "one of four Chinese companies that are the largest purchasers of non-performing debt owed to Chinese banks" — purchased approximately RMB 1.9 billion of non-performing debt owed by Neo-Luck Group to Chinese banks. (*Id.* ¶ 116.)   Great Wall began negotiations with Neo-Luck Group to receive payment on this debt in late 2005, and continued these negotiations throughout 2006. (*Id.*)   After the failure of these negotiations, between April and May of 2006, Great Wall reported to the media that the management of Neo-Luck Group (which included Defendants Yin and Wang) had sold, or was in the process of selling, its state-owned assets to private companies owned by the executives of Neo-Luck Group. (*Id.* ¶ 117.)   Great Wall, unable to recover its debt, and deeming the transfers of the Production Lines to be illegal, requested in "mid-2006" that the Chinese Ministry of Public Security, through the China Banking Regulatory Commission, commence legal proceedings and an investigation of the alleged misconduct in the sale of the Production Lines at below market value to Fuwei. (*Id.* ¶ 125.)   Accordingly, Plaintiff alleges that "prior to the effective date of the Registration Statement, Chinese authorities initiated an investigation and legal proceedings against the Transferees [Yin, Wang, and Zhou] concerning the illegal purchases of the Production Lines, state-owned assets, at below fair market values."

(*Id.* ¶ 43.)  As a result of this investigation, in November 2006, Chinese authorities ordered that the passports of Yin and Wang be confiscated, and suspended their ability to travel outside of mainland China.  (*Id.* ¶¶ 43, 126, 127.)

### (B) Failure to Disclose the Full Extent of Yin, Wang, and Zhou's Involvement in the Transfer of the Production Lines

Plaintiff next alleges that "[t]he Registration Statement failed to provide complete disclosures as to the 'circumstances' relating to [Fuwei's] acquisition of" the Production Lines from Neo-Luck Plastics. (*Id.* ¶¶ 47-48.)  Defendants allegedly omitted material facts that "demonstrate[d] that [D]efendants Yin, Wang and Zhou together exercised complete control of Neo-Luck Group and Neo-Luck Plastics, the entities that sold the Production Lines in forced sale auctions *and* that these same defendants simultaneously exercised majority control over [the intermediate purchasers and owners of the Production Lines] *and* owned 100% of [Fuwei], the ultimate purchaser and owner of the Production Lines."  (*Id.* ¶ 57 (emphasis in original).)[6]  Plaintiff specifically alleges, *inter alia*, that the Registration Statement failed to disclose that Yin and Wang held top control positions within Neo-Luck Group: that Yin was both the founder and the former Chairman, while Wang was the current Chairman.  (*Id.* ¶¶ 53, 114; *see also id.* ¶¶ 54-56.)  Plaintiff alleges that "[h]ad these relationships been disclosed, the legality of the auction-sales of the Production Lines

would have been questioned, the risk of an adverse legal challenge [would have been] much greater, and [Fuwei's] PRC counsel, Concord & Partners, would have refused to issue an opinion that the acquisitions of the Production Lines were legal under Chinese laws and regulations."  (*Id.* ¶ 115.)

### ii. The Alleged Pending Arbitration Proceedings Against Fuwei

Plaintiff also alleges that "[t]he Registration Statement falsely stated that at the time of the IPO there were no pending or threatened legal challenges or proceedings regarding the Production Lines or the auction transactions by which [Fuwei] acquired the Production Lines."  (*Id.* ¶ 68.)  Specifically, Plaintiff alleges that the Registration Statement did not disclose that, on or about April 2006, DMT S.A. filed an arbitration proceeding in the ICC International Court of Arbitration seeking $1,250,000 related to the purchase of one of the Production Lines, the DMT Line, by Fuwei.  (*Id.* ¶¶ 69, 118.)

Plaintiff quotes Fuwei's Form 20-F annual report, filed with the SEC on April 2, 2007, which states that in April 2006, Fuwei received a "request for arbitration and related papers in an arbitration proceeding," and that "[t]he arbitration was filed in the ICC International Court of Arbitration and seeks monetary damages against Neoluck of approximately $1,250,000, plus interest."  (*Id.* ¶ 120.)  The 20-F further stated:

> "The claim relates to Neoluck's purchase of certain equipment from DMT . . . .  We do not have any contract with DMT, written or otherwise, let alone one requiring we arbitrate before the ICC International Court of Arbitration.  Despite our

---

[6] Plaintiff created five charts, attached as exhibit 2 to the CAC, to explain the relationships between the various entities involved in the transfer of the Production Lines from Neo-Luck Plastics to Fuwei. (*See* CAC Ex. 2; *see also* CAC ¶ 52.)

7

arguments to the Court of Arbitration that we are not subject to arbitration, in January 2007 the ICC notified us that it would permit DMT's claim to proceed against us (rather than Neoluck, which is bankrupt). We have not yet answered the request for arbitration. Although we intend to vigorously oppose the claim, we may become obligated to pay damages if the three (3) arbitrators hearing the matter conclude that we (rather than Neoluck) should be responsible for Neoluck's debt to DMT."

(*Id.* (quoting the 20-F annual report).)

4. The Allegations Pertaining to Events Post-IPO

The CAC also contains allegations detailing events that took place after Fuwei's IPO, which Plaintiff contends are relevant to his claims in this case. (*See id.* ¶¶ 137-57.)

On or about February 2007, Chinese authorities renewed the suspension of Yin, Wang, and Zhou's passports, limiting their ability to travel outside of China. (*Id.* ¶ 137.) In approximately March and April 2007, Chinese authorities found that Neo-Luck's bankruptcy was "fake," and that it was used by Yin, Wang, and Zhou for the purpose of illegally escaping debt and selling state-owned assets for less than fair market value. (*Id.* ¶¶ 138-140.)

On or about April 24, 2007, Fuwei declared that it had dismissed the independent auditor that it had employed since before the December 19, 2006 effective date of the Registration Statement, and had appointed a new firm as its independent auditor. (*Id.* ¶¶ 141-42.) Fuwei publicly announced the

hiring of this new independent auditor on April 30, 2007. (*Id.* ¶ 158.) Plaintiff alleges that this announcement caused Fuwei's stock to fall 6.2%. (*Id.* ¶ 159.)

On or about May 2007, the "Chinese Communist Party" commenced a special investigation of Yin, Wang, and Zhou, as well as other top managers of Neo-Luck Group. (*Id.* ¶ 147.) On the morning of June 25, 2007, Fuwei revealed certain details of the criminal proceedings against Yin, Wang, and Zhou in a press release. (*Id.* ¶ 161.) Plaintiff alleges that this announcement caused Fuwei's stock to fall approximately 14%. (*Id.* ¶ 162.)

On or about September 28, 2007, Yin, Wang, and Zhou, and other top managers of Neo-Luck Group, were arrested and put under "Shuanggui," allegedly "a method of arrest used only in cases where members of the Chinese Communist Party are prosecuted for criminal acts." (*Id.* ¶¶ 44, 149.) On October 16, 2007, Fuwei revealed this fact, announcing that Chinese authorities had issued "arrest notices" for Yin, Wang, and Zhou "relating to the suspicion of the crime of irregularities for favoritism and to sell state-owned assets at low prices." (*Id.* ¶ 163.) Plaintiff alleges that this announcement caused Fuwei's stock to drop 23.5%. (*Id.*)

On or about November 1, 2007, Fuwei's new independent auditor resigned. (*Id.* ¶¶ 154-57.) Fuwei publicly announced this fact on November 6, 2007, explaining that the resignation took place "[a]s a result of the disclosure that three significant direct or indirect shareholders of the Company were arrested on charges related to the suspicion of the crime of irregularities for favoritism and to sell-state owned assets at low prices." (*Id.* ¶ 164 (alteration in original).)) Plaintiff alleges

that this announcement caused Fuwei's stock to fall 17.5%. (*Id.* ¶ 165.)

On November 12, 2007, Fuwei announced, as part of its 2007 third quarter results, that its third production line would be delayed, due to a capital shortfall resulting from the "limited response from commercial banking lenders because of the shareholder investigation related to the arrest of Yin, Wang, and Zhou for acquiring the Production Lines illegally." (*Id.* ¶ 166 (internal quotations omitted).) Plaintiff alleges that this announcement caused Fuwei's stock to fall 33.5%. (*Id.* ¶ 167.)

### B.  Procedural History

The initial complaint in this action, *Yao v. Fuwei Films (Holdings) Co., Ltd., et al.*, No. 07 Civ. 9416 (RJS), was filed on October 19, 2007. The second complaint, *Rubin v. Fuwei Films (Holdings) Co., Ltd., et al.*, No. 07 Civ. 10323 (RJS), was filed on November 14, 2007. On December 18, 2007, Nijat Tonyaz, Meira Rubin, Costachi Leru, and Siamak Nazhand filed motions for consolidation, appointment as lead plaintiff, and approval of selection of lead counsel, in accordance with the Private Securities Litigation Reform Act of 1995. *See* 15 U.S.C. §§ 78u-4(a)(3)(A), (B). Siamak Nazhand withdrew his motion on January 10, 2008, and by Memorandum and Order dated January 24, 2008, the Court appointed Nijat Tonyaz as lead Plaintiff, appointed Tonyaz's counsel as lead counsel, and consolidated these cases under the caption "*In re Fuwei Films Securities Litigation*," No. 07 Civ. 9416 (RJS).

On March 14, 2008, Plaintiff filed the CAC. Defendants Fuwei, He, and Stulga, filed their motion to dismiss and a memorandum in support of that motion on

May 14, 2008 ("Fuwei Mem."). Also on May 14, 2008, the underwriters filed a separate motion to dismiss, and a memorandum in support of that motion ("Underwriters Mem."). On June 26, 2008, Plaintiff filed one memorandum in opposition to Defendants' motions to dismiss ("Pl.'s Opp'n"). On July 25, 2008, Defendants Fuwei, He, and Stulga, filed a reply memorandum ("Fuwei Reply"), and the underwriters filed a separate reply memorandum ("Underwriters Reply").[7]

## II.  STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must draw all reasonable inferences in Plaintiff's favor. *ATSI Commc'ns*, 493 F.3d at 98; *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998). Nonetheless, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Therefore, this standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 1949.

---

[7]  Although it does not alter the Court's disposition of Defendants' current motions, it should be noted that individual Defendants Yin, Zhou and Wang are without representation and have so far failed to appear in this action.

Ultimately, Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. On the other hand, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Applying this standard, if Plaintiff "ha[s] not nudged [his] claim[] across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

### III. DISCUSSION

As noted above, Plaintiff brings claims pursuant to sections 11, 12(a)(2), and 15 of the Securities Act. Specifically, Plaintiff brings section 11 claims against all Defendants, except Wang and Yin (CAC ¶ 178), section 12(a)(2) claims against Defendants Fuwei, the underwriters, Stulga, Zhou, and He (*id.* ¶ 189), and section 15 claims against each of the individual Defendants (*id.* ¶ 200). Defendants move to dismiss all of these claims. For the reasons stated below, Defendants' motions are denied in part and granted in part.

### A. Statutory Provisions

#### 1. Sections 11 and 12(a)(2)

In contrast to section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5, promulgated thereunder — a far-reaching "catchall

provision," *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 206 (1976), which creates liability for fraud "in connection with the purchase or sale of any security," *see* 17 C.F.R. § 240.10b-5 — sections 11 and 12(a)(2) of the Securities Act create liability for material misrepresentations or omissions in connection with the initial sale and distribution of securities. Section 11 deals with registration statements, while section 12 covers prospectuses. *See* 15 U.S.C. §§ 77k(a); 77l(a)(2).

Section 11 allows purchasers of a registered security to sue certain statutorily-enumerated parties involved in a registered offering when false or misleading information is included in a registration statement. *See* 15 U.S.C. § 77k(a).[8] The statutorily-enumerated parties subject to liability include every person who signed the registration statement, the directors of the issuer, and the underwriters of the security. *See id.* Section 12(a)(2) creates liability for any person who offers or sells a security by means of a prospectus or oral communication that

---

[8] Section 11 provides, in relevant part:

> In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security . . . may . . . sue — (1) every person who signed the registration statement; (2) every person who was a director of (or person performing similar functions) . . . the issuer at the time of the filing . . . [and] (5) every underwriter with respect to such security.

15 U.S.C. § 77k(a).

includes a material misrepresentation or omission. *See* 15 U.S.C. § 77l(a)(2).[9]

Although sections 11 and 12(a)(2) of the Securities Act are narrower in scope than section 10(b) of the Exchange Act, a plaintiff bringing claims pursuant to sections 11 and 12(a)(2) need not plead several elements that are requisite to pleading adequately a claim pursuant to section 10(b). Specifically, claims brought pursuant to sections 11 and 12(a)(2) must plead materiality of the alleged misrepresentation or omission, but not scienter, reliance, or causation. *Rombach v. Chang*, 355 F.3d 164, 169 n.4 (2d Cir. 2004) ("Neither [s]ection 11 nor [s]ection 12(a)(2) requires that plaintiffs allege the scienter or reliance elements of a fraud cause of action."); *Briarwood Invs. Inc. v. Care Inv. Trust Inc.*, No. 07 Civ. 8159 (LLS), 2009 WL 536517, at *3 (S.D.N.Y. Mar. 4, 2009) ("A plaintiff is not required to plead 'loss causation' (*i.e.*, that the misleading statements in [a] suit caused the depreciation in the stock price) to establish a *prima facie* claim under [sections] 11 or 12(a)(2) of the Securities Act."); *Degulis v. LXR Biotech.*, No. 95 Civ. 4204 (RWS), 1997 WL 20832, at *3

---

[9] Section 12(a)(2) provides, in relevant part:

> Any person who . . . (2) offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading . . . , shall be liable, . . . to the person purchasing such security from him, who may sue . . . to recover the consideration paid for such security.

15 U.S.C.A. § 77l(a)(2).

(S.D.N.Y. Jan. 21, 1997) ("[T]o make out a *prima facie* case at the pleadings stage, Plaintiffs need only allege a material misstatement or omission. Neither knowledge nor reason to know is an element in a plaintiff's *prima facie* case."); *see also Miller v. Lazard, Ltd.*, 473 F. Supp. 571, 578 (S.D.N.Y. 2007) ("Thus, to state a cognizable claim under either [sections] 11 or 12(a)(2) of the [Securities] Act, [the plaintiffs] must show that [the registration statement and/or prospectus] contained an untrue statement of material fact or omitted to state a material fact that was required to be stated therein or was necessary to make the statements therein not misleading."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 411 F. Supp. 2d 377, 382 (S.D.N.Y. 2006) ("A plaintiff need only plead a material misstatement or omission in the registration statement to establish a *prima facie* fraud claim under [section] 11 of the Securities Act."); *In re Prestige Brands Holding, Inc.*, No. 05 CV. 06924 (CLB), 2006 WL 2147719, at *8 (S.D.N.Y. July 10, 2006) ("A representation of fact in a prospectus may be material, false and misleading without regard to the motive or intent of the author. Mere negligence, which is all that is necessary, may be inferred from falsity and materiality."); *In re Twinlab Corp. Sec. Litig.*, 103 F. Supp. 2d 193, 201 (E.D.N.Y. 2000) ("Section 11 'places a relatively minimal burden on a plaintiff,' requiring simply that the plaintiff allege that he purchased the security and that the registration statement contains false or misleading statements concerning a material fact." (quoting *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983))).

Accordingly, to plead adequately a claim under both sections 11 and 12(a)(2), Plaintiff need only plead the elements of the respective statutes, both of which include materiality as

part of their language. Thus, under section 11, Plaintiff must allege that: (1) Defendant is an individual specified by the statute; (2) Plaintiff purchased the registered securities; and (3) the registration statement for the offering contained an untrue statement of a material fact or omitted to state a material fact necessary to make the statements therein not misleading. *See* 15 U.S.C. § 77k(a). Similarly, to plead adequately a claim under section 12(a)(2), Plaintiff need only allege that (1) Defendant sold or offered a security; (2) by means of a prospectus or oral communication; (3) that included an untrue statement of material fact or omitted a material fact necessary to make such statements not misleading. *See* 15 U.S.C. § 77 l(a)(2).[10]

---

[10]   Defendants may, on a motion for summary judgment, avail themselves of the various "due diligence" or "reasonable care" affirmative defenses provided for by sections 11 and 12(a)(2). Specifically, section 11 provides for two distinct "due diligence" defenses for all of the statutorily enumerated parties other than the issuer of a security. *See* 15 U.S.C. §§ 77k(b)(3)(A), (b)(3)(C); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 383 (1983) ("Liability against the issuer of a security is virtually absolute, even for innocent misstatements."). Section 12(a)(2) provides for a "defense of reasonable care," which is "less demanding than the duty of due diligence" under section 11, and which may be asserted by all "sellers" under section 12(a)(2), including the issuer of a security. *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 663 (S.D.N.Y. 2004); *see also* 15 U.S.C. § 77l(a)(2). Thus, to be precise, although the *prima facie* analysis of claims brought pursuant to sections 11 and 12(a)(2) is generally limited to assessing the materiality of the alleged misrepresentations or omissions, ultimately, section 11 imposes strict liability on issuers and negligence liability on the issuer's officers, directors, and experts, while section 12(a)(2) imposes negligence liability on all sellers.

## 2. Section 15

Section 15 establishes "control person" liability for violations of sections 11 and 12. *See* 15 U.S.C. § 77o. In order to state a claim for "control person" liability under section 15 of the Securities Act, a plaintiff must allege "(a) a primary violation by a controlled person, and (b) control by the defendant of the primary violator." *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 637 (S.D.N.Y. 2007).[11] "Unlike section 20(a) [of the Exchange Act], the plaintiff is not required to allege culpable participation by the controlling person in order to state a claim under section 15." *In re Scottish Re Group Sec. Litig.*, 524 F. Supp. 2d 370, 387 (S.D.N.Y. 2007).

### B. Analysis

Defendants move to dismiss Plaintiff's claims on the following grounds: (1) that the

---

[11]   Section 15 provides:

> Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77 l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

15 U.S.C. § 77o.

CAC fails to meet the heightened pleading requirements imposed by Rule 9(b) of the Federal Rules of Civil Procedure; (2) that Defendants have no duty to disclose "publicly available" information; (3) that the CAC does not allege any actionable misstatements or omissions; (4) that the CAC does not adequately allege loss causation; and (5) that aftermarket purchasers lack standing to bring claims pursuant to section 12(a)(2). The Court will address each of these arguments in turn.

1. Rule 9(b)

Defendants first argue that Plaintiff's section 11 and 12(a)(2) claims should be dismissed for failure to meet the heightened pleading requirements of Rule 9(b). (*See, e.g.*, Fuwei Mem. at 7-11.)

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[12] This pleading constraint "serves to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *Rombach*, 355 F.3d at 171 (internal quotation marks and citation omitted). Thus, in order to

satisfy Rule 9(b), a plaintiff must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* at 170 (internal quotation marks and citation omitted); *see also ATSI Commc'ns*, 493 F.3d at 99. "Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Commc'ns*, 493 F.3d at 99.

The Second Circuit has found that, although fraud is not an element of a section 11 or section 12(a)(2) claim, "the heightened pleading standard of Rule 9(b)" applies to such claims where a complaint is "premised on allegations of fraud." *Rombach*, 355 F.3d at 171. Rule 9(b) "is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." *Id.* Accordingly, "a complaint may sound in fraud even where, as here, no fraud claims under [section 10(b) of] the Exchange Act are asserted." *Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07 Civ. 0976 (LAP), 2008 WL 4449280, at *11 (S.D.N.Y. Sept. 30, 2008).

Although Plaintiff, in the CAC, disclaims any assertions of fraud as to all of his claims (*see* CAC ¶¶ 177, 188, 199), "[c]ourts have repeatedly noted that the insertion of a simple disclaimer of fraud is insufficient" to avoid Rule 9(b) standards when Securities Act claims sound in fraud. *In re Axis Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 598 (S.D.N.Y. 2006). Rather, as noted, the Court's inquiry focuses is on the conduct alleged, not the labels attached. *Cf. In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 285 (S.D.N.Y. 2001) ("[A]lthough [the] plaintiffs have characterized their claims as

---

[12] In the context of securities fraud claims brought under the Securities Exchange Act of 1934, the Private Securities Litigation Reform Act (the "PSLRA"), 15 U.S.C. § 78u-4(b), has expanded on Rule 9(b)'s pleading requirements. *See, e.g.*, *In re PXRE Group, Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 524 (S.D.N.Y. 2009). However, the PSLRA is inapplicable to claims brought under the Securities Act of 1933, such as the ones brought by Plaintiff in this case. *See, e.g.*, *Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07 Civ. 0976 (LAP), 2008 WL 4449280, at *11 n.9 (S.D.N.Y. Sept. 30, 2008).

being for negligence, in substance they charge fraud.").

Assessing the conduct alleged by Plaintiff, the Court finds that the allegations in regard to individual Defendants Yin, Wang, and Zhou sound in fraud, and are thus subject to the heightened pleading requirements of Rule 9(b). (*See e.g.*, CAC ¶ 50 ("The success of the scheme to loot Neo-Luck Plastic's assets through the false bankruptcy was facilitated by Yin, Wang, and Zhou by concealing their respective identities as the ultimate transferees."); *id.* ¶ 58 ("These omitted facts demonstrate that Yin, Wang and Zhou possessed the ability and motive to, and did in fact, illegally engineer a false bankruptcy to transfer the Production Lines through the auction sales to [Fuwei] . . . .").) However, the allegations in regard to the other individual Defendants and to the underwriters sound solely in negligence. There are no allegations in the CAC that He and Stulga possessed any knowledge of the alleged illegal scheme to transfer the Production Lines from Neo-Luck to Fuwei — their potential liability is based solely on having reviewed and signed the Registration Statement. (*See id.* ¶ 180.) Similarly, the only allegations in the CAC concerning the underwriters are that they failed to conduct proper due diligence. (*See id.* ¶ 181.) Accordingly, the Court finds that the CAC sounds in fraud and is therefore subject to the heightened pleading requirements of Rule 9(b) only in regard to Yin, Wang, Zhou, whose fraudulent conduct — the Court will assume for purposes of this analysis — may be imputed to the corporate Defendant Fuwei as well. *Cf. In re Axis Capital Holdings*, 456 F. Supp. 2d at 596-98 (finding that sections 11 and 12(a) claims against some defendants sounded in fraud, while the claims against other defendants sounded in negligence).

Defendants argue that dismissal is appropriate given the CAC's failure to meet the heightened pleading requirements of Rule 9(b). Specifically, Defendants point to Plaintiff's failure to provide any "factual detail regarding the sources upon which they rely." (Fuwei Mem. at 10.) In response to this argument, Plaintiff attaches the five articles upon which he relied in drafting the CAC to his opposition brief. (*See* Pl.'s Opp'n Exs. 1-5.) Given Plaintiff's undisputed reliance on these articles in drafting the CAC, the Court finds nothing improper about considering these articles for purposes of assessing the sufficiency of the CAC's pleadings. *Cf. Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (noting that a Court may rely on "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit"). So considering, the Court holds that the CAC, in conjunction with these articles, provides the requisite "factual detail" required by Rule 9(b). As set forth by the Court above, *see supra* Part I.A.3.b.i., the CAC provides detailed allegations in regard to Yin, Wang, and Zhou's allegedly fraudulent scheme to improperly put Neo-Luck Plastics into bankruptcy and thereafter to sell the Production Lines for less than fair value to companies that Yin, Wang, and Zhou controlled.

Accordingly, the Court denies Defendants' motion to dismiss the CAC for failure to plead properly under Rule 9(b).

## 2. Duty to Disclose Publicly Available Information

Second, Defendants argue that dismissal is appropriate in this case "because all of the alleged false and misleading statements in the Registration Statement are based upon

information that was, by Plaintiffs' own admissions, publicly available, which [D]efendants had no duty to disclose." (Fuwei Mem. at 11.)

The law is clear that a party "can be relieved of a duty to disclose when certain developments affecting a corporation become 'matters of general public knowledge.'" *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 687 (S.D.N.Y. 2004) (quoting *Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 952 (2d Cir. 1978)). However, "[t]here are serious limitations on a corporation's ability to charge its stockholders with knowledge of information omitted from a document such as a proxy statement or prospectus on the basis that the information is public knowledge and otherwise available to them." *Kronfeld v. Trans World Airlines, Inc.*, 832 F.2d 726, 736 (2d Cir. 1987). For example, "sporadic press reports or reports published in other contexts may 'not be considered to be part of the information that was reasonably available' to investors." *In re Worldcom, Inc. Sec. Litig.*, 346 F. Supp. 2d at 687 (quoting *United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1199 (2d Cir. 1993)).

Here, Plaintiff has attached the five articles upon which he relied in drafting the CAC to his opposition brief. As Defendants point out in their reply memoranda, four of these articles were published after the IPO, and thus were not actually "publicly available" during the relevant period. (Fuwei Reply at 1; *see also* Underwriters Reply at 3.) The one article that pre-dates the IPO is a June 13, 2006 article written in Chinese from *21 Century Economic Report*, entitled "Great Wall Asset Co. Goes to Shandong Seeking Payments of a RMB 1.9 Billion Debt." (*See* Pl.'s Opp'n Ex. 1 at 1.) Defendants also identify two additional pre-IPO newspaper

articles that were also written in Chinese: (1) "Great Wall Asset Management Company Encounters Avoidance of Huge Debt," dated April 29, 2006, and published in the *Economic Observer*, and (2) "The Story of Great Wall Asset Company's Collection of 1.9 Billion in Debt in Shandong," dated June 13, 2006, and published in *The Financial and Economic News*. (*See* Fuwei Mem. at 17; *see also* Vasey Decl. Exs. A, B.)

The Court finds that the publication of three newspaper articles — in Chinese — does not transform the information contained within the articles into "matters of general public knowledge" that may properly be imputed to Fuwei's stockholders. Accordingly, the Court holds that these articles do not excuse Defendants, as a matter of law, from their respective duties to disclose the allegedly misleading information identified by Plaintiffs in this case.

### 3. Whether the CAC Alleges Actionable Misstatements or Omissions

The majority of Defendants' briefing is devoted to the argument that dismissal is appropriate due to Plaintiff's failure to identify any actionable misstatements or omissions within the Registration Statement. The Court will analyze the alleged misstatements and omissions in two categories: first, the misrepresentations and omissions pertaining to the alleged unlawful acquisition of the Production Lines, and second, the misrepresentations and omissions pertaining to the pending arbitration proceedings against Fuwei. In so assessing, the Court will not differentiate between Plaintiff's claims brought pursuant to sections 11 and 12(a)(2). *See Lin v. Interactive Brokers Group, Inc.*, 574 F. Supp. 2d 408, 416 (S.D.N.Y. 2008) ("Claims under

[s]ections 11 and 12 are usually evaluated in tandem, because if a plaintiff fails to plead a cognizable [s]ection 11 claim, he or she will be unable to plead one under [s]ection 12(a)(2).").[13]

### a. Misrepresentations and Omissions Pertaining to the Allegedly Unlawful Acquisition of the Production Lines

Under the larger category of misrepresentations and omissions pertaining to the alleged unlawful acquisitions of the Production Lines, Plaintiff alleges that Defendants failed to disclose: (1) the pending investigation and legal proceedings against Fuwei, Yin, and Wang, and (2) the full extent of Yin, Wang, and Zhou's involvement in the transfer of the Production Lines from Neo-Luck to Fuwei. *See supra* Parts I.A.3.b.i.(A), (B) (setting forth these allegations in two subcategories).

### i. Applicable Law

A duty to disclose may arise from the obligation to make statements contained in the Registration Statement "not misleading." *See* 15 U.S.C. §§ 77k(a), 77l(a)(2); *see also Miller*, 473 F. Supp. 2d at 580 ("The Second Circuit has held that 'one circumstance creating a duty to disclose arises when disclosure is necessary to make prior statements not misleading.'" (quoting *In re Time Warner, Inc. Sec. Litig.*, 9 F.3d 259, 268 (2d Cir. 1993))). "A defendant is not required to disclose all known information, but has a duty to disclose any information that is

'necessary to make other statements not misleading.'" *In re Alliance Pharm. Corp. Sec. Litig.*, 279 F. Supp. 2d 171, 182 (S.D.N.Y. 2003) (quoting *In Re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 369 n.13 (3d Cir. 1993)); *see also Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*, No. 02 Civ. 767 (LBS), 2003 WL 22882137, at *4 (S.D.N.Y. Dec. 4, 2003) ("'When a corporation does make a disclosure — whether it be voluntary or required — there is a duty to make it complete and accurate.'" (quoting *Glazer v. Formica Corp.*, 964 F.2d 149, 157 (2d Cir. 1992))). This duty is also memorialized in the SEC's general regulations, which "expressly provide that '[i]n addition to the information expressly required to be included in a registration statement, there shall be added such further material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not misleading.'" *DeMaria v. Andersen*, 318 F.3d 170, 180 (2d Cir. 2003) (quoting 17 C.F.R. § 230.408).

"To be material, the information need not be such that a reasonable investor would necessarily change his investment decision based on the information, as long as a reasonable investor would have viewed it as significantly altering the 'total mix' of information available." *Sec. & Exch. Comm'n v. Mayhew*, 121 F.3d 44, 52 (2d Cir. 1997). "At the pleading stage, a plaintiff satisfies the materiality requirement . . . by alleging a statement or omission that a reasonable investor would have considered significant in making investment decisions." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161-62 (2d Cir. 2000) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988)). "Courts do not grant motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on grounds of

---

[13]   In this case, as noted, Plaintiff alleges that the registration statement and prospectus are identical "in all material respects." *See supra* note 4 (quoting CAC ¶ 38 n.3.) Defendants do not dispute this contention in their moving papers.

immateriality, unless the misstatements 'are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.'" *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 625-26 (S.D.N.Y. 2005) (quoting *Ganino*, 228 F.3d at 162); *see also Miller*, 473 F. Supp. 2d at 579 ("A court may dismiss a claim on the ground that a misstatement or an omission in a registration statement or prospectus was not material, but the task presents a difficult challenge. Materiality is generally a question for the fact finder."); *Milman v. Box Hill Sys. Corp.*, 72 F. Supp. 2d 220, 228 (S.D.N.Y. 1999) ("Although a court may dismiss a claim on the ground that an omission was not material, the standard for doing so is high.").[14]

In the context of determining the materiality of allegedly false or misleading statements or omissions found in registration statements or prospectuses, the document in question must be read "as a whole." *See DeMaria*, 318 F.3d at 180. The inquiry does not focus on whether "particular statements, taken separately, were literally true, but whether [D]efendants' representations, taken together and in context, would have misl[ed] a reasonable investor about the nature of the [securities]." *McMahan & Co. v. Wherehouse Entm't, Inc.*, 900 F.2d 576, 579 (2d Cir. 1990); *see also Miller*, 473 F. Supp. 2d at 579 ("In assessing whether statements provided in the prospectus are materially misleading, the prospectus must be read as a whole, not selectively or in a piecemeal fashion."). "A prospectus will violate federal securities laws if it does not disclose 'material objective factual matters,' or buries those matters beneath other information, or treats them cavalierly." *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 5 (2d Cir. 1996) (quoting *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.* 936 F.2d 759, 762 (2d Cir. 1991)).

ii.  Analysis

Defendants' duty to disclose the various misrepresentations and omissions pertaining to Fuwei's alleged unlawful acquisition of the Production Lines arose from the obligation to make statements in the Registration Statement "not misleading." Where the disclosure duty arises from an alleged omission, which, if not disclosed, renders another statement false or misleading, "'the inquiries as to duty and materiality coalesce.'" *In re Alliance Pharm.*, 279 F. Supp. 2d at 182 (quoting *In re Time Warner*, 9 F.3d at 267). The Court therefore focuses its analysis on whether the alleged omissions are material in light of the information already disclosed. *See DeMaria*, 318 F.3d at 180.

The Court finds that Plaintiff has pleaded facts sufficient to withstand a motion to dismiss in regard to these alleged omissions. Given the statements in the Registration Statement pertaining to the legality of Fuwei's acquisition of the Production Lines, the Court cannot conclude, at this stage of the proceedings, that Defendants' failure to disclose the facts pertaining to the existence of a pending investigation of Fuwei, Yin, and Wang, and Defendants' failure to disclose the complete extent of Yin, Wang, and Zhou's

---

[14]  In the SEC Rules designed to guide the preparation of Securities Act prospectuses and registration statements, the SEC defines materiality as follows: "The term material, when used to qualify a requirement for the furnishing of information as to any subject, limits the information required to those matters to which there is a substantial likelihood that a reasonable investor would attach importance in determining whether to purchase the security registered." 17 C.F.R. § 230.405.

involvement in the transfer of the Production Lines were immaterial as a matter of law.

In regard to the first category — the failure to disclose the existence of a pending investigation of Fuwei, Yin, and Wang — the Registration Statement provided that:

> *There can be no assurance* that relevant authorities or creditors of the predecessor owner of these assets will not challenge the effectiveness of these asset transfers based upon the facts and circumstances of these transfers, despite the existence of independent appraisals, and other facts and circumstances of the auctions that cannot be verified by our PRC counsel.

(CAC ¶ 39; *see also* CAC Ex. 1, Registration Statement at 11-12 (emphasis added).)  The Registration Statement further stated:

> [O]ur PRC counsel is of the opinion that the auctions of the Bruckner and DMT production lines were valid under PRC law and the possibility of the creditors of Shandong Neo-Luck successfully exercising recourse or claiming repayment with respect to our assets purchased in the bankruptcy proceeding should be remote. However, *should any such challenge be brought* in China (or elsewhere) and prevail, we may incur substantial liabilities and be required to pay substantial damages as a result of acquiring these assets.  Although we believe any such challenge is unlikely to lead to the forfeiture of the related assets, it could materially affect our ability to continue operations.

(CAC ¶ 39; *see also* CAC Ex. 1, Registration Statement at 11-12 (emphasis added).))

Taken collectively, these passages create the impression that, as of the date of the IPO, no party had challenged Fuwei's acquisition of the Production Lines.  However, Plaintiff alleges that, prior to the date of the IPO, there were "pending and threatened material legal proceedings against [Fuwei] and its two controlling shareholders, Yin and Wang," and that Yin and Wang's passports had been confiscated in relation to this investigation. (CAC ¶¶ 62, 66; *see also, e.g.*, Pl.'s Opp'n Exs. 1, 2, 3); *see supra* Part I.A.3.b.i.(A) (setting forth the relevant allegations in full).  Specifically, Plaintiff alleges that prior to Fuwei's IPO, Great Wall requested that the Chinese Ministry of Public Security, through the China Banking Regulatory Commission, commence legal proceedings and an investigation of the alleged misconduct in the sale of the Production Lines to Fuwei at below market values. (CAC ¶ 125.)  Plaintiff further alleges that in November 2006, as a result of the subsequent investigation, Chinese Authorities ordered that the passports of Yin and Wang be confiscated, and suspended their ability to travel outside of mainland China. (*Id.* ¶¶ 43, 126, 127.)  Granting Plaintiff all of the inferences to which he is entitled, the Court finds that these allegations are sufficient to withstand a motion to dismiss on grounds of materiality.[15]

---

[15] Defendants argue that it is "unreasonable" to assume that Defendants possessed this knowledge at the time of the IPO. (*See, e.g.*, Fuwei Reply at 2.)  This argument is unavailing.  As noted above, knowledge is not an element of a plaintiff's *prima facie* case for claims brought pursuant to sections 11 and 12(a)(2).  *Degulis v. LXR Biotechnology*, No. 95 Civ. 4204 (RWS), 1997 WL 20832, at *3 (S.D.N.Y. Jan. 21, 1997) ("To make out a *prima facie* case at the pleadings stage, Plaintiffs need only allege a material misstatement or omission.

For essentially the same reasons, Plaintiff has also pleaded facts sufficient to demonstrate the materiality of Defendants' failure to disclose the full extent of Yin, Wang, and Zhou's involvement in the transfer of the Production Lines from Neo-Luck to Fuwei. The Court cannot find as a matter of law that these disclosures were "obviously unimportant to a reasonable investor" given Defendants' representations regarding the legality of Fuwei's acquisition of the Production Lines. Despite providing detailed information about Yin, Wang, and Zhou's involvement in the various subsidiaries of Fuwei under the subsection of the Registration Statement entitled "Our Operating History and Corporate Structure," *see supra* Part I.A.3.a (quoting CAC ¶ 39); (*see also* CAC Ex. 1, Registration Statement at 34-35), Plaintiff alleges that Defendants failed to disclose the full extent of Yin, Wang, and Zhou's involvement in Neo-Luck. Specifically, Plaintiff alleges that Defendants failed to disclose, *inter alia*, that Yin was both the founder and the former Chairman of Neo-Luck Group, and that Wang was the current Chairman of Neo-Luck Group. (CAC ¶¶ 53, 114.) Again, granting Plaintiff the inferences to which he is entitled, the Court cannot find, as a matter of law at this stage of these proceedings, that a reasonable investor could not find this information "significant" to his or her investment decision, in light of Plaintiff's representations, *inter alia*, that Fuwei's acquisition of the Production was "valid under Chinese auction and bankruptcy law."

Neither knowledge nor reason to know is an element in a plaintiff's *prima facie* case."). Accordingly, Defendants' "knowledge" argument is more appropriately made on a motion for summary judgment, in the context of invoking the various "due diligence" or "reasonable care" affirmative defenses provided for by sections 11 and 12(a)(2). *See supra* note 10.

### iii.  The "Bespeaks Caution" Doctrine is Inapplicable

In regard to both categories of alleged misrepresentations and omissions here — first, the pending investigation and legal proceedings against Fuwei, Yin, and Wang, and second, the full extent of Yin, Wang, and Zhou's involvement in the transfer of the Production Lines from Neo-Luck to Fuwei — Defendants invoke the "bespeaks caution" doctrine.

The "bespeaks caution" doctrine "functions as an inquiry into whether a 'reasonable investor' would consider certain statements or omissions significant in light of all the disclosures made." *Heller v. Goldin Restructuring Fund, L.P.*, 590 F. Supp. 2d 603, 617 (S.D.N.Y. 2008). Whereas materiality is generally a question for the fact finder, the "bespeaks caution" doctrine allows the Court to find that a statement or omission is immaterial as a matter of law. *See id.* However, the "bespeaks caution" doctrine only applies to forward-looking statements, and not to misrepresentations of present or historical fact. *See id.* (citing *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 96-97 (2d Cir. 2004)).

Accordingly, this doctrine is inapplicable, as Plaintiff's allegations involve misrepresentations and omissions of present and historical fact, such as the *present* legality of Fuwei's acquisition of the Product Lines, the existence of any *present* challenges to Fuwei's acquisition of the Production Lines, and the failure to disclose the *past and present* relationship between certain of the individual Defendants, Fuwei, and Neo-Luck. While some of the statements in the Registration Statement may be forward-looking, such as Fuwei's counsel's opinion that there can be

no assurances that challenges might not be brought in the future, the failure to disclose the present and past state of affairs is an alleged omission of present and historical fact.

Accordingly, for the reasons stated above, the Court denies Defendants' motion to dismiss the CAC for failure to plead actionable misstatements or omissions pertaining to the alleged unlawful acquisition of the Production Lines.

### b.  Misrepresentations and Omissions Pertaining to the Pending Arbitration Proceedings Against Fuwei

Plaintiff also alleges that "[t]he Registration Statement falsely stated that at the time of the IPO there was no pending or threatened legal challenges or proceedings regarding the Production Lines or the auction transactions by which [Fuwei] acquired the Production Lines." (CAC ¶ 68.) Specifically, Plaintiff points to the passage of the Registration Statement entitled "Legal Proceedings," which provided that "[w]e are not currently a party to any material litigation and are not aware of any pending or threatened material litigation" (*id.* ¶ 39; *see also* CAC Ex. 1, Registration Statement at 67), and alleges that this passage is misleading in light of Defendants' failure to disclose the arbitration proceeding filed by DMT S.A. in the ICC International Court of Arbitration in April 2006. *See supra* Part I.A.3.b.ii (setting forth the relevant allegations in detail).

### i. Applicable Law

"Section 17, Part 229 of the Code of Federal Regulations, also known as 'Regulation SK,' provides standard instructions for filing forms under the Securities Act of 1933.  It gives rise to specific duties to disclose, and provides detailed guidance about the items to be disclosed, and the nature and specificity required of each disclosure." *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 668 (S.D.N.Y. 2008); *see also Lin*, 574 F. Supp. 2d at 416 ("The duty of disclosure in offering documents stems from regulations set forth by the SEC pursuant to its authority under the 1933 Act.  Some of these regulations are found in Title 17, Part 229 of the Code of Federal Regulations, and are known as 'Regulation S-K.'").  "Failure to make the requisite disclosures under Regulation S-K will generally produce liability under the Securities Act." *Panther Partners*, 538 F. Supp. 2d at 669 (citing *In re Initial Pub. Offering Sec. Litig.*, 358 F. Supp. 2d 189, 211 (S.D.N.Y. 2004)); *cf. ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 197-98 (2d Cir. 2009) (noting, in a different context, that while the SEC's guidance regarding the determination of materiality does "not change the standard of materiality," courts should "consider the factors it sets forth in determining whether the misstatement significantly altered the 'total mix' of information available to investors").

### ii. Analysis

The Court finds that Plaintiff's failure to disclose the arbitration proceeding was immaterial as a matter of law.  Defendants represented that: "[w]e are not currently a party to any material litigation and are not aware of any pending or threatened material litigation." (CAC ¶ 39; *see also* CAC Ex. 1, Registration Statement at 67.)  As an initial matter, Plaintiff has offered no allegations to support a plausible inference that *Fuwei* is properly considered a "party" to an

arbitration proceeding that *DMT S.A.* brought against *Neo-Luck* in April 2006.

In any event, the representation that Fuwei was "not aware of any pending or threatened *material* litigation" is consistent with Item 103 of Regulation SK ("Item 103"). Item 103 requires the disclosure of "any *material* pending legal proceedings, other than ordinary routine litigation incidental to the business, to which the registrant or any of its subsidiaries is a party or of which any of their property is the subject." 17 C.F.R. § 229.103 (emphasis added). In elaborating on what constitutes a "material" pending legal proceeding, Item 103 further provides that:

> No information need be given with respect to any proceeding that involves primarily a claim for damages if the amount involved, exclusive of interest and costs, does not exceed 10 percent of the current assets of the registrant and its subsidiaries on a consolidated basis. However, if any proceeding presents in large degree the same legal and factual issues as other proceedings pending or known to be contemplated, the amount involved in such other proceedings shall be included in computing such percentage.

*Id.*

Applying Item 103 to this case, it is undisputed that at the time the Registration Statement was filed, Fuwei's assets totaled approximately $57.6 million (*see* CAC Ex. 1 at 33), and that the undisclosed arbitration sought damages of approximately two percent of that amount, $1.25 million (*see* CAC ¶ 118). Therefore, guided by Item 103, the

Court finds that Fuwei was not required to disclose a litigation that "does not exceed 10 percent of the current assets of the registrant." 17 C.F.R. § 229.103. *Cf. Panther Partners*, 538 F. Supp. 2d at 668 (noting that Regulation SK "gives rise to specific duties to disclose, and provides detailed guidance about the items to be disclosed, and the nature and specificity required of each disclosure"). Furthermore, notwithstanding Item 103, the Court independently holds that a reasonable investor would not deem a pending arbitration seeking *two percent* of Fuwei's assets to be information "significantly altering the 'total mix' of information available." *Mayhew*, 121 F.3d at 52. Accordingly, the Court grants Defendants' motion to dismiss the CAC for failure to plead actionable misstatements or omissions pertaining to the pending arbitration proceedings against Fuwei.

### 4. Negative Causation

As noted, Plaintiff is not required to demonstrate loss causation to plead adequately claims under sections 11 and 12(a)(2), as he would be if bringing a claim pursuant to section 10(b). *See Briarwood Invs.*, 2009 WL 536517, at *3. *See generally Heller*, 590 F. Supp. 2d at 623 (setting forth the causation requirements for purposes of a claim brought pursuant to section 10(b)).[16] Rather, Defendants bear the burden of "negating" causation, an affirmative defense sometimes referred to as "negative causation." *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571 (RJH), 2009 WL 1066254, at *7 (S.D.N.Y. Apr. 21, 2009); *see also McMahan & Co.*, 65 F.3d at 1049 (noting that "[t]he defendant . . . bears the burden of proving that

---

[16]   The underwriters erroneously argue that it is Plaintiff's burden to plead loss causation. (*See* Underwriters Mem. at 20-21.)

the price decline was not related to the misrepresentations in the registration statement").[17] "Although 'not insurmountable,' [D]efendants' burden in establishing this defense is heavy since 'the risk of uncertainty' is allocated to [D]efendants." *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d at 408 (quoting *Akerman v. Oryx Commc'ns, Inc.*, 810 F.2d 336, 341 (2d Cir. 1987)).

Given the burden on Defendants to establish an affirmative defense such as negative causation, the Court finds that dismissal on this ground is more properly considered on a motion for summary judgment. *Cf. Levine v. AtriCure, Inc.*, 508 F. Supp. 2d 268, 272-73 (S.D.N.Y. 2007) ("Because an analysis of causation is often fact-intensive, negative causation is generally established by a defendant on a motion for summary judgment or at trial."). While "'an affirmative defense [here, negative causation] may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint,'" Plaintiff must "plead [himself] out of court by unintentionally alleging facts (taken as true) that establish an affirmative defense." *Levine v. Atricure Inc.*, 594 F. Supp. 2d 471, 474 (S.D.N.Y. 2009) (quoting *Pani v. Empire*

*Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) (first alteration in original).

Here, Plaintiff has not pleaded himself "out of court," as he has adequately alleged that various declines in Fuwei's stock were related to the alleged misrepresentations and omissions in the Registration Statement. (*See, e.g.*, CAC ¶¶ 158-68.) For example, Plaintiff alleges, *inter alia*, that on October 16, 2007, Fuwei announced that Chinese authorities had issued arrest notices for Yin, Wang, and Zhou "relating to the suspicion of the crime of irregularities for favoritism and to sell state-owned assets at low prices." (*Id.* ¶ 163.) Plaintiff further alleges that this announcement caused Fuwei's stock to drop 23.5%. (*Id.*); *see also supra* Part I.A.4 (setting forth Plaintiff's various factual allegations relevant to causation). The Court finds that the allegations contained within the CAC suffice to withstand a motion to dismiss for failure to plead adequately loss causation for purposes of sections 11 and 12(a)(2). *Cf. In re WRT Energy Sec. Litig.*, Nos. 96 Civ. 3610, 96 Civ. 3611 (JFK), 2005 WL 2088406, at *2 (S.D.N.Y. Aug. 30, 2005) ("Reading the Complaint most favorably to [the p]laintiffs, the Court must draw the inference that [the p]laintiffs' losses could have been the result of the alleged misstatements. To conclude otherwise places a burden of pleading loss causation on the plaintiffs, and removes the burden of establishing negative causation from the defendants, where it properly lies.").

### 5. Standing

Plaintiff purports to bring claims on behalf of all of those who purchased shares of Fuwei stock in the open market that are traceable to Fuwei's registered offering. (CAC ¶ 18.) However, liability pursuant to section 12(a)(2) only attaches to plaintiffs

---

[17]   These affirmative defenses are written into the relevant statutes. Section 11 provides that "damages shall not be recoverable" "if the defendant proves that any portion or all of such damages represents other than the depreciation in value of such security resulting from such part of the registration statement." 15 U.S.C. § 77k(e). Section 12 likewise provides that if "the person who offered or sold [the] security proves that any portion or all of the amount recoverable . . . represents other than the depreciation in value of the subject security resulting from such part of the prospectus or oral communication, . . . then such portion or amount, . . . shall not be recoverable." 15 U.S.C. § 77l(b).

who purchased their shares directly in the initial public offering, and not the so-called "aftermarket." *See Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 578 (1995) (concluding that "[t]he intent of Congress and the design of the statute require that § 12[(a)](2) liability be limited to public offerings"); *Yung v. Lee*, 432 F.3d 142, 148 (2d Cir. 2005) (noting that purchasers of "private or secondary sales of securities" are preceded from bringing claims pursuant to section 12(a)(2)).[18] Accordingly, the Court dismisses all section 12(a)(2) claims brought by Plaintiff on behalf of purchasers of Fuwei stock in the aftermarket.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions are denied in part and granted in part. Defendants are ordered to submit responsive pleadings to the CAC within thirty calendar days of this Memorandum and Order. The Court will thereafter hold a status conference on Friday, September 11, 2009 at 9:00 a.m. in Courtroom 21C, United States District Court, 500 Pearl Street, New York, New York. The Clerk of Court is directed to terminate the motions located at docket numbers 32 and 35.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: July 10, 2009
New York, New York

* * *

Lead Plaintiff is represented by Laurence Matthew Rosen, Phillip C. Kim, and Timothy William Brown, The Rosen Law Firm P.A., 350 5th Avenue, Suite 5508, New York, New York 10118. Defendants Fuwei, He, and Stulga are represented by Laura Maines Vasey, Loeb & Loeb LLP, 345 Park Avenue, New York, New York 10154. The underwriter Defendants are represented by Joshua Samuel Sohn and Perrie M. Weiner, DLA Piper US LLP, 1251 Avenue of the Americas, New York, New York 10020.

---

[18] Plaintiff concedes this point in his opposition brief. (*See* Pl.'s Opp'n at 48.)

23